UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Melisa Jenkins.** | : | |
| | : | |
| Plaintiff, | : | Case No. 1:25-cv-449 |
| | : | |
| v. | : | Judge: Jeffrey P. Hopkins |
| | : | |
| **Rajib Garu, et al.** | : | Magistrate Judge: Stephanie K. Bowman |
| | : | |
| Defendants. | : | |

## **DEFENDANTS RAJIB GARU AND IDEALOGIZ GROUP, LLC MOTION TO DISMISS**

Defendants Rajib Garu and Idealogiz Group, LLC hereby moves the court for an order dismissing Plaintiff Melisa Jenkins' complaint (Doc #2) for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). The basis for this motion is set forth in the attached memorandum.

Respectfully submitted,

*/s/ Anthony D. Maiorano*
Anthony D. Maiorano     0100339
Attorney for Defendants
The CMW Law Firm
14 E. Main St.
Fairborn, OH 45324
Tel: (513) 653-0123
tony@cmwlawfirm.com

**MEMORANDUM IN SUPPORT**

### I.     Introduction

Plaintiff, Melisa Jenkins, is suing Defendants Rajib Garu ("Garu") and Idealogiz Group, LLC ("Idealogiz" and collectively with Garu "Defendants"), for breach of contract (counts 1, 2, and 4), unjust enrichment (count 3), replevin (count 5), civil theft (count 6), fraud (count 7), piercing the corporate veil (count 8), and violation(s) of the Truth in Lending Act (TILA) (count 9). *See* Doc # 2.

The claims stem from a promissory note and personal guaranty executed by Plaintiff, promissory note and mortgage on the property of 4457 Mellwood Ave Cincinnati, OH 45232 (the "Mellwood property") that secures the promissory note. *See* Exh. B to Compl. Doc # 2, PageID ## 97–102 (executed on January 7, 2021). The mortgage was recorded in the Hamilton County Recorders Office on January 8, 2021. *See* Exh. D to Compl. Doc # 2, PageID ## 105–107. On February 4, 2021, Plaintiff agreed to amend the original promissory note for an additional $60,000.00, bringing the total amount of the promissory note to $90,000.00 in principal with 5% interest. *See* Exh. E. to Compl. Doc # 2, PageID ## 108–109. Plaintiff executed an amended mortgage reflecting the updated principal amount of the note on February 5, 2021. *See* Exh. F to Compl. Doc # 2, PageID ## 111–112.

Plaintiff's business, "Sustenance Design Cincy, LLC" ("Susteneance"), performed work on 3464 Cheviot Avenue, Cincinnati, Ohio 45211 (the "Cheviot property") and recorded a mechanics lien for the work performed at that property. *See* Exh. G to Compl. Doc # 2, PageID ## 113–116. Plaintiff recorded a release of the mechanics lien on the Cheviot property on June 30, 2021 "for good and valuable consideration." *See* Exh. G to Compl. Doc # 2, PageID ## 121–123.

1

Plaintiff alleges, that pursuant to an oral agreement with Garu, she would release the mechanics lien from the Cheviot property in exchange for the release of the mortgage on the Mellwood property. *See* Doc # 2, PageID # 76–77. Plaintiff also alleges that Exhibit A to the complaint, an undated, allegedly initialed contract in which Garu "agrees to complete sales contract for $80,000 on Cheviot Ave with [Plaintiff]. [Garu] also agrees to create listing contract with [Plaintiff] on 4457 Mellwood Ave on 2% commission and will actively work to find a buyer to meet other contractual terms. If the sale deadline is not met, party 2 agrees to non-enforcement of late fees as mentioned in said agreements outside this contract." *See* Doc # 2, Page ID # 96. Further, Exhibit A also reads "[Garu] agress to release mortgage/lien on 4457 Mellwood Ave upon payment of agreed note m the sum of $31,5000. This agreement also contains the understanding of second party agreeing to not enforce late fees as mentioned in mortgage note." *Id.* Notably absent from these terms, however, was Idealogiz, who purchased the Cheviot property and eventually sold it to Bayhorse, LLC. Doc # 2, PageID ## 75–76.

