

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | | |
|---|---|---|
| MELISA JENKINS | { | CASE NUMBER 1-25-CV-449 |
| 4457 MELLWOOD AVE | { | JUDGE JEFFREY P HOPKINS |
| CINCINNATI OH 45232 | { | MAGISTRATE STEPHANIE K |
|     Plaintiff, | { |         BOWMAN |
| vs. : | { | |
| RAJIB GARU ET AL., | { | |
| 2691 LEHMAN RD UNIT 7 | { | |
| CINCINNATI OH 45204 | { | |
|     Defendant | | |

**PLAINTIFF MELISA JENKINS ET AL., RESPONSE TO MOTION FOR RULE 11 SANCTIONS**

# I. Introduction

1. Defendant seeks dismissal and Rule 11 fees based on alleged failures to file a pretrial statement, respond to a dismissal advisory, and submit a 21-day memorandum.

2. Dismissal is a **drastic sanction** reserved for extreme misconduct. The record shows: (a) any lapses stemmed from **counsel's neglect and record confusion**, not willful misconduct; (b) both sides **shared awareness** of deadlines; (c) **no actual prejudice** is shown; and (d) courts must consider **lesser sanctions** first. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997); *Ball v. City of Chicago*, 2 F.3d 752, 759 (7th Cir.

1

1993); *Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962).

3. Plaintiff's bankruptcy was filed in **good faith** to protect assets from a **bad-faith foreclosure** after Defendant blocked payoff communications and breached agreements. Plaintiff has substantial **documentary and testimonial evidence** (witnesses, bank records, contracts, receipts, photos, video) corroborating all claims.

# II. Legal Standards: Dismissal and Sanctions

4. **Dismissal (Rule 41(b) / Rule 16(f)).** A "harsh remedy" requiring willfulness, bad faith, or contumacy; courts **prefer adjudication on the merits** and must consider **lesser sanctions** first. *Harmon*, 110 F.3d at 367; *Ball*, 2 F.3d at 759; *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986); *Moore v. Emmanuel Family Training Ctr., Inc.*, 18 Ohio St.3d 64, 70 (1985).

5. **Counsel vs. Client Fault.** When delay is due to counsel—not the party—dismissal is improper. *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591–92 (6th Cir. 2001).

6. **Sanctions (Civ.R. 11; R.C. 2323.51).** Require **willful** misconduct or clear **frivolity**; contested claims supported by evidence are not frivolous. *First Bank of Marietta v. Mascrete, Inc.*, 79 Ohio St.3d 503, 506–08 (1997); *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 21; *Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 291–92 (9th Dist. 1992).

# III. Application to Alleged Failures

## A. Pretrial Statement

7. Rule 16(f) provides a **range of sanctions**; dismissal is not automatic. *Harmon*, 110 F.3d at 367.

8. **No prejudice** is identified; a **curative filing** or **costs/continuance** is the proportionate remedy. *Ball*, 2 F.3d at 759.

## B. Dismissal Advisory

9. *Ball* requires **explicit warnings** and evaluates whether **client** (not just counsel) is at fault. 2 F.3d at 756.

2

10. The record (including handwritten annotations) reflects **shared awareness** and **procedural confusion**, not willful disregard—warranting **lesser sanctions**, if any.

## C. 21-Day Memorandum

11. Courts reverse dismissals where missed deadlines lack bad faith or prejudice. *Mulbah*, 261 F.3d at 592; *Harmon*, 110 F.3d at 367.

12. Both parties recognized the deadline; **no evidence** or witnesses were lost. The case remains **capable of merits resolution**. *Shepard*, 796 F.2d at 193.

## V. Conclusion

The record shows **procedural lapses** tied to attorney conduct and shared confusion, not deliberate abandonment of claims. Under controlling precedent — *Link*, *Harmon*, *Ball*, *Mulbah*, and *Shepard* — dismissal would be inequitable.

**Therefore, the court should deny dismissal and, if necessary, impose a lesser sanction while allowing the case to be decided on the merits.**

**Plaintiff denies that dismissal is warranted and states affirmatively that the bankruptcy filing was undertaken in good faith for the purpose of protecting assets from the first round of a fraudulent and bad-faith foreclosure initiated by Defendant. Said foreclosure was pursued after Defendant blocked all communication with Plaintiff and provided no means of payoff or resolution, despite Plaintiff's attempts to cure and resolve the account.**

**Further, Defendant is in breach of contractual arrangements surrounding the subject loan, as more fully set forth in Attachment No. _____, which details the contractual terms and the Defendant's material failures to honor the same.**

**The bankruptcy was also filed in good faith to protect the interests of Parker in her mortgage, thereby preserving her legal and equitable rights against unjust foreclosure and ensuring that judicial process, rather than unilateral action by Defendant, would govern any dispute.**