Plaintiff has supposedly asked for a payoff amount for the mortgage on Mellwood "by and through a title company that Plaintiff . . . retained to do the closing for the property at . . . Mellwood." *Id.* at # 77. Plaintiff fails to state the date of the request, the method of request, where the request was directed *or* the person requesting the payoff. *Id.*

Plaintiff asserts that she *personally* performed various rehab and design work for Garu *personally*. *Id.* at # 78. Plaintiff alleges $18,950 for work performed "as of June 17, 2021." *Id.* at #79. Plaintiff does not detail when the contracts were entered into or completed. However, at the latest the contracts were completed prior to June 17, 2021. *Id.*

Troublingly, Plaintiff has asserted most of the claims in this complaint against Defendants in prior litigation in an adversary proceeding in The United States Bankruptcy Court for the

Southern District of Ohio, Western Division (Cincinnati) case number 1-22-bk-10063 and adversary proceeding case number 1-22-ap-01080. *See* Attached Exhibit 1. The first cause of action in the adversary proceeding alleged that Defendants were "unjustly enriched and that the mortgage that secured the debt should be voided and held for naught." *Id.*

The second cause of action in the adversary proceeding alleged that Defendants "practiced fraud on the Debtor by using funds that were secured by the Mortgage to improve the Cheviot Property and then failing to turn over any of the sale proceeds or to cancel its Mortgage." *Id.*

The allegations and causes of action cover counts 1 and 2 (breach of contract regarding the mortgage and promissory note), count 3 (unjust enrichment related to the release of the mechanics lien on the Cheviot property), count 7 (fraud related to the mechanics lien on the Cheviot property and the mortgage on the Mellwood property). *Compare* attached Exh. 1 *with* Doc # 2, PageID ## 79–87.

The Bankruptcy Court in the adversary proceeding dismissed the case on January 5, 2023. Attached Exhibit 2. Although Plaintiff attempted to set aside the dismissal, the bankruptcy court denied the motion to vacate on August 8, 2024. Attached Exhibit 3. Shortly thereafter Plaintiff's bankruptcy petition was dismissed on October 15, 2024. Attached Exhibit 4.

Additionally, when Plaintiff first filed her bankruptcy petition, she made no assertions that she had any claims against Idealogiz Group, LLC, and did not specify the claims against Rajib Garu asserted in her petition. Attached Exhibit 5. For the reasons that follow, all of Plaintiff's claims should be dismissed as she fails to state a single claim.

## II.     Law & Argument

**A.     The Court Should Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can Be Granted.**

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must provide the

grounds for entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937,1940, 173 L.Ed.2d 868 (2009). Further, "the court does not have to accept as true unwarranted factual inferences." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) (quotations omitted).

The court is permitted to consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" when deciding a 12(b)(6) motion. *Id.* at 883 (quoting *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)). "Public records can be considered for the truth of the statements contained within them only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'" *Id.* (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)). Filings made by the same plaintiff and orders in a bankruptcy proceeding are appropriate material for a court to consider in the a motion to dismiss under Rule 12(b)(6). *Id.*

    **1.**    **Counts 1, 2, 3, and 7 are barred by *res judicata*.**

"When entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issues of fact." *Spradlin v. E. Coast Miner, LLC* (*In re Licking River Mining, LLC*), 605 B.R. 153, 159 (Bankr. E.D. Ky. 2019) (cleaned up).

"A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action

which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002).

When a complaint is dismissed for failure to prosecute, "the first element required for res judicata to apply" is met. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 777 (6th Cir. 2009). A dismissal for failure to prosecute applies when a "plaintiff fails . . . to comply with . . . a court order." *Id.* (quoting Federal Rule of Civil Procedure 41(b)).

Here, Plaintiff's adversary complaint was dismissed for failure to comply with a court order. *See* Attached Exh. 3 ("the parties failed to file pretrial statements by the November 29, 2022 deadline in the *Order Governing Pretrial and Trial Proceedings* . . . . Accordingly, on December 7, 20202, the Order was entered noting that the parties appeared to have abandoned prosecution and providing the parties twenty-one (21) days to file written memoranda explaining why the adversary proceeding should continue or it would be dismissed. This time period has now expired . . . this adversary proceeding is hereby DISMISSED."). Thus, the first element for res judicata is present.