**Accordingly, Plaintiff asserts that the bankruptcy filing is not evidence of abandonment or neglect, but rather a lawful, equitable, and necessary measure in response to Defendant's breach of contract, lack of good-faith dealings, and efforts to foreclose without providing payoff information or a path to resolution.**

3

**Bankruptcy Filing in Good Faith**

Plaintiff denies that dismissal is warranted and states affirmatively that the bankruptcy filing was undertaken in good faith for the purpose of protecting assets from the first round of a fraudulent and bad-faith foreclosure initiated by Defendant. Said foreclosure was pursued after Defendant blocked all communication with Plaintiff and provided no means of payoff or resolution, despite Plaintiff's attempts to cure and resolve the account.

Defendant is further in breach of contractual arrangements surrounding the subject loan, as more fully set forth in Attachment No. _____, which details the contractual terms and Defendant's material failures to honor the same. The bankruptcy was also filed to protect the interests of Parker in her mortgage, thereby preserving her legal and equitable rights against unjust foreclosure.

Ohio courts recognize that dismissals and foreclosure actions must be grounded in good faith dealings, and a failure by a lender to provide accurate payoff or resolution terms can amount to bad faith and breach of contract. See *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 48 (1997) (dismissal inappropriate where party seeks resolution and defendant's conduct contributes to dispute).

---

**Broken Promises and Fraudulent Intent**

The Defendant also made express promises to Plaintiff, including agreements concerning waiver or limitation of late fees, as evidenced in Exhibit No. _____, and entered into signed no-harm agreements. Plaintiff relied on these promises to her detriment. The subsequent imposition of late fees, contrary to the agreements, constitutes evidence that promises made to Plaintiff were broken and supports Plaintiff's position that Defendant acted in bad faith.

The Defendant further exhibited fraudulent intent through deliberate efforts to exploit the very promissory note he created, using broken promises and contractual ambiguity to extract unlawful advantage. Ohio law provides that fraud may be inferred from conduct showing a conscious intent to mislead or deceive. See *Burr v. Board of County Comm'rs of Stark Cty.*, 23 Ohio St.3d 69, 73 (1986) (fraud requires proof of material misrepresentation made with intent to mislead and resulting injury).

4

# Bankruptcy Filing, Breach of Agreements, and Mellwood Property

**Answer and Defense:**

1. Plaintiff's bankruptcy filing was made in good faith to protect assets from Defendant's bad-faith foreclosure, where Defendant blocked communication and provided no payoff avenue (see *Jones v. Hartranft*, 78 Ohio St.3d 368 (1997)).

2. Defendant has breached contractual obligations and operating agreements related to the use of funds tied to the mortgage. Defendant has already obtained payoff of the principal balance but has refused to release the mortgage, thereby clouding title and obstructing the sale of the Mellwood Avenue property. Such refusal constitutes a material breach of contract.

   o *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 41 (a breach occurs when a party fails without legal excuse to perform a contractual duty).

3. Defendant is also in breach of both verbal and written agreements regarding the collection of late fees, having imposed excessive and inconsistent fees contrary to the terms promised to Plaintiff.

4. In addition, Defendant is in breach of signed "no harm" agreements, wherein he expressly promised Plaintiff that no penalties or additional fees would be assessed under certain conditions. Defendant's violation of these agreements demonstrates not only breach of contract, but also fraudulent intent in inducing Plaintiff to rely on promises he never intended to honor.

   o *Burr v. Board of Cty. Comm'rs of Stark Cty.*, 23 Ohio St.3d 69, 73 (1986) (fraud includes material misrepresentation made with knowledge of falsity and intent to mislead, resulting in injury).

5. Together, these actions establish that Defendant's conduct rises to bad faith and unjust enrichment, as he has retained the benefit of payoff while denying Plaintiff the contractual right to release and fair accounting.

   o *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984) (unjust enrichment occurs when one retains money or benefits that in

5

justice and equity belong to another).

6. Plaintiff therefore asserts that the bankruptcy was a necessary protective measure to safeguard her rights in the face of Defendant's serial contractual breaches, misrepresentations, and efforts to exploit the mortgage instrument for unjust gain.

---

**Ambiguity and Lack of Transparency in Mortgage Instrument**

The mortgage instrument itself is ambiguous and defective. The signature page contains no information identifying the instruments to which it is attached and lacks notarization on the signature page itself. Such deficiencies create material questions of enforceability and transparency.

Furthermore, when Plaintiff sought to obtain a copy of the mortgage at the title office, Brian Bauer and staff at Performance Title confirmed there was no record of Plaintiff's file in their system, stating that the work had been done as a "favor" to Defendant. This irregularity suggests a lack of independent and verifiable recordkeeping, thereby undermining the legitimacy of the mortgage process.