This action involves the same exact parties as the prior adversary proceeding. Thus, the second element of res judicata is met.

"The doctrine of res judicata prohibits not only re-litigation of all claims or issues which were actually litigated, but also those which could have been litigated in a prior action." *Bragg*, 570 F.3d at 777. When a new claim arises "out of the same set of facts as did the first" cause of action" then all of the reasserted claims *and the new claim* are barred because they "could and should have been litigated in [the] prior suit." *Id.* Put simply, "the third element . . . asks whether the two causes of action arise from the same transaction, or series of transactions, and if so then the plaintiff should have litigated both causes in the first action and may not litigate the second

5

issue later." *Dionne v. Del Toro*, No. 2:24-cv-2364-MSN-cgc, 2025 U.S. Dist. LEXIS 23461, at *5 (W.D. Tenn. Feb. 10, 2025).

Here, Plaintiff's claims regarding the mortgage and promissory notes for the Mellwood property and the mechanics lien and sale for Cheviot property are exact matches. So, all of the causes of action in this complaint arising out of the same transaction or series of transactions in the adversary proceedings complete the final two elements for res judicata. Thus, counts 1, 2, 3, and 7, all dealing with the promissory notes, unjust enrichment, and fraud related to the contracts, liens, and mortgages at the Mellwood and Cheviot properties, should be dismissed on the doctrine of res judicata.

**2.     Counts 1 through 7 are barred by judicial estoppel as to Idealogiz Group.**

"A debtor in a bankruptcy proceeding has an ongoing duty to disclose to the bankruptcy court all assets, including potential legal claims that arise after the bankruptcy proceedings have commenced but before the case has been closed." *Finney v. Volvo Grp. N. Am., LLC*, 562 B.R. 914, 919 (M.D. Tenn. 2016) (citing 11 U.S.C. § 521(a)(1); 11 U.S.C. § 1306(a)(1)). "The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). "This doctrine is 'utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id.* (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002).

In the context of bankruptcy, "'judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the

6

prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Id.* (quoting *Browning*, 283 F.3d at 775–76).

Here, Plaintiff asserted in her bankruptcy petition only affirmative claims against Garu. *See* Attached Exhibit 5 ("Debtor has a claim against Rajib Garu for at least $90,000.00"). However, Plaintiff failed to even assert the basis for the claims against Garu and *completely omitted* Idealogiz Group, LLC, despite naming Idealogiz Group as a creditor in the petition. *See id.* The prior court, i.e. the bankruptcy court, did adopt a position contrary to the one asserted now as Idealogiz Group was actually paid during after the adoption of the chapter 13 plan. *See* Attached Exh. 6 (breaking down that Idealogiz had "$1,215.08 "paid toward the principal balance). Jenkins had a duty to assert any claims she had against Idealogiz Group so that her creditors could recover as much as possible. Indeed, "When a bankruptcy court -- which must protect the interests of all creditors -- approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *White*, 617 F.3d at 479.

As such, Plaintiff's claims in counts 1 through 7 of the complaint should be barred by the doctrine of judicial estoppel against Idealogiz Group.

**3.      Counts 4 through 6 are barred by judicial estoppel as to Rajib Garu.**

For similar reasons explained above, judicial estoppel should bar claims against Rajib Garu. Plaintiff asserted, without clear explanation that Garu owed "at least $90,000" to Plaintiff in her petition. She never asserted the specific basis for that belief in her filings. However, the adversary complaint seems to have covered the entirety of the $90,000 alleged, as the goal of the adversary proceeding was to eliminate the $90,000 promissory note secured by the Mellwood property.

7

Plaintiff never brought up the consulting services she performed on behalf of Garu in her bankruptcy petition. Plaintiff clearly lists $18,950 as damages that all accrued prior to Jenkins filing her petition for bankruptcy, in her breach of contract claim in count 4. *See* Doc # 2, PageID # 82–83. This is something that could have clearly been asserted in the bankruptcy proceeding, but was not. The bankruptcy court adopted the chapter 13 plan based on the representations that omitted the claims for $18,950 for design services. Thus, count 4 should be barred by judicial estoppel.