Ohio courts have consistently held that ambiguous or incomplete mortgage documentation can invalidate foreclosure actions or require resolution in favor of the mortgagor. See *LaSalle Bank Natl. Assn. v. Kelly*, 2011-Ohio-3569, 23 (8th Dist.) (mortgage documents must be clear and properly executed to be enforceable); *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 192 (1982) (ambiguities in documents construed against drafter).

---

**Conclusion**

For the foregoing reasons, Plaintiff's bankruptcy was filed in good faith to protect against Defendant's fraudulent foreclosure efforts. Defendant breached contractual arrangements (Attachment No. ___), broke promises regarding late fees and no-harm agreements (Exhibit No. ___), engaged in fraud through exploitation of the promissory note, and relied on ambiguous, improperly executed mortgage documents lacking transparency and notarization. These defects, together with evidence of irregular conduct at the title office, establish that dismissal is unwarranted and the matter must proceed on its merits.

6

# IV. Res Judicata and "With Prejudice" Misstatements

13. Defendant's assertion that a prior adversary was dismissed **with prejudice** is incorrect. A dismissal **without prejudice** is **not** an adjudication on the merits and has **no res judicata** effect. *Fowler v. Smith*, 68 Ohio St.3d 357 (1994); *Tower City Props. v. Cuyahoga Cty. Bd. of Revision*, 49 Ohio St.3d 67, 69 (1990).

14. TILA claims are **not barred** absent a final merits judgment. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995); *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981); see also *Costello v. United States*, 365 U.S. 265, 286 (1961) (procedural dismissals lack preclusive effect); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001).

# V. Page-Specific Defenses (Condensed)

## Page 1 – Bankruptcy, Breaches, Mellwood

15. **Good-Faith Bankruptcy.** Filed to prevent a **bad-faith foreclosure** amid blocked payoff communications and broken promises by defendant.

16. **Breach of Contract / Operating Agreements.** Defendant **obtained payoff of principal** yet **refused to release the mortgage**, clouding title and obstructing the Mellwood sale—**material breach**. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 41.

17. **Late-Fee & "No-Harm" Agreements.** Defendant breached **verbal and written** commitments, supporting **fraud** and **unjust enrichment**. *Burr v. Bd. of Cty. Comm'rs*, 23 Ohio St.3d 69, 73 (1986); *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

18. **Ambiguous/Defective Mortgage.** Signature page lacks instrument identification and notarization; title office (Brian Bauer/Performance Title) reported **no file** and a "favor" to Defendant—undermining enforceability. *LaSalle Bank Nat'l Assn. v. Kelly*, 2011-Ohio-3569, 23 (8th Dist.); *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 192 (1982).

## Page 2 – Advisory / "Frivolous" Label

19. The prior dismissal was **without prejudice** (*Fowler, Tower City*).

20. Claims are **not frivolous** where supported by facts or good-faith law arguments. *Striker*, 21; *Mascrete*, 79 Ohio St.3d at 506–08.

## Page 3 – "Abandonment"

21. "Abandonment" requires **intentional delay** or bad faith; notes show tracking and engagement. *Mulbah*, 261 F.3d at 591–92; *Toney v. Berkemer*, 6 Ohio St.3d 455, 458 (1983).

22. Resolve disputes on the **merits**. *Moore*, 18 Ohio St.3d at 70; *Shepard*, 796 F.2d at 193.

## Page 4 – Dismissal on the Merits

23. **Excessive** where issues are procedural; court must use **lesser sanctions** first. *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 48 (1997).

## Page 5 – "Pattern of Neglect"

24. A "pattern" requires **deliberate disobedience**; the record shows engagement and confusion, not willfulness. *Harmon*, 110 F.3d at 367.

25. No prejudice; lesser measures suffice. *Mulbah*, 261 F.3d at 592.

## Page 6 – Sanctions & Wrong Party

26. The sanctions motion **misidentifies** Plaintiff (not a mere misspelling)—a **fatal defect** that defeats notice and due process. *Amerine v. Haughton Elevator Co.*, 42 Ohio St.3d 57, 59 (1989) (misnomer vs. misidentification); *State ex rel. Dallman v. Franklin Cty. C.P. Ct.*, 35 Ohio St.2d 176, 178 (1973) (wrong party → no authority); *In re Highland Holiday Subdivision*, 27 Ohio App.2d 237, 240 (4th Dist. 1971).

27. Motions must state grounds with **particularity** and provide notice. Civ.R. 7(B)(1); *Mascrete*, 79 Ohio St.3d at 506–07 (notice/hearing prerequisites).