The same is true with the personal property in Garu's apartment on Lehman and the personal property at the Cheviot property, as neither was asserted with any specificity against Garu at the time she filed her petition (both of which totaled $6,250 as alleged in the complaint). The alleged deprivation of said property make up the basis for counts 5 and 6 of the complaint. *See* Doc # 2, PageID # 83–85. For the same reasons count 4 should be barred by judicial estoppel, counts 4 and 5 should be barred by judicial estoppel.

**4.     Count 4 is barred by the statute of limitations.**

Ohio Rev. Code § 2305.07(A) provides that "an action upon a contract not in writing, express or implied, shall be brought within four years after the cause of action accrued." The entirety of Plaintiff's allegations related to the breach of the alleged oral contract to provide design services indicates that "Rajib Garu breached the oral contract as of June 17, 2021, when he unilaterally declared that he would not pay the Plaintiff Melisa Jenkins the agreed upon amounts." Doc # 2, PageID # 83. However, a claim accrues at the time the plaintiff discovers the failure to perform as agreed. *Whittle v. P&G*, 589 F. Supp. 2d 944, 949 (S.D. Ohio 2008).

Plaintiff's assertion that the breach happened for all the projects on June 17, 2021, is not based on well-pled facts. The terms of the agreement, i.e., when the services were to be provided,

8

and the dates Plaintiff actually performed the agreement are notably missing from the complaint. Some or all of the claims likely accrued *prior to* June 17, 2021 and *prior to* April 3, 2021 (4 years before the complaint was filed). The well pled facts do not support the position that the claims under count 4 are within the statute of limitations. As such, Plaintiff fails to state a claim as to count 4.

     **5.    Count 1 fails to plead a breach of written contract.**

Both parties to this case are residents of Ohio and these contracts appear to affect property in Hamilton County, Ohio, this Court should analyze the alleged breaches of contract under Ohio law. "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). "The construction of written contracts . . . is a matter of law." *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St. 2d 241, 241, 374 N.E.2d 146, 150 paragraph one of syllabus (1978).

Ohio also codifies the statute of frauds. Ohio Rev. Code § 1335.05. It provides "No action shall be brought whereby to charge * * * a person upon [a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them]; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in *writing* and *signed* by the party to be charged therewith * * *." *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 2009-Ohio-2057, ¶ 31, 122 Ohio St. 3d 89, 94, 909 N.E.2d 93, 99 (quoting Ohio Rev. Code § 1335.05). "Agreements that do not comply with the statute of frauds are unenforceable." *Id.* at ¶ 32 (citing Hummel v. Hummel, 133 Ohio St. 520, 11 O.O. 221, 14 N.E.2d 923 at paragraph one of the syllabus (1938)).

The crux of the allegations are that "under the terms of Exhibit A [the alleged written contract] Defendant Rajib Garu was required to sell the property at 3634 Cheviot for a price of

9

$80,000 to Plaintiff Melisa Jenkins." Doc # 2, PageID # 80, ¶ 47. However, as alleged in the complaint, Rajib Garu never owned the Cheviot property, only Idealogiz Group, LLC owned the property. *See id.* at PageID # 76, ¶¶ 23–24.

Exhibit A's "parties" to the agreement were only "Rajib Garu known as 'Second Party'" and "Melisa Jenkins known as 'First Party.'" *Id.* at Exh. A. Further the terms of the agreement related to the alleged "sale" of the Cheviot property is as follows:

> 6. Second party agrees to complete sales contract for $80,000 on Cheviot Ave with first party. Second party also agrees to create listing contract with first party on 4457 Mellwood Ave on 2% commission and will actively work to find a buyer to meet other contractual agreement terms. If the sale deadline is not met, party 2 agrees to non-enforcement of late fees as mentioned in said agreements outside this contract.
> 
> *Id.* at PageID # 96.

The first issue with this provision is that all that Garu is doing is "complet[ing a] sale contract for $80,000 on Cheviot Ave with first party." Cheviot Ave, isn't described in any detail, and Garu does not "agree" to sell "Cheviot Ave" instead he agrees to draft a sales contract. This is clear when viewed with the second sentence of the provision. Garu "also agrees to create listing contract with first party on 4457 Mellwood Ave on 2% commission and will actively work to find a buyer to meet other contractual agreement." This clearly shows Garu is acting as a realtor in this transaction and provision, which is Garu's professional trade. The third sentence of the provision indicates there is a "sale deadline" and if said "deadline is not met, party 2 [undefined in the contract] agrees to non-enforcement of late fees as mentioned in said agreements outside of this contract."