28. Attempted post-hoc fixes fail where the **correct party** lacked timely notice. Civ.R. 15(C); *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 576–78 (1992); *Maryhew v. Yova*, 11 Ohio St.3d 154, 156–57 (1984).**Response to Defendant's Sanctions Demand for Attorney Fees**

8

Plaintiff respectfully declines Defendant's request for sanctions and attorney fees. Defendant and counsel seek to shift fees despite their own record of bad faith, malice, and serial litigation conduct, which has directly contributed to the necessity of these proceedings and to Plaintiff's damages, including wrongful foreclosure. Plaintiff incorporates and will submit [Evidence Exhibit Nos. ____] demonstrating Defendant's repeated obstruction, broken promises, and refusal to provide payoff figures or resolution.

**Ohio Case Law on Bad Faith Litigation Conduct**

1. **First Bank of Marietta v. Mascrete, Inc., 79 Ohio St.3d 503, 508 (1997)**
   *Rule:* Sanctions under R.C. 2323.51 are improper absent a finding of frivolous conduct; attorney fees cannot be shifted merely because a claim is disputed.
   *Application:* Defendant's motion misstates facts and improperly demands sanctions, while their own bad faith tactics have multiplied litigation and increased costs.

2. **State ex rel. Striker v. Cline, 130 Ohio St.3d 214, 2011-Ohio-5350, 21**
   *Rule:* Claims are not frivolous where they are supported by a rational argument on the facts or existing law, or by a good faith argument for modification.
   *Application:* Plaintiff's claims were filed in truth and good faith, supported by evidence, whereas Defendant's sanctions motion is itself frivolous.

3. **Ceol v. Zion Indus., Inc., 81 Ohio App.3d 286, 291–92 (9th Dist. 1992)**
   *Rule:* Sanctions under Civ.R. 11 require willfulness, not mistake or negligence.
   *Application:* Plaintiff's filings reflect diligence; Defendant's conduct—serial obstruction and refusal to honor agreements—is the willful misconduct here.

4. **Slater v. Motorists Mut. Ins. Co., 174 Ohio St. 148, 151 (1962)**
   *Rule:* Courts recognize that bad faith in contractual dealings arises when a party, with knowledge of its obligations, intentionally refuses to fulfill them to the detriment of the other party.
   *Application:* Defendant's serial bad faith, including refusing to honor loan arrangements and obstructing payoff opportunities, constitutes precisely the kind of bad faith that Ohio law condemns.

**Defense Position**

9

Defendant's demand for Plaintiff to pay attorney fees is untenable given
Defendant's own pattern of bad faith and malicious behavior. Ohio courts do not
reward parties whose conduct has created the very disputes they later complain
about. Here, Defendant's serial acts of obstruction and bad faith directly
contributed to the wrongful foreclosure proceedings and forced Plaintiff into
protective bankruptcy filings.

# VI. Bad-Faith Litigation & Mellwood Payoff Obstruction

29. Defendant and counsel engaged in **serial bad faith**: broken promises on payoff
    amounts, delayed payoff letters, **exorbitant late fees** despite counsel's representation of
    a lower number, and tactics aimed at missed court deadlines—forcing protective
    bankruptcy and jeopardizing the Mellwood sale.

30. Ohio condemns intentional frustration of obligations and fiduciary breaches. *Slater v.
    Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 151 (1962).

31. Plaintiff maintains a robust **evidentiary record** ([Exhibits ____]): witness list,
    photographs, receipts, contracts, bank statements, transaction records, listing
    agreement held by Garu thus identifying agency and fiduciary duties, cancellation of
    listing agreement thus identifying obstruction of the sale, a purchase agreement signed
    by garu as the buyer thus identifying another transaction not carried out, and videos of
    his obscene behavior thus identifying obstruction of ability to perform.

# VII. Piercing the Corporate Veil (Hidden Cloud; Fortune Vine; Idealogize et al., Maiorano Decl.)

32. Defendant (Garu) used multiple LLCs—including **Hidden Cloud LLC** (purchase
    agreement for Mellwood) and **Fortune Vine Realty LLC** (agency release)—to obscure
    liability and frustrate enforcement (see **Exhibits ____**). The **Declaration of Anthony
    Maiorano (8/8/25)** (Exhibit ____) corroborates misuse of entities citing Fortune Vine as
    the client, see attachment on all Garu current entities .

33. **Ohio Veil-Piercing Test.** (1) Complete control/alter ego; (2) used to commit fraud/illegal
    or similarly unlawful act; (3) injury results. *Belvedere Condo. Unit Owners' Assn. v. R.E.
    Roark Cos., Inc.*, 67 Ohio St.3d 274, 289 (1993); clarified by *Dombroski v. WellPoint,
    Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827,   29 (egregious wrongs). Application may
    extend **across affiliated entities**. *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464,

2009-Ohio-1247, 9.