The contract also appears incomplete, as the last page includes the lines "Furthermore, the First Party agrees: . . ." with six blank paragraphs. There is a single "initial" on the left side of the bottom page that looks like it may be "Ra."

The provision that Garu allegedly breached here is the first sentence, but as alleged in the complaint, and in the contract itself, Garu never owned "Cheviot Ave." Let alone the failure to adequately describe the property, its location, street address, or anything to make it reasonably identifiable. The Ohio Supreme Court has said "A contract for the sale of land must definitely point out the particular land to be conveyed or must furnish the means of identifying it with certainty." *Schmidt v. Weston*, 150 Ohio St. 293, 293, 82 N.E.2d 284, 285 paragraph 3 of syllabus (1948).

This contract falls woefully short of the specificity needed to amount to an agreement to sell the Cheviot property. In fact, the Mellwood property is probably sufficiently identified based on the context, so the drafter of the contract knew how to capture the bare minimum necessary to satisfy Ohio law.

Idealogiz Group, LLC is also not a party to the contract, it appears to be a personal contract with Garu himself based on the plain language of the contract's "parties" and  based one the provisions in the first section of the contract. Namely, "Second Party [Garu] Agrees to not interfere with completion of projects based on emotional response to relationship issues." Doc # 2, PageID # 95. That same provision also confirms this is a contract with Garu as a realtor, "[Garu] Agrees to abide by code of ethics and morals based on Board of Realtors recommendations." *Id.*

In sum, there is no "signed writing." The agreement unambiguously does not represent an agreement to sell 3464 Cheviot to Plaintiff. There is no identification of the particular Cheviot Ave property in the agreement. Garu never personally had the ability to convey the Cheviot property and the contract was with him personally, not Idealogiz Group, LLC. Thus, this "written contract" could not be breached in the manner alleged in the complaint. This Court should dismiss count 1 of the complaint for failure to state a claim upon which relief may be granted.

6. **Count 2 fails to state a claim because there is a lack of signed writing.**

Oral agreements to release a mortgage are unenforceable, even if it is characterized as a settlement agreement. *FirstMerit Bank, N.A. v. Inks*, 2014-Ohio-789, ¶ 25, 138 Ohio St. 3d 384, 389, 7 N.E.3d 1150, 1155. This is the exact issue raised in *FirstMerit Bank*, and the Ohio Supreme Court explicitly stated that oral agreements regarding a release of a mortgage are under the statute of frauds and thus unenforceable. *Id.* That is the precise form of relief sought against Garu and Idealogiz here in count 2. As such, count 2 is not well-pled and should be dismissed *with prejudice*.

7. **Count 3 fails to state a claim for unjust enrichment**

An unjust enrichment claim is intended "'not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on a defendant.'" *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 21 (quoting *Hughes v. Oberholtzer,* 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954)). To effectively raise an unjust enrichment claim, a plaintiff must allege: "'(1) a benefit conferred by a plaintiff upon [the] defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) (emphasis added) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525, 14 N.E.2d 923, 925 (1938)).

Plaintiff swore in her affidavit of release of the mechanics lien that "For good and valuable consideration, the undersigned [Plaintiff] releases and discharges the lien and any right, interest, and claim I may have acquired in the property by reason of filing the Affidavit of Lien." Exh. I to Compl. Doc # 2, PageID # 122.

Further, Plaintiff's problem is twofold, in addition to release for consideration, the affidavit of mechanic's lien was for the work performed by Sustenance Design Cincy, LLC, not Plaintiff.

12

*See* Exh. G to Compl., Doc # 2, PageID # 114.

So, Plaintiff received payment or other valuable consideration for the work and Plaintiff is not the party in interest who actually conferred the benefit to Idealogiz Group, LLC. In other words, Plaintiff fails to plead the first of third elements of unjust enrichment. As such, Plaintiff's third claim fails as a matter of law.