34. **Application.** Defendant exercised **complete control** over the entities and used them to: (a) conceal personal liability; (b) shift obligations; (c) evade fiduciary duties as a licensed agent; and (d) impose obstructive/inflated payoff demands—causing **wrongful foreclosure**, title clouding, transaction delays, and litigation costs.

# VIII. Moving Forward

35. The record supports that: (a) lapses were **counsel-driven**, not willful; (b) Defendant **contributed to delay** by acknowledging but failing to act; (c) claimed prejudice is **speculative**; and (d) **substantive rights** remain intact, so the case should proceed on the **merits**. *Mulbah*, 261 F.3d at 591–92; *Harmon*, 110 F.3d at 367; *Moore*, 18 Ohio St.3d at 70; *Shepard*, 796 F.2d at 193.

# IX. Claims & Remedies (Condensed Merits Preview)

36. **Fraud**—material misrepresentations (payoff, late fees, "no-harm" promises) made to induce reliance, causing injury. *Burr*, 23 Ohio St.3d at 73.

37. **Unjust Enrichment**—retention of benefits (fees, payoff leverage, delayed release) that equity forbids. *Hambleton*, 12 Ohio St.3d at 183.

38. **Breach of Contract**—failure to release mortgage post-principal payoff; breaches of written/verbal/operating agreements. *Lucarell*, 2018-Ohio-15, 41.

39. **TILA Violations**—failures to provide accurate disclosures and accessible payoff statements. 15 U.S.C. § 1638; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).

# X. Sanctions Request: Deny and Reallocate as Needed

40. The sanctions motion targets the **wrong party** (misidentification) **LEGAL ARGUMENT PREPARED BY MARIANO AND FILED 7/3/2025 NAMES DEFENDANT STAGNITO**, fails **particularity** and **notice** (Civ.R. 7(B)(1)), and cannot satisfy **willfulness/frivolity** standards. *Amerine*; *Dallman*; *Mascrete*; *Striker*; *Ceol*.

41. Given Defendant's **bad-faith litigation** and serial obstruction (including Hamilton County matters involving real-estate/finance disputes), fee-shifting **against** Plaintiff is improper. Plaintiff reserves the right to seek **R.C. 2323.51** fees upon evidentiary showing.

# XI. Relief Requested (Condensed)

Plaintiff respectfully asks the Court to:
 A. **Deny** Defendant's Motion for Rule 11 Sanctions and Dismissal;
 B. **Recognize** Defendant's **bad-faith pattern** and fiduciary breaches (Mellwood);
 C. **Pierce the corporate veil** (Hidden Cloud, Fortune Vine, affiliates) under *Belvedere*, *Dombroski*, *Minno* to hold Defendant **personally liable**;
 D. **Award** **damages and equitable relief** on: **Fraud** (*Burr*), **Unjust Enrichment** (*Hambleton*), **Breach of Contract** (*Lucarell*), and **TILA** (15 U.S.C. § 1638; *Beach*);
 E. **Permit** Plaintiff to proceed **pro se** pending any new counsel;
 F. **Grant** an **extension** to finalize settlement and **close the Mellwood sale**; and
 G. **Preserve** Plaintiff's right to present full **evidence** ([Exhibits ___]) at hearing/trial.

# XII. Conclusion

42. The record reflects **procedural confusion and counsel error**, not willful misconduct or prejudice. Under *Link, Harmon, Ball, Mulbah, Shepard* and controlling Ohio law, **dismissal and sanctions are unwarranted**. The case should proceed on the **merits**, with veil-piercing and damages available based on the evidence.

**Response to Defendant's Sanctions Demand for Attorney Fees**

**Plaintiff respectfully declines Defendant's request for sanctions and attorney fees. Defendant and counsel seek to shift fees despite their own record of bad faith, malice, and serial litigation conduct, which has directly contributed to the necessity of these proceedings and to Plaintiff's damages, including wrongful foreclosure. Plaintiff incorporates and will submit [Evidence Exhibit Nos. ___] demonstrating Defendant's repeated obstruction, broken promises, and refusal to provide payoff figures or resolution.**

**Ohio Case Law on Bad Faith Litigation Conduct**

1. **First Bank of Marietta v. Mascrete, Inc., 79 Ohio St.3d 503, 508 (1997)**
   *Rule:* Sanctions under R.C. 2323.51 are improper absent a finding of frivolous conduct; attorney fees cannot be shifted merely because a claim is disputed.
   *Application:* Defendant's motion misstates facts and improperly demands sanctions, while their own bad faith tactics have multiplied litigation and increased costs.

2. **State ex rel. Striker v. Cline, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 21**
   *Rule:* Claims are not frivolous where they are supported by a rational argument on the facts or existing law, or by a good faith argument for modification.
   *Application:* Plaintiff's claims were filed in truth and good faith, supported by evidence, whereas Defendant's sanctions motion is itself frivolous.