    **8.    Counts 5 and 6 fail to describe the property allegedly detained**

As to replevin, plaintiffs must describe the goods retained by the defendant in order to maintain an action for replevin. *Lorain Cty. Sav. & Tr. Co. v. Haynes*, 26 Ohio App. 552, 556, 160 N.E. 516, 518 (1927). A *pro se* petitioner in the Northern District of Ohio barely survived the basic pleading standards when trying to proceed *in forma pauperis*, and he described the property taken as "copy cards and over-the-counter medication," and "legal materials." *Cody v. Slusher*, No. 1:17-CV-00132, 2019 U.S. Dist. LEXIS 14762, at *10 (N.D. Ohio Jan. 30, 2019). However, the district court dismissed claims for replevin and conversion where "none of the[] counts contain allegations to taking of property." *Id.* Here, count 5 fails to describe any of the property taken and should fail as a result.

For the same reasons, actions for "civil theft" must actually describe the property taken in order to put defendants on notice in how to proceed with the lawsuit. Amorphous claims of "personal property" do not meet the pleading standards under the federal rules. Instead, it amounts to just labels, conclusions, and formulaic recitations of the elements of a cause of action, that is insufficient under the federal rules of civil procedure. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Counts 5 and 6 fail to meet the basic pleading standards and should therefore be dismissed.

**9. Count 7 fails to plead fraud.**

Plaintiff's fraud claim fails because, first, the allegations set forth do not amount to a legally cognizable claim for fraud, and second, because it is duplicative of its breach of contract claim.

In order to state a claim for fraud in Ohio, a plaintiff must allege: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Found. for Moral L., Inc. v. Infocision Mgmt. Corp.*, No. 5:07CV3121, 2008 WL 5725627, at *5 (N.D. Ohio May 27, 2008) (citing *Groob v. KeyBank*, 108 Ohio St.3d 348, 357, 843 N.E.2d 1170 (2006)).

Additionally, to satisfy the particularity requirement of Rule 9(b), a plaintiff who brings a fraud claim must generally "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Marlar v. BWXT Y– 12 L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

Plaintiff fails to state what representation(s) Garu and/or Idealogiz made, how those representations were material to the transaction and why Plaintiff was justified in relying on those representations.

First and foremost, there is no allegation of when, where, and how the "misrepresentations" were made to Plaintiff. Further, without specifics about the statements that are allegedly false, there is no way to defend these amorphous "statements."

14

Startlingly, Plaintiff's alleged reliance boils down to "Plaintiff Melisa Jenkins justifiably relied to her detriment upon Defendant Rajib Garu's above misrepresentations and omissions not knowing that Defendant Rajib Garu was a liar as to his intentions of honoring the Agreements set forth herein and attached as Exhibits A through I, and was planning to be a thief as to the Plaintiff Melisa Jenkins money, services, and personal property." Doc # 2, PageID ## 86–87, ¶ 98.

Those alleged agreements all had to deal with interests in land. In real estate transactions, no person would reasonably believe that unwritten, unsigned, non-descript "agreements" would be sufficient to rely on. Indeed, Jenkins prepared and filed a mechanics lien on the Cheviot property and recorded the same. So, conclusory assertions of "reliance" are insufficient under the circumstances as well.

Finally, as Plaintiff aptly points out, the "fraud" is just a substitute for alleged breaches of contracts. When a tort action is "factually intertwined" with a contract claim, "Ohio Courts have held that '[s]uch tort claim[s] lie[] against a contracting party independent of a breach of contract claim [only if] the plaintiff alleges a breach of a duty owed separately from obligations created by the contract.'" *Acad. Imaging, LLC v. Soterion Corp.*, 352 Fed. App'x 59, 67, 2009 WL 3805807, *6 (6th Cir. November 13, 2009) (quoting *Jean v. Stanley Works*, No. 1:04-cv-1904, 2006 WL 1966644, at *5 (N.D. Ohio July 5, 2006)). In other words, "'the existence of a contract generally excludes the opportunity to present the same case as a tort claim.'" *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F.Supp.3d 764, 774 (S.D, Ohio 2016) (quoting *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). Put differently, a plaintiff cannot assert "a tort claim based upon the same actions as those that form a claim for breach of contract, unless the alleged breaching party also breaches a separate duty." *Id.* (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261, 1270 (1996)).