3. **Ceol v. Zion Indus., Inc., 81 Ohio App.3d 286, 291–92 (9th Dist. 1992)**
   *Rule:* Sanctions under Civ.R. 11 require willfulness, not mistake or negligence.
   *Application:* Plaintiff's filings reflect diligence; Defendant's conduct—serial obstruction and refusal to honor agreements—is the willful misconduct here.

4. **Slater v. Motorists Mut. Ins. Co., 174 Ohio St. 148, 151 (1962)**
   *Rule:* Courts recognize that bad faith in contractual dealings arises when a party, with knowledge of its obligations, intentionally refuses to fulfill them to the detriment of the other party.
   *Application:* Defendant's serial bad faith, including refusing to honor loan arrangements and obstructing payoff opportunities, constitutes precisely the kind of bad faith that Ohio law condemns.

**Defense Position**

Defendant's demand for Plaintiff to pay attorney fees is untenable given Defendant's own pattern of bad faith and malicious behavior. Ohio courts do not reward parties whose conduct has created the very disputes they later complain about. Here, Defendant's serial acts of obstruction and bad faith directly contributed to the wrongful foreclosure proceedings and forced Plaintiff into protective bankruptcy filings.

Plaintiff further submits that Defendant Garu's conduct warrants thorough investigation by multiple agencies due to his layered and serial exploitation of U.S. systems through bad faith and unethical practices. Garu has repeatedly leveraged positions of trust, including his licenses and citizenship status (obtained through a marriage contract, now dissolved), to further his schemes.

His conduct spans multiple areas of federal and state concern:

- **Immigration:** Exploiting marital status and later operating in ways inconsistent with lawful intent.

- **Taxation (IRS):** Engaging in questionable income practices, including undisclosed commissions and cash-based transactions.

- **Corporate Fraud:** While in a corporate role at Kroger, operating a back-end recruiting agency that exploited foreign nationals, extracting large cash commissions in exchange for facilitating their onboarding through Kroger's interview process.

- **Real Estate Ethics:** Illegally accepting kickbacks on real estate commissions and violating multiple professional codes of conduct.

This pattern demonstrates a systemic disregard for law, ethics, and fiduciary responsibility, suggesting that Garu's activities are not isolated incidents but part of a deliberate, ongoing pattern of exploitation. Plaintiff respectfully urges this Court to recognize the gravity of these practices and to ensure that appropriate regulatory and investigative bodies are alerted, including but not limited to immigration authorities, the Internal Revenue Service, corporate compliance officers, and state real estate licensing boards.

**Conclusion and Requested Relief**

14

For the reasons set forth above, Plaintiff respectfully requests that this Court:

1. **Strike Speculative and Inadmissible Portions** – Pursuant to Fed. R. Civ. P. 12(f) (or Civ.R. 12(F) under Ohio law), strike those portions of the Declaration of Anthony D. Maiorano that are immaterial, impertinent, scandalous, or speculative, including but not limited to ¶¶2–7 and ¶10.

2. **Exclude Under Rule 56(c)(4)** – Sustain Plaintiff's objections to the Declaration under Rule 56(c)(4) (or Ohio Civ.R. 56(E)) because the affidavit is not based on personal knowledge, contains hearsay, and offers legal conclusions and speculation rather than admissible fact.

3. **Preclude Speculative Testimony Before Trial** – Enter an order in limine excluding speculative testimony or evidence that Defendants may attempt to introduce at trial, consistent with the Federal Rules of Evidence and Rule 56 standards.

4. **Impose Sanctions for Frivolous Pleading** – Pursuant to Rule 11, impose sanctions on Defendants and their counsel for submitting a declaration rife with speculation, hearsay, and bad faith characterizations that serve no legitimate purpose and are advanced without evidentiary support. See First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 512 (6th Cir. 2002).

5. **Dismissal or Adverse Relief** – In light of the repeated misconduct, bad faith negotiation, broken promises, and serial exploitative behavior of Defendants and their counsel, dismiss Defendants' defenses in their entirety, or grant such other adverse relief as the Court deems just and proper.

6. **Conclusive Statement**

   It must be emphasized that Defendant Garu was repaid the principal balance of the debt in its entirety, and before the due date, through the development of his property at 3464 Cheviot Avenue, from which he personally profited. Garu benefitted not only from Plaintiff's equity but also from the subsequent breach of contract and profitable sale of that property. The entire balance reflected in the purported payoff letter is therefore fraudulent and advanced in bad faith, manufactured only to extract

additional sums after Garu had already been made whole. In furtherance of this scheme, Garu and his counsel wrongfully forced foreclosure proceedings on the Mellwood property, positioning Plaintiff as the defendant in that matter despite the fact that the underlying debt obligation had already been satisfied in full. Such conduct exemplifies the very definition of bad faith litigation, fraud upon the court, and unjust enrichment, and requires corrective relief.