For example, in *Dayton Children's Hospital v. Garrett Day, LLC*, 2019-Ohio-4875, 149 N.E.3d 1004, the plaintiffs brought claims for breach of contract and fraud against a remediation company. Affirming the dismissal of the fraud claim, the court of appeals held that "the fraud claim and alleged breach both relate to the contract, i.e., that [the defendant] did not remove all the concrete as required and did not comply with the City's demolition ordinances, which the contract may also have required." *Id.* The fraud and breach-of-contract claims were held to be "identical" in this scenario. *Id.* Here, as in *Dayton Children's*, the breach-of-contract claim is indistinguishable from the fraud claim. Both relate to the contracts allegedly entered into and Defendants' alleged non-performance of the contracts. For these reasons, Plaintiff's fraud claim must fail.

10. **Count 8 Piercing the Corporate Veil is not a cause of action.**

Plaintiff request veil piercing in count 8 of the complaint. Doc # 2, PageID # 15–16. "Piercing the corporate veil is not a claim, it is a remedy encompassed within a claim, whereby liability for a particular tort may be imposed upon a particular individual." *White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 41 (1st Dist.), quoting *Meehan v. Mardis*, 2019-Ohio-4075, 146 N.E.3d 1266, ¶ 41 (1st Dist.). Although veil piercing may be a remedy, it is not a cause of action and should be dismissed by this Court.

11. **Plaintiff fails to adequately plead a Truth in Lending Act violation.**

As relevant here, the TILA requires written requests for payoffs to be sent to "the creditor or servicer of a home loan." 15 U.S.C. § 1639g. The creditor must "send an accurate payoff balance within a reasonable time, but in no case more than seven business days, **after the receipt of a written request for such balance from or on behalf of the borrower**." *Id.* (emphasis added).

Here, the complaint alleges only that "On or about March 1, 2025, Plaintiff Melisa Jenkins

16

through a title company acting on her behalf requested a payoff quote in writing from Defendant Idealogiz Group, LLC." Doc # 2, PageID # 90. Plaintiff then alleges that "Garu refused to provide a payoff amount, unless and until Plaintiff Melisa Jenkins gave a copy of the purchase agreement for the sale of the Property to him." *Id.* ¶ 122. However, Plaintiff's allegations fail to adequately plead that the title company sent the request in writing, instead it requested the payoff quote in writing. *See id.* at ¶ 121.

Putting that issue aside, Plaintiff failed to indicate *when* Garu received the "request [for] payoff," which is particularly relevant here because the date the title company allegedly sent the request for payoff was "March 1, 2025" and this suit was initiated on April 3, 2025.

March 1, 2025 was a Saturday, and there were only 23 "business days" between March 1, 2025 and April 3, 2025. Without specifically indicating *when* Garu refused to give the payoff and *when* Garu received the request for payoff, the allegations of the complaint must fail, as they amount to threadbare legal conclusions and formulaic recitations of the elements of a truth in lending act violation. Thus, this Court should dismiss the TILA claim for failure to state a claim.

### 12. **Every single count Plaintiff asserts should be dismissed.**

As explained above, every single count Plaintiff asserts fails to state a claim upon which relief can be granted. The only claim that isn't procedurally barred by res judicata, judicial estoppel, or the statute of limitations is the TILA claim in count 9, which fails for failure to adequately plead a claim under the federal rules of civil procedure. As such, the entire complaint should be dismissed with prejudice.

### III. Conclusion

For the reasons explained above, this Court should dismiss Plaintiff's complaint for failure to state a claim, with prejudice.

17

Respectfully submitted,

*/s/ Anthony D. Maiorano*
Anthony D. Maiorano 0100339
The CMW Law Firm
14 E. Main St.
Fairborn, OH 45324
Tel: (513) 653-0123
Email: tony@cmwlawfirm.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true copy of this document was served on all registered ECF participants to the above-captioned case at their email addresses registered with the court on this 3rd day of July, 2025.

*/s/ Anthony D. Maiorano*
Anthony D. Maiorano 0100339