## Conclusion and Requested Relief

Plaintiff emphasizes that Defendant Garu was repaid the principal balance of the debt in its entirety, and before the due date, through the development and profitable sale of his property at 3464 Cheviot Avenue. Despite this, Garu benefitted from Plaintiff's equity, fabricated a fraudulent payoff letter, and wrongfully forced foreclosure on the Mellwood property, placing Plaintiff as the defendant in that action. The payoff demand is therefore a product of bad faith, fraud, and unjust enrichment, not a legitimate obligation.

Considering the cumulative record of misconduct — including fraudulent inducement, duress, conflicts of interest, broken promises, and exploitative foreclosure tactics — Plaintiff respectfully requests:

> **Strike Speculative and Inadmissible Portions** – Pursuant to Fed. R. Civ. P. 12(f) (or Civ.R. 12(F)), strike the speculative, immaterial, and conclusory portions of the Maiorano Declaration (¶¶2–7, 10).

> **Exclude Under Rule 56(c)(4)** – Sustain Plaintiff's objections and disregard the affidavit as hearsay and speculation lacking personal knowledge.

> **Sanctions Under Rule 11** – Impose sanctions on Defendants and their counsel for bad faith filings and misuse of procedure to inflate payoff demands. See First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 512 (6th Cir. 2002).

> **Preclusion of Late Fees & Bad Faith Profits** – Strike all late fees and escalated charges caused by Defendants' intentional stalling, consistent with the equitable principle that no party may profit from its own

16

wrongdoing. See Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232–33 (1959).

**Treble Damages – Award treble damages (3x Plaintiff's losses) as warranted for intentional, fraudulent, and bad faith conduct. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485–86 (1977); Charles R. Combs Trucking, Inc. v. Int'l Harvester Co., 12 Ohio St.3d 241, 246 (1984).**

**Equitable Escrow / Title Relief – Plaintiff seeks to move forward in the spirit of cooperation and fairness, and not to impose damages on third-party buyers of the Mellwood property. Plaintiff therefore requests that the Court order that mortgage payoff funds be held in escrow pending resolution of this litigation, or alternatively, that upon sale the foreclosure claims be released from title. Should Defendants oppose escrow, Plaintiff requests the Court order payoff under reservation of rights, with continued prosecution of claims for fraud, sanctions, and treble damages.**

## Expanded Relief for Plaintiff's Damages

In addition to the fraudulent foreclosure and payoff dispute, Plaintiff respectfully asks this Court to recognize the broader damages inflicted upon her as a direct and foreseeable result of Defendants' misconduct. Defendants' bad faith actions have caused:

- **Wrongful Foreclosure & Forced Relocation – Plaintiff was compelled to leave her residence at the Mellwood property under duress of foreclosure proceedings initiated in bad faith.**

- **Bankruptcy & Credit Harm – Defendants' exploitation and refusal to honor repayment created conditions that forced Plaintiff into bankruptcy proceedings and inflicted severe damage to her creditworthiness.**

- **Disruption of Business Operations – Plaintiff's small business, operating from her residence, was destabilized and uprooted, causing loss of income and reputational harm.**

- **Impact on Family Stability – Plaintiff and her child were displaced from their home, causing emotional distress, instability, and forced relocation**

under coercive circumstances.

Defendants' layered misconduct therefore goes beyond financial injury and strikes at Plaintiff's ability to maintain her livelihood, family stability, and future opportunities. Courts have recognized that such consequential and collateral damages are compensable where they flow directly from fraudulent or bad faith conduct. See Burr v. Stark Cty. Bd. of Comm'rs, 23 Ohio St.3d 69, 73 (1986) (fraud damages include all injuries proximately caused).

---

## Final Relief

In light of these compounded injuries, Plaintiff renews her request for:

1. Treble damages (3x actual losses) for intentional and bad faith conduct;

2. Sanctions against Defendants and their counsel under Fed. R. Civ. P. 11;

3. Equitable escrow of proceeds from the Mellwood property sale to protect Plaintiff's rights without harming innocent buyers;

4. Release of foreclosure claims from title upon sale; and

5. All other relief, legal and equitable, including compensation for emotional distress, business disruption, and credit damage, that this Court deems just and proper.

DATED SEPTEMBER 3 2025

RESPECTFULLY SUBMITTED,

MELISA JENKINS
m.jenkins1105@gmail.com
Pro Se

## CERTIFICATE OF SERVICE

A true copy of this document was served on Tony Maiorano at his address on record this
3rd day of September 2025, via email and ordinary mail

# PAYOFF STATEMENT

**FROM:**
Idealogiz Group LLC
PO BOX 36576
Cincinnati, OH 45236

**TO:**
To Whom It May Concern

**DATE:** August 29, 2025

## LOAN PAYOFF DETAILS

**Payoff Good Through:** September 3, 2025 (per diem as needed)

**Reference:** Be advised that the January 7, 2021 Secured Promissory Note that you executed in favor of Idealogiz Group, LLC, as amended February 5, 2021, in consideration of the principal amount of $90,000.00, matured on May 7, 2021, on which date the entire unpaid principal balance and accrued interest was due and payable.

## OUTSTANDING BALANCE BREAKDOWN

| Description | Amount |
|---|---|
| Principal | $90,000.00 |
| Interest (Due May 7, 2021) | $4,500.00 |
| One-time Overdue Fee (Per Promissory Note) | $500.00 |
| Late Fees (1,569 days × $50/day from May 18, 2021 to September 3, 2025) | $78,450.00 |
| Subtotal | $173,450.00 |
| Less: Amount Paid | ($1,215.08) |
| TOTAL PAYOFF AMOUNT | $172,234.92 |

## PAYMENT INSTRUCTIONS

To satisfy this obligation in full, please remit payment via wire transfer to the following account:

**Account Name:** Idealogiz Group LLC
**Bank Name:** US BANK
**Bank Address:** Cincinnati, OH 45236
**Routing Number:** 042000013
**Account Number:** 130123240090

## IMPORTANT NOTES

- This payoff statement is valid through the date specified above
- Payment must be received by 5:00 PM EST on the payoff date to avoid additional fees
- Late fees continue to accrue at $50.00 per day until payment is received in full
- Wire transfer fees are the responsibility of the borrower
- Upon satisfaction of this debt obligation in full, the secured party shall execute and deliver appropriate mortgage release documentation as required by law
- **Consumer Rights Notice:** You have the right to dispute this debt. If you believe this debt is not valid or the amount is incorrect, you may request verification of this debt by contacting us in writing within 30 days of receiving this notice

**For questions regarding this payoff statement, please contact:**
Idealogiz Group LLC
PO BOX 36576

Cincinnati, OH 45236

_Signature_

**08 / 29 / 2025**
Date

Print Name: **Rajib Garu**

Title: __Owner__

Company: Idealogiz Group LLC

*This document serves as an official payoff statement for the referenced loan obligation.*



14382  01238

Scott Crowley
Hamilton County Recorder's Office
Doc #: 2021-0037575  Type: REL
Filed: 03/25/21 09:42:46 AM    $34.00
Off. Rec.: 14382  01238  F  2  250

b1438201238Fb

RELEASE OF MORTGAGE

THIS IS TO CERTIFY, in consideration of payment, receipt of which is hereby acknowledged, that the

conditions of a certain Mortgage from Melisa Jenkins to Idealogiz Group LLC. in the

amount of $30,000.00 recorded on 01/08/21 as O.R. Book 14330 page 944 of the Official County

Records, have been FULLY COMPLETED and that the MORTGAGE IS HEREBY RELEASED AND
DISCHARGED OF RECORD.

See attached for legal description....

Parcel ID# 220-59-15

Executed on this _24TH_____of MARCH, 2021

Idealogiz Grouop LLC

BY Rajib Garu, Member

State of  OHIO
County of HAMILTON

- Cosmonic Partners LLC
- The Culture Shock LLC
- Fortune Vine Realty LLC
- Idealogiz LLC
- Hidden Cloud LLC
- Garu Holdings LLC
- Karma Trading LLC
- Cincy Property Care LLC
- Cincy Cash Flow LLC
- Disha IT
- Winding Ways LLC
- RWCOH LLC
- Cincy Growth LLC
- First Move LLC
- Mandelin LLC
- Disha IT
- Mossy Brink LLC
- The Garu Family Foundation

**OHIO JURAT**
§147-551

State of Ohio

County of _Hamilton_ } ss.

Sworn to or affirmed and subscribed before me by

_Melisa Jenkins_
*Name of Person Making Jurat*

this date of _09/04/2025_ .
*Date*

_Kristian Johnson_
*Signature of Notary Public Administering Jurat*

_Notary Public_
*Title or Rank*

_04/30/2029_
*Commission Expiration Date*

KRISTIAN JEREMIAH JOHNSON
NOTARY PUBLIC
COMM EXP: APR 30, 2029
STATE OF OHIO

——— OPTIONAL ———

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document** US District Court, Southern District of OH

Title or Type of Document: Plantiff response to motion to Rule II SANCTIONS

Document Date: _09/04/2025_                Number of Pages: _19_

Signer(s) Other Than Named Above: _N/A_

©2019 National Notary Association

M1908-06 (09/19)