# EXHIBIT
# FOLLOW

**A.** LEWIS AND BRISBOIS INVOICE 2022 EXPENSES 4 PAGES

**B.**OPERATING AGREEMENT BETWEEN GARU AND JENKINS SIGNED BY GARU 1/4/21 2 PAGES

**C.** MORTGAGE AND PROMISSORY NOTE INSTRUMENTS 11 PAGES

**D.** NO HARM AGREEMENT 2 PAGES

**E.** FILE NOTES 6 PAGES

**F.**PURCHASE AGREEMENT SIGNED BY GARU DBA HIDDEN CLOUD 9/27/20 TO OBTAIN OWNERSHIP OF MELLWOOD AVE 7 PAGES

**G.** PURCHASE AGREEMENT SIGNED BY GARU DBA HIDDEN CLOUD TO OBTAIN POSSESSION OF MELLWOOD SIGNED 10/11/2020 10 PAGES

**H.** PURCHASE AGREEMENT SIGNED BY GARU DBA HIDDEN CLOUD TO OBTAIN OWNERSHIP OF MELLWOOD SIGNED 11/18/2021 8 PAGES

**I.**EXCLUSIVE RIGHT TO SELL SIGNED BY GARU AS LISTING AGENT ON MELLWOOD SALE WITH INTERNET AGENTS US SIGNED 1/7/2021 5 PAGES

**J.**TERMINATION OF LISTING AGREEMENT SIGNED BY GARU 5/13/2021 DBA FORTUNE VINE REALTY (LISTING WAS WITH INTERNET AGENTS AND NOTHING FILED TO TRANSFER SALE TO NEW BROKERAGE 1 PAGE

**K.**NOTICE OF DEFAULT SEND BY GARU DBA IDEALOGIZ AND NEIBERDING 5/27/2021 2 PAGES

**L.** EMAIL TUMBNAILS INCLUDING BRIAN BAUER IN COMMUNICATIONS AS TITLE AGENT 4 PAGES

**M.**MECHANICS LIEN ON CHEVIOT DATES 5/17/2021 5 PAGES– release docs 8 pages

**N.**COPY OF PROMISSORY NOTE WITH HANDWRITTEN NOTES FROM GOERINGS OFFICE BREAKING DOWN BANKRUPTCY PLANS DATED 2023 3 PAGES

**O.** WHITE BOARD PHOTO AND COST BREAK DOWN IN GARU HANDWRITING LAYING OUT SOME FORMULAS FOR MELLWOOD AND CHEVIOT 2 PAGES

**P.** SCREEN SHOTS OF SOME ELECTRONIC PAYMENTS TO WORKERS ON CHEVIOT AND MONEY GARU DEMANDED 4 PAGES

**Q.** CHASE BANK TRANSACTIONS WHERE GARU DEMANDED USE OF MY ACCOUNT TO FILTER MONIES HE RECEIVED THROUGH FRAUDULENT CASH BUSINESS WHILE AT KROGER, WHERE HE ONBOARDED VISA STATUS EMPLOYEES FOR A FEE OUTSIDE HIS SALARY (WITNESSES ARE AVAILABLE TO UPHOLD THIS CLAIM) 4 PAGES

**R.** DESIGN SKETCHES OF CHEVIOT PERFORMED BY MELISA JENKINS DBA SUSTENANCE DESIGN 18 PAGES

**S.** CHEVIOT EXPENSE TRACKER 20 PAGES

**T.** WRONG DOCUMENTS AGGRESSIVELY SERVED IN PERSON ON MELLWOOD AVE BY HIRED 3RD PARTY FROM NEIBERDING/GARU 1 PAGE

**V.** MOTION FOR RULE 11 SANCTIONS SENT BY MAIORANO

**W.** JOHN PHILLIPS FILED COMPLAINT 21 PAGES

**X.** EMAIL SCREENSHOTS PROVING UNWARRENTED LATE FEES AGAIN AS WE TRIED TO SETTLE AND WAS REFUSED SETTLEMENT AND PAYOFF LETTER COSTING TWO AND A HALF MORE MONTHS OF DELAYS AND $50/DIEM IN LATE FEES

Y. Motion for Sanction

Z. Divorce Decree

AA. Screenshots on late fees

BB. Phillips filing w/ notes

# LEWIS BRISBOIS BISGAARD & SMITH LLP

LAWYERS
SUITE 4000
633 W. FIFTH STREET
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 250-1800

FEDERAL I.D. NO 95-3720522

| File Number AS29 | 51824-2 | Melisa Jenkins - General Business<br>Melisa Jenkins - General Busines | 2/24/22<br>3226532<br>Page 1 |
|---|---|---|---|

| Date | Atty | Description of Services Rendered | Hours |
|---|---|---|---|
| 1/01/22 | AS | Receipt and review of Complaint, pleadings, and claim file materials to get up to speed on lawsuit, Telephone call with Attorney Groner regarding extension, Draft Notice of Appearance, draft Agreed Entry for Extension to Respond to Complaint, Email opposing counsel for approval to file. | 1.5 |
| 1/02/22 | AS | Email update to client regarding extension to answer Complaint and Notification Form filings. | .1 |
| 1/03/22 | AS | Multiple emails to/from opposing counsel regarding his thoughts on settlement proposals. | .2 |
| 1/03/22 | AS | Receipt and review of Court Order for initial case management conference, Email update to client, Email to client regarding completion of engagement letter. Multiple emails to/from opposing counsel regarding Extension and Notice of Appearance. | .5 |
| 1/04/22 | AS | Telephone call with counsel for Plaintiff regarding mechanic's lien issues, deposition of Ms. Jenkins, and other issues to get Ms. Jenkins dismissed. | .2 |
| 1/04/22 | AS | Multiple texts and emails to/from client regarding engagement letter. | .2 |
| 1/07/22 | AS | Multiple emails to/from client regarding explanation of Agreed Court Order. | .2 |
| 1/08/22 | AS | Multiple emails to/from client regarding draft Complaint against Mr. Garu. | .2 |
| 1/09/22 | AS | Receipt and review of Court Order granting extension to answer Complaint, Email update to client. | .2 |
| 1/11/22 | AS | Receipt and review of multiple emails from Ms. Jenkins about mortgage, Telephone call with client regarding update on Co-Defendants. | .4 |
| 1/11/22 | AS | Receipt and review of Answer from Defendants, Counterclaim, and Answer to Counterclaim, Report to client regarding case update. | .6 |
| 1/13/22 | AS | Telephone call with Ms. Jenkins regarding strategy issues for bankruptcy. | .2 |
| 1/13/22 | AS | Telephone call with counsel for Ms. Parker regarding update on Mr. Garu and issues with bankruptcy decisions, Email to counsel regarding Complaint against Mr. Garu and update on mortgage communications. Email update to client. | .4 |
| 1/13/22 | AS | Review of Complaint, Counterclaim, Answers and pleadings to prepare for required Case Management Conference and provide recommendations for resolution and dismissal of Ms. Jenkins from case. | .8 |
| 1/17/22 | AS | Receipt and review of email from opposing counsel regarding settlement update. | .1 |
| 1/18/22 | AS | Receipt and review of email from Ms. Jenkins regarding termination of services, Telephone call with client. | .2 |
| 1/24/22 | AS | Email to client regarding update on lawsuit defense. | .1 |
| 1/26/22 | AS | Telephone call with client regarding case and file management updates, Telephone call with Plaintiff's counsel regarding withdrawal as counsel, Draft Notice of Withdrawal as counsel, Email update to client. | .5 |
| 1/26/22 | AS | Multiple emails to/from client regarding her questions about retainer and refund. | .1 |
| 1/27/22 | AS | Email update to client regarding withdrawal from lawsuit, Receipt and review of text message from client, Telephone call with client regarding issue with restraining order. | .3 |

| Recap of Services | | Hours | Effective Rate | Fees |
|---|---|---|---|---|
| Andrew Smith | | 7.0 | 250.00 | 1,750.00 |
| | Total | 7.0 | | 1,750.00 |

**Total Fees** 1,750.00

**Total Current Charges** $ 1,750.00

DISBURSEMENTS MADE FOR YOUR ACCOUNT, FOR WHICH BILLS HAVE NOT YET BEEN RECEIVED, WILL APPEAR ON A LATER STATEMENT

# LEWIS BRISBOIS BISGAARD & SMITH LLP

LAWYERS
SUITE 4000
633 W. FIFTH STREET
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 250-1800      **FEDERAL I.D. NO   95-3720522**

May 04, 2022                    AS29

**Melisa Jenkins - General Business**
**4457 Mellwood Avenue**
**Cincinnati, OH 45232**

**Attn:        Melisa Jenkins**

**51824-2**                    **Melisa Jenkins - General Busines**

**Statement of Your Account as of May 04, 2022**

| Inv. No. | Date | Amount Billed | Amount Paid | Balance |
|---|---|---|---|---|
| 3198586 | 1/26/22 | 250.00 | .00 | 250.00 |
| 3226532 | 2/24/22 | 1,750.00 | .00 | 1,750.00 |
| **Total Amount Due** | | | | **2,000.00** |

**PLEASE DIRECT ALL INQUIRIES TO THE  CLIENT RELATIONS DEPARTMENT AT 213-250-1800**
**EXTENSION 6063**

DISBURSEMENTS MADE FOR YOUR ACCOUNT, FOR WHICH BILLS HAVE NOT YET BEEN RECEIVED,
WILL APPEAR ON A LATER STATEMENT

# LEWIS BRISBOIS BISGAARD & SMITH LLP

LAWYERS
SUITE 4000
633 W. FIFTH STREET
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 250-1800

FEDERAL I.D. NO  95-3720522

| File Number AS29 | 51824-2 | Melisa Jenkins - General Business<br>Melisa Jenkins - General Busines | 1/26/22<br>3198586<br>Page        1 |
|---|---|---|---|

| Date | Atty | Description of Services Rendered | Hours |
|---|---|---|---|
| 12/17/21 | AS | Initial file set up, Draft Engagement letter, Telephone calls and text messages to/from client, In person meeting with client. | 1.0 |

| Recap of Services | | Hours | Effective Rate | Fees |
|---|---|---|---|---|
| Andrew Smith | | 1.0 | 250.00 | 250.00 |
| | Total | 1.0 | | 250.00 |

**Total Fees**   **250.00**

**Total Current Charges**   $ **250.00**

DISBURSEMENTS MADE FOR YOUR ACCOUNT, FOR WHICH BILLS HAVE NOT YET BEEN RECEIVED,
WILL APPEAR ON A LATER STATEMENT

# LEWIS BRISBOIS BISGAARD & SMITH LLP

LAWYERS
SUITE 4000
633 W. FIFTH STREET
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 250-1800

FEDERAL I.D. NO 95-3720522

February 24, 2022
Invoice No.    3226532

**Melisa Jenkins - General Business**
**4457 Mellwood Avenue**
**Cincinnati, OH 45232**

**Attn:    Melisa Jenkins**

Re: Melisa Jenkins - General Busines                                             Final Bill
Our File No.:          51824-2

Current Fees through 02/24/22                                                      1,750.00

Total Current Charges                                                        $     1,750.00

**\*\*\* Please return this page with your payment. \*\*\***

**Wire Instructions**

City National Bank
Account Name: Lewis Brisbois Bisgaard & Smith, LLP-Attorney Operating Account
(Receivables)
Account No.: 210903526
ABA Routing No.: 122016066
SWIFT A/C No.: CINAUS6L

**All Charges in US Dollars**

DISBURSEMENTS MADE FOR YOUR ACCOUNT, FOR WHICH BILLS HAVE NOT YET BEEN RECEIVED,
WILL APPEAR ON A LATER STATEMENT

3.A

Agreement between Rajib Garu and Melisa Jenkins

Per verbal understanding regarding 4457 Mellwood property exchange, signed into name of Rajib with intention of pulling out equity and using for funds driven towards Melisa real estate portfolio, including 3464 Cheviot Ave and future properties. Proceeds off Mellwood rental will be split on 60/40 percent basis with Rajib receiving 60% while also paying insurance and taxes. Melisa will live rent free on premises during construction of Cheviot and move in to Cheviot is based on construction completion. Rajib will pay a share of the utilities at Mellwood due to his status as a member of the family and household. Rajib will also share in the upkeep and regular maintenance of Mellwood like gutter clean out and basic repairs. Rajib will pay taxes and insurance on Cheviot until the cash out refi money is available and/or as long as the property remains in his name. Insurance has to be the full replacement amount of structure and personal belongings for Cheviot and remain comparable to existing coverage on Mellwood that Melisa currently has in place. Rajib will provide proper maintenance to Mellwood to prevent water damage and depreciation. Regular gutter clean out will be managed properly.

3464 Cheviot Ave will receive the upgrades listed in agreement including but not limited to ( based on unforeseeable circumstances) full lead abatement including window replacement, deck repair, gutter repair/re-facing, flooring first floor vinyl and second floor carpet, plumbing, kitchen and bath install, concrete install and pool excavation, basement repair, driveway repair and water diversion, fence. Quality of construction and final outcome of Cheviot will be comparable in value to Mellwood Ave property.

Relationship status does not affect the agreement, Rajib can in no way use displacement as any means of threat or intimidation or force eviction on Melisa or heirs, legal or otherwise. Rajib is handling the property transaction in the form of client/broker/agency/trustee agreement protocol. Said properties cannot be listed or sold without dual agreement between Melisa and Rajib and the proceeds from sale will be discussed.

Proceeds of equity cash out on Cheviot will be split 50/50 or remain one lump sum to go into portfolio for Melisa and hOMespace Tea House LLC or Sustenance Design Cincy LLC, depending on agreement at that time. Mellwood is considered a trust with Melisa or her heirs to be listed as beneficiary and the properties attached to the transaction will not be in any way inherited by anyone other than Melisa or beneficiaries, Terran Lauren and/or Casie or affiliated LLC's of Melisa or named heirs. Properties attached to the transaction are any purchase made using funds

3

3.A

Agreement between Rajib Garu and Melisa Jenkins continued....

from the equity which begins with the date of Mellwood transfer moving forward indefinitely. (formal paperwork to be filed as trust in the above mentioned transaction as a means to avoid future probate upon death of any named party). Any named LLC attached to Cheviot and/or Mellwood will not be attached to Home St address. Melisa or above named heirs will be listed in operating agreement of LLC under which the properties are listed, as beneficiaries or heirs, in such a way that upon death of either Rajib or Melisa, the properties avoid probate and are issued straight to heirs of Melisa Jenkins.

Due to close proximity to park and neighbors with children, Mellwood cannot be rented to any sex offenders or criminals with violent charges. Tenants will be expected to maintain high standards of property maintenance both inside and out, no pets will be allowed.

Rajib will take all routes necessary to reflect Melisa still has shared interest and rights to the Mellwood property and will be involved in making decisions.

Signed                                                    Date

                                                          1 - 4-21

Signed                                                    Date



## AMENDMENT TO PROMISSORY NOTE

**THIS AMENDMENT TO PROMISSORY NOTE** (this "**Agreement**"), dated as of Feb 4th, 2021, by and between Melisa Jenkins (the "**Borrower**"), Address: 4457 Mellwood Ave Cincinnati OH 45232, and **Idealogiz Group LLC.**, (together with its successors and assigns, "**Lender**"), having an address at PO Box 36576 Cincinnati OH 45236

**WHEREAS**, Borrower executed and delivered a Note dated as of January 7, 2021 for the benefit of Lender in the original principal amount of $30000 (the "**Note**");

**WHEREAS**, Lender and Borrower are parties to that certain Loan and Security Agreement dated as of January 7, 2021, by and between Borrower and Lender, as amended by that Amendment to Loan and Security Agreement dated the date hereof between such parties (the "**Loan Agreement**");

**WHEREAS**, Lender and Borrower desire to amend the Note as set forth herein.

**NOW, THEREFORE**, intending to be legally bound hereby, the parties hereto agree as follows:

original note is changed as follows

WER'S PROMISE TO PAY. In return for a loan to enkins, Borrower promises to pay **$94,500 USD**, ("Loan Amount + fixed interest rate of 5%"), to **Idealogiz Group , LLC,** ") of PO Box 36576 Cincinnati OH 45236 (Address)

ginal note is changed as follows

REST. Fixed interest rate of 5%. Total balance due = **$94500**"

3. All references to the Principal Amount contained in the Note shall be deemed to refer to the Principal Amount as amended by this Agreement, as the same may be further amended, restated, replaced, supplemented or otherwise modified from time to time.

5. Except as specifically modified and amended herein, all other terms, conditions and covenants contained in the Note shall remain in full force and effect.

6. All references in the Loan Documents to the "Note" shall mean the Note as hereby amended.

7. This Agreement may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

8. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

9. This Agreement shall be governed by OHIO law, without regard to conflicts of law principles.

**[SIGNATURE PAGES IMMEDIATELY FOLLOW]**

-2-

Page 1 of 2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**BORROWER:**

By: _____
Name: Melisa Jenkins

*[LENDER'S SIGNATURE APPEARS ON THE FOLLOWING PAGE]*

-3-

**LENDER:**

By: _____
Name: Idealogiz Group LLC

-4-

Page 2 of 2

## SECURED PROMISSORY NOTE

**Date:** 1/7/2021 ("Effective Date")

**Property Address:** 4457 Mellwood Ave Cincinnati OH 45232

1. **BORROWER'S PROMISE TO PAY.** In return for a loan to **Melisa Jenkins**, Borrower promises to pay **$31,500 USD**, ("Loan Amount **($30,000** + fixed interest rate of 5%"), to **Idealogiz Group , LLC**, ("Lender") of PO Box 36576 Cincinnati OH 45236 (Address)

2. **TERM.** The term of this loan shall be *4 months* from the Effective Date of this Note .The full balance of this loan will be due in full on or before **May 7th, 2021**, or from the proceeds of the sale of 4457 Mellwood Ave Cincinnati OH 45232 whichever is earlier.

3. **INTEREST.** Fixed interest rate of 5%. Total balance due = **$31500**

4. **PAYMENTS.** Borrower will pay Lender the entire unpaid principal balance and all accrued interest and/or fees owed to Lender under this Note on or before the term end date or from the proceeds of the sale of 4457 Mellwood Ave Cincinnati OH 45232 *whichever is earlier*.

5. No fee will be charged at payoff.

6. **BORROWER'S RIGHT TO PREPAY.** Borrower may pay principal, interest, or both at any one or more times before payment is due. A payment of principal that Borrower designates as such in writing is known as a "Prepayment." Borrower may make any Prepayment without paying a Prepayment charge. Prepayments will reduce the amount of principal that Borrower owes under this Note. However, Lender may apply Prepayments to any accrued but unpaid interest or other amounts due under this Note before applying the Prepayment to reduce the principal balance of the Note. If Borrower makes a Prepayment of less than the entire outstanding principal balance, there will be no change in the Balloon Date unless Lender agrees in writing to such change.

7. **SECURED NOTE.** The Borrower's obligation to repay this Note is secured by a *First Mortgage (the "Security Instrument"), dated the same date as this Note*, on the Property in favor of Lender.

8. **BORROWER'S FAILURE TO PAY AS REQUIRED.**

(A) **Late Charges for Overdue Payments.** If Lender has not received any payment in full from Borrower within 10 calendar days after it is due, then Borrower will pay a late charge to Lender of $500 as liquidated damages. Beginning on the 11th day past due, Borrower will pay an additional late charge of $50 per day as liquidated damages until the outstanding payments are made in full and the Note has been brought back into good standing with the repayment of all missed payments and/or fees.

(B) **Default.** If Borrower does not pay each payment in full on the date it is due, Borrower will be in default.

(C) **Notice of Default.** If Borrower is in default, Lender may send Borrower a written notice telling Borrower that if Borrower does not pay the overdue amount by a certain date then Lender may require Borrower to pay immediately in full all unpaid principal and accrued but unpaid interest owed under this Note. That date must be at least 30 days after the date on which the notice is mailed to Borrower or delivered by other means.

(D) **No Waiver by Note Holder.** Even if Lender does not require Borrower to pay immediately in full as described above when Borrower is in default, Lender may still do so if Borrower is in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses.** If Lender has required Borrower to pay immediately in full as described above, Borrower will pay Lender for all of Lender's costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorney's fees, for example.

9. **REPRESENTATIONS AND WARRANTIES.**

(A) **Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that: (i) Borrower is a limited liability company that is duly organized under Ohio law; (ii) Borrower's principal office is located in Cincinnati, Ohio; and (iii) Borrower will use the proceeds of this loan only in connection with the purchase and/or operation of the Property for business purposes.

(B) **Lender's Representations and Warranties.** Lender represents and warrants to Borrower that: (i) Lender is making this loan for Lender's own account and not with a view to reselling the loan to any other person or entity; (ii) Lender acknowledges that this Note contains transfer limitations and restrictions and that Lender understands and agrees to the transfer limitations and restrictions; (iii) Lender acknowledges that the loan evidenced by this Note is a business loan for commercial purposes and that Lender's return is controlled by the terms of the Note and the Security Instrument that Lender has negotiated and not by the entrepreneurial efforts or profits of Borrower; (iv) to Lender's knowledge, no commission, discount, or other remuneration has been paid or given directly or indirectly for the placement or sale of the promissory notes of Borrower.

10. **SEVERABILITY.** Should any provision of this Agreement, or the application thereof, be held invalid or unenforceable by a court of competent jurisdiction, the remainder of this Agreement, or alternative applications thereof, other than the provision(s) which shall have been held invalid or unenforceable, shall not be affected thereby and shall continue to be valid and enforceable to the fullest extent permitted by law or equity.

11. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the following address: **Idealogiz Group , LLC,** ("Lender") of PO Box 36576 Cincinnati OH 45236 (Address)

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the following address: **Melisa Jenkins**, 4457 Mellwood Ave Cincinnati OH 45232

12. **WAIVERS.** Borrower waives Presentment and Notice of Dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid. Borrower waives all claims for loss or damage caused by Lender's acts or omissions where Lender acted reasonably and in good faith.

13. **APPLICABLE LAW.** Ohio law governs the construction and interpretation of this Note. The state and federal courts located in Hamilton County, Ohio shall have exclusive jurisdiction over any claim or controversy relating to this Note.

14. **ENTIRE AGREEMENT.** This Note may not be amended except by a writing that is signed by both Lender and Borrower.

15. **TRANSFER RESTRICTIONS.** This Note is binding upon Lender, Borrower and their permitted successors and assigns. Lender may not encumber, sell, or otherwise transfer any interest in this Note unless Lender either (i) registers this Note under the Securities Act of 1933 and applicable state securities laws or (ii) Borrower, with an opinion of counsel, determines that registration is not required.

16. **EVENTS OF DEFAULT.** If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender shall become due immediately, without demand or notice:

   a. the failure of the Borrower to pay the principal and any accrued interest in full on or before the Balloon Date;
   b. the death of any guarantor of this Note;
   c. the filing of bankruptcy proceedings involving the Borrower as a debtor;
   d. the application for the appointment of a receiver for the Borrower;
   e. the making of a general assignment for the benefit of the Borrower's creditors;
   f. the insolvency of the Borrower;
   g. a misrepresentation by the Borrower to the Lender for the purposes of obtaining or extending credit;
   h. the winding up, liquidation or dissolution of Borrower;
   i. failure of Borrower to do, or cause to be done, all things necessary to preserve and keep in full force and effect its existence and its rights, franchises and qualifications to do business;
   j. Borrower or any guarantor of this Note defaults under any term of any loan, guaranty or security agreement made by and between the Lender and the Borrower that would allow the Lender to accelerate such obligation;
   k. Failure of Borrower to maintain the insurance required hereunder at all times.

In addition, the Borrower shall be in default if there is a sale, transfer, assignment, or any other disposition, or creation of any contract for disposition, of any assets pledged as security for the payment of this Note, or if there is a default in any security agreement which secures this Note.

No renewal or extension of this Note, delay in enforcing any right of Lender under this Note, or assignment by Lender of this Note shall affect the liability or the obligations of Borrower hereunder in this Note. All rights of Lender hereunder in this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option and discretion.

17.     **NO OFFSETS.**   Borrower agrees to pay this Note free from any offset, deduction or counterclaim.

18.     **TIME OF ESSENCE.**   Time is of the essence of this Note and of each of its provisions.

19.     **INSURANCE REQUIREMENTS.**   Borrower understands that insurance coverage on the Property is required in connection with the extension of the loan hereunder. This insurance coverage must be maintained in full effect until the loan is paid in full. The following minimum insurance coverage must be provided on the Property unless otherwise agreed to in writing by the Lender:

> **Type:**  Fire and extended coverage and all risk endorsements.
> **Amount:**  Loan Amount.
> **Basis:**  Replacement value.
> **Endorsements:**  Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days prior written notice to the Lender, and without disclaimer of the insurer's liability for failure to give such notice.
> **Deductibles:**  $500.00.
> **Latest Delivery Date:**  By the loan closing date.
> **Loss Payee: Melisa Jenkins**, 4457 Mellwood Ave Cincinnati OH 45232

If Borrower fails to maintain the required insurance in full effect until all amounts due to Lender hereunder are paid in full, the Lender may, at its sole discretion, purchase insurance to protect its interest in the Property at the expense of Borrower. Borrower agrees to pay the Lender for such insurance and understands that the insurance may not provide any coverage or benefit to Borrower.

20.     **JURY WAIVER.**   Borrower irrevocably waives its right to trial by jury in any action involving this Note or the debt that the Note evidences.

Borrower has signed this Note in Cincinnati, Ohio on the Effective Date.

**BORROWER**:

Melisa Jenkins
4457 Mellwood Ave Cincinnati OH 45232

## PERSONAL GUARUNTY

Date: 01/07/2021

Address: 4457 Mellwood Ave Cincinnati OH 45232
Reference: Secured Promissory note for 4457 Mellwood Ave Cincinnati OH 45232

The undersigned, ("Borrower"), individually, does hereby guarantee the full performance of this SECURED PROMISSORY NOTE to which this Personal Guaranty is attached, and does further indemnify and hold    Idealogiz Group LLC  ("Lender")  harmless, from any claims, whatsoever, arising out of the enforcement of the terms of said Note by the Lender, its successors and/or assigns. This personal guarantee will be deemed invalid once the lien on the subject property (4457 Mellwood Ave Cincinnati OH 45232) is removed.


Melisa Jenkins
_____                                    1/7/2021
            Individually                                              Date

14330   00944

Scott Crowley
Hamilton County Recorder's Office
Doc #: 2021-0003063 Type: MT
Filed: 01/08/21 09:12:17 AM   $34.00
Off. Rec.: 14330   00944   F   2   256

b1433000944Fb

## MORTGAGE

* Melisa Jenkins , for Thirty Thousand and xx/100, ($30000.00 paid, grants with mortgage covenants to  Idealogiz Group LLC  whose address is PO Box 36576 Cincinnati OH 45236  the following real property:

  ( 4457 Mellwood Ave Cincinnati OH 45232   )

SEE EXHIBIT A-Legal Descriptions ATTACHED HERETO

Mortgagor claims title to the above described property by virtue of an instrument recorded in Official Record Book Parcel # : 220-0059-0015-00 of the Hamilton County, Ohio Records.

Property Description : 4457 MELLWOOD AVE 93 X 199.63 PT LOT 25 DODSWORTH EST

This Mortgage is given upon the statutory condition to secure payment of **$30000.00** with interest as provided in a Note of even date herewith. "Statutory Condition" is defined in Section 5302.14 of the Ohio Revised Code and provides generally that, if the Mortgagor pays the principal and interest secured by this Mortgage, performs the other obligations secured hereby and the conditions of any prior mortgage, pays all taxes and assessments, maintains insurance against fire and other hazards, and does not commit or suffer waste, then this Mortgage shall be void.

This mortgage will mature and become fully due and payable on  May 7th, 2021 or  on the date of  sale of 4457 Mellwood Ave Cincinnati OH 45232 whichever is earlier.

Signed this 7 day of __Jan____, 2021.

Melisa Jenkins (Mortgagor)

_____

Clermont (32)

**STATE OF OHIO, COUNTY OF MONTGOMERY**   ) SS.

The foregoing instrument was acknowledged before me on this 7th day of _Jan_____, 2021, by  Melisa Jenkins the Mortgagors herein, as their free act and deed.

_____

NOTARY PUBLIC
ROBERT M. SCHWARTZ
NOTARY PUBLIC
STATE OF OHIO
My Commission
Expires
February 16, 2023

Prepared by: Mortgagee

## MORTGAGE

- Melisa Jenkins , for Ninety Thousand and xx/100, ($90000.00 paid, grants with mortgage covenants to Idealogiz Group LLC whose address is PO Box 36576 Cincinnati OH 45236 the following real property:

( 4457 Mellwood Ave Cincinnati OH 45232 )

SEE EXHIBIT A-Legal Descriptions ATTACHED HERETO

Mortgagor claims title to the above described property by virtue of an instrument recorded in Official Record Book Parcel # : 220-0059-0015-00 of the Hamilton County, Ohio Records.

Property Description : 4457 MELLWOOD AVE 93 X 199.63 PT LOT 25 DODSWORTH EST

This Mortgage is given upon the statutory condition to secure payment of $90000.00 , with interest as provided in a Note of even date herewith. "Statutory Condition" is defined in Section 5302.14 of the Ohio Revised Code and provides generally that, if the Mortgagor pays the principal and interest secured by this Mortgage, performs the other obligations secured hereby and the conditions of any prior mortgage, pays all taxes and assessments, maintains insurance against fire and other hazards, and does not commit or suffer waste, then this Mortgage shall be void.

This mortgage will mature and become fully due and payable on May 7th, 2021 or on the date of sale of 4457 Mellwood Ave Cincinnati OH 45232 whichever is earlier.

Signed this 5 day of __Feb___, 2021.

Melisa Jenkins (Mortgagor)

STATE OF OHIO, COUNTY OF MONTGOMERY ) SS.

The foregoing instrument was acknowledged before me on this 7th day of Jan 2021, by Melisa Jenkins the Mortgagors herein, as their free act and deed.

BRIAN BAUER
NOTARY PUBLIC
IN AND FOR THE STATE OF OHIO
MY COMMISSION EXPIRES AUGUST 1, 2019

NOTARY PUBLIC

Prepared by: Mortgagee

14330 00945

EXHIBIT A

Situate in Section 16, Township 3, Fractional Range 2 of the Miami Purchase, Millcreek Township and being a part of Lot No. 25 of the Subdivision of M. Dodsworth's Estate, as recorded in Plat Book 2, Page 197, of the Plat Records of Hamilton County, Ohio and more particularly described as follows:

Beginning at a point in the West line of said Section 16, South 1° 15' West 853.64 feet from the Northwest corner of said section

Thence South 88° 52' East 224.63 feet to a point in the center line of Mellwood Ave;

Thence along the center line of Mellwood Ave. North 1° 15' East 93 feet to a point;

Thence North 88° 52' West 224.63 feet to the West line of said Section 16;

Thence along said section line South 1° 15' West 93 feet to the place of the beginning.

Parcel # 220-0059-0015-00

3.A

{Name: Rajib Garu} ,known as "Second Party,"
agrees to enter into this contract with {Name: Melisa Jenkins}, known as
"First Party" on {Date :                              }.

This agreement is based on the following provisions:

1. Second Party agrees to standard no harm agreement as signed by First
Party in Spring 2020, outlining general no harm in attempts of legal
litigation or other general attempts to collect money in any way, regarding
work on properties, loans, or personal matters from First Party or her
children. Agrees to not interfere with completion of projects based on
emotional response to relationship issues, including employee interference,
firing, payroll, retracting contracts, etc. Agrees to not withhold any promised
funds for completion of said projects. Agrees to abide by code of ethics and
morals based on Board of Realtors recommendations.

2. Second Party agrees to no harm on any shared bank, credit account, or
loan account, understands being added as joint account holder comes with
promise to not create any negative balances in account, will not withdraw
funds without permission which were not deposited by second party, will not
give away account information, will not interfere with business transactions
through account, will not allow any potential for old account issues attached
to his social security number to affect status of Sustenance Design Cincy
LLC account, will agree to no harm of credit of Sustenance Design Cincy
LLC or any other LLC's related to Melisa Jenkins, will not allow emotional
responses to impact any action on banking or credit. Agrees to not take out
any debt under name or social security number of Melisa Jenkins and agrees
not to use tax ID number of Melisa Jenkins or affiliated LLC's.

3. Second Party agrees to non-disclosure of any business plan regarding tea
house, wellness center or sexual wellness center and agrees to not use any
business plan discussed by First Party without her consent or involvement.
Second party understands any attempt to do so will result in filed claim of
appropriation and litigation thereafter.

4. Both parties agree no use of slander or defamation during partnership or
in the event of dissolution.

\

3.A

5. Second party agrees to release mortgage/lien on 4457 Mellwood Ave upon payment of agreed note in the sum of $31,5000. This agreement also contains the understanding of second party agreeing to not enforce late fees as mentioned in mortgage note.

6. Second party agrees to complete sales contract for $80,000 on Cheviot Ave with first party. Second party also agrees to create listing contract with first party on 4457 Mellwood Ave on 2% commission and will actively work to find a buyer to meet other contractual agreement terms. If the sale deadline is not met, party 2 agrees to non-enforcement of late fees as mentioned in said agreements outside this contract.

_____                         _____
Initial                                    Initial


Furthermore, the First Party agrees:
6.

7.

8.

9.

10.

11.

_____                         _____
Initial                                    Initial

2

# Melisa Jenkins File Notes

Fortune Vine Realty/Cincy Cash Flow Investments/Idealogiz:      Ms Jenkins was hired by Mr Garu as personal secretary and never paid.

TheCultureShock, LLC:      This was created as a YouTube channel business partnership. The channel consisted of reaction videos created by Ms. Jenkins and her two daughters to various Indian content.  The channel now has 77,500 subscribers.  The channel earns revenue through ads.  Ms. Jenkins purchased roughly $5,000 in equipment, including cameras, lighting, memory cards, hard drives, costumes, and food to support the business. Casie and Lauren Jenkis spent approx * months achieving what was asked by them from Mr Garu and were never compensated. They were under the impression there would be some form of payment.

Cosmonic Partners, LLC:      This was created as a wellness/travel business partnership. However, Mr. Garu would use the U.S. Bank account money for various real estate deals. Ms. Jenkins invested roughly $4,000 into this business without any return.

During Ms Jenkins Employment with Mr Garu, she was assigned to work on the following properties and was never paid.

1636 First Avenue Rehab:      design and project management for a fee of $750.

3614 Maria Ave:      design and project management for a fee of $750.

1826 Pleasant Ave:      design and project management for a fee of $750.

1218 Purcell Rehab:      design and project management for a fee of $750.

1242 Quebec Rehab:      design and project management for a fee of $750.

1118 Carson Rehab:      design and project management for a fee of $750.

206 Clinton Springs Rehab:      design and project management for a fee of $750.

2905 Cavanaugh Rehab:      design and project management for a fee of $750.

1607 Minion Rehab:      design and project management for a fee of $750.

5009 Limberlost Rehab:      design and project management for a fee of $750.

923 Rogers Rehab:      design and project management for a fee of $750.

3639 Glenmore Rehab:      M. Jenkins was hired to clean, paint, and design for a fee of $2,500.  However, she was not paid anything at all. She also invested in file cabinets, furniture and decor for which she was not reimbursed.

<u>2424 Ridgewood Rehab</u>:    M. Jenkins was hired for a landscape repair, but she was shorted $200 of her fee.

<u>1233 Dewey</u>  M. Jenkins was hired for lock change and site evaluation for a fee of $750.

<u>2680 Lehman, Unit C-504 Rehab</u>:              design and project management for a fee of $750.

<u>2691 Lehman Garu Personal Apartment</u>:  M. Jenkins has personal belongings and furniture located here that Mr. Garu refuses to return. Value $1250

<u>McMakin Rehab</u>:    M. Jenkins was hired to complete the trash-out and clean-out at this project.  She was not paid $3,000. He blocked the bank account forcing Ms Jenkins to pay employees out of her own account

<u>1038 Academy Rehab</u>:       M. Jenkins was supposed to receive a commission and design fee from this flip for her work on the project, totaling $3,500.

<u>3634 Cheviot Avenue Rehab</u>:       M. Jenkins invested $90,000 of funds into this project and handled all of the rehab labor herself.  Still to this day, her tools and equipment (valued at $5,000) are locked inside the home.

<u>4031 Jamestown:</u> This was a deal Melisa brought to Rajib through her investor clients. She was promised commission for any sale and was not paid upon the closing of the sale and transfer on June 4, 2021

<u>1693 Westwood Ave</u>: This was a deal Melisa brought to Rajib through her investor clients. She was promised commission for any sale and was not paid upon the closing of the sale and transfer on December 3, 2020

<u>Baywatch Lein</u>:       Garu and M Jenkins had a contract and verbal agreement on the payment of funds related to the codo rehab and sale. Ms Jenkins was never paid. Garu filed false police report claiming forgery of contract after lien was filed.

<u>Breech of Verbal Contract Claims</u>:         March 2020-May 2021_____Count 1. M Jenkins served as personal secretary for Garu ,established verbal agreements which led Ms. Jenkins continually invest time and money into the partnership,  Jenkins was never compensated. Annual salary for approx 30 hours per week $52,000 Garu          Count 2. Garu established a verbal contract with Ms. Jenkins promised to pay commission split for any real estate deal Melisa landed, investor connected or agent found. Jenkins brought investors which resulted in closing, Jenkins was never compensated.  Count 3. Under duress Ms. Jenkins was asked to turn over her investor clients to his brokerage and commissions were never paid as a result of their patronage i.e Jamestown, Westwood Ave. Count 4, Garu placed properties in wrong LLC's according to their agreement. Jenkins was clear none of their common properties would be placed in Idealogiz which is attached to 4140 Home St. Cheviot was placed in that LLC and the title for Mellwood was placed in an LLC also attached to that address. The full title of Mellwood

was never transferred as a result. The LLC address was changed according to Mr Garu but that has not been verified with a review of the Secretary of State records.

Physical Assault and Battery Claims:    On multiple occasions M Jenkins has been physically assaulted and abused by Garu.  Count 1. The first attack occurred in Mr. Garu's apartment in Summer 2020.  Count 2. In Fall 2020 Mr. Garu again attacked Ms. Jenkins on a rehab project.  Count 3. In December 2020, Mr. Garu attacked Ms. Jenkins at the McMakin project.  Count 4. In Spring 2021 Mr. Garu again attacked her.  Ms. Jenkins sustained bruises and extreme emotional and mental trauma from these incidents.

Financial Assault Claims:    Count 1. force of shutting down Social Media, Count 2. effects on Airbnb due to cancellations, Count 3. change of phone number, Count 4. fraudulent claims on bank accounts to block me, affecting credit and flagging accounts, Count 5. tarnish reputation through slander and false claims made to police, members of communities, contractors, Count 6. costs paid out to employees, Count 7. aftermath and loss of income, causing severe reduction of income over course of past one year,

Fraud and Abuse of Process Claims:    Count 1. At 3634 Cheviot Avenue, Mr. Garu filed false police reports and lied during multiple interactions with the police, claiming Ms. Jenkins was stealing from him. Count 2. Mr. Garu also claimed Ms. Jenkins was a random maintenance worker which he hired for lawn maintenance and fired after he caught her inside the house, falsely claimed she should not be there, and she did not own any property at the premises.

Conversion and Trespass to Chattels Claims:    At 3634 Cheviot Avenue, still to this day, personal property of Ms. Jenkins' tools and equipment (valued at $5,000) are locked inside the 3464 Cheviot Ave investment property preventing her from accessing her property and using her tools for her business.

Extortion & Coercion

Affidavit #1: contractor not fully paid, breech of contract and subpoena Allied Plumbing was called as a reference from Rajib's employee, he hired them to do the work and after job was complete he never paid and stopped answering their calls. Bill is for $1000

Affidavit #2: contractor not paid and subpoena Brian was hired to do work for Rajib and was never paid

Affidavit #3   Breech of Contract and subpoena Shamon had a contract with Rajib, showed up to begin the work and Rajib had another crew onsite

Affidavit #4 :   contractor not paid and subpoena Robbie was not paid for work on Rajib's Baywatch condo in Mason. He states finally after one year and multiple threats Rajib sent him $200 on June 10th

Affidavit #5 : sexual harassment and subpoena Karissa Eby responsded to an ad for cleaning planced by Rajib on FB, he asked her if she would consider friends with benefits

Affidavit #6 : sexual harassment and subpoena Christina Burton worked for Rajib for several months. She states he created a sexually charged environment by comments like "where do you think I should put the bed" while she was in a meeting with him touring his office. He proceeded to invite her out multiple times and tried to get her to come to his apartment. She is claiming other types of sexually charged innuendo expressed by Rajib. She has all the proof and is filing a complaint with the Division of Real Estate. Also witness to housing agency blacklisting of Mr. Garu's LLC's.

Affidavit#7: _____ witness to physical assault and subpoena Keith Turner had issues with Rajib on McMakin and witnessed the physical assault

Affidavit #8: _____ witness to physical assault and subpoena Erin Bartsch and her husband live next door and were witness to the physical assault

Affidavit #9 _____ Client statements on real estate transaction and subpoena Investors were sold a condemned building with Rajib acting as their agent. Rajib did not check city orders and claims to have text and emails from the listing agent stating the building was condemned. The buyers were not made aware until after closing when they went and found the building gone.

Affidavit #10 _____ Casie and Lauren Jenkins were the faces of The Culture Shock YouTube channel. They were never paid.

Affidavit #11 ___ Home Depot Security was approached by Mr Garu on two occasions at his place of employment, once Mr Garu pretending to be the brother of soon to be husband of Melisa Jenkins and next time as husband making threats.

Affidavit #12 ___ Royal T Auto, mechanic, back charged for service on M Jenkins car after argument with Mr Garu due to Garu jealousy

Affidavit #13 ___ Security Administrator at Home Depot approached by Garu in a hostile and threatening way at his place of employment on two occasions

Affidavit #14 _____ Report to Division of Real Estate multiple violations under the Code of Ethics

Affidavit #15 ___ Report to NAR multiple violations under Articles 1 & 2 of the National Association of Realtors Code of Ethics no reasonable skill and care, no sense of loyalty, obedience or confidentiality

Affidavit #16 _____ Report to IRS tax fraud

Affidavit #17 _____ Report to Insurance insurance fraud

Affidavit #18 ___ Report to Ohio Association of Realtors on multiple violation of Property Management and violations of code of ethics including and not limited to hiding material defects, sexual harassment, off market deals, undisclosed dual agency, breech of contract, not pulling

permits, coercion and bribery, fraud, non ethical treatment of contractors, false charges with investors, predatory lending, illegal dumping, housing agency blacklisting.

Affidavit #19    Report to Baywatch HOA regarding fraudulent lawsuit and intentional hiding of material defects

Criminal charge for falsifying a police report

Financial assault and abuse of process defaming my public record to prevent licensing


Settlement Terms:

Fortune Vine Realty/ Cincy Cash Flow Investments/Idealogiz:    $35,000 lump sum payment for monthly installments over next one year until paid.

The Culture Shock    $40,000 one time payment in the name of Casie and Lauren Jenkins or monthly installments over next one year until paid and percentage of royalties throughout lifespan of channel.

Cosmonic:    One year part time salary for time invested equivalent to $15,000 lump sum payment or monthly installments over next one year until paid

1636 First Avenue Rehab: $750 paid immediately

Maria Rehab:    $750 paid immediately

1826 Pleasant Avenue Rehab:    $750 paid immediately

1218 Purcell Rehab: $750 paid immediately

1242 Quebec Rehab:    $750 paid immediately

1118 Carson Rehab: $750 paid immediately

206 Clinton Springs Rehab:    $750 paid immediately

2905 Cavanaugh Rehab:    $750 paid immediately

1607 Minion Rehab:    $750 paid immediately

5009 Limberlost Rehab:    $750 paid immediately

923 Rogers Rehab: $750 paid immediately

<u>3639 Glenmore Rehab</u>:     $2500 paid immediately

<u>2424 Ridgewood Rehab</u>:     $200 paid immediately

<u>1233 Dewey lock change and site evaluation</u>:  $750 file lien paid immediately

<u>2680 Lehman, Unit C-504 Rehab</u>:  $750 file immediate lien paid immediately

<u>2691 Lehman Garu Personal Condo</u>:  $1250 paid immediately

<u>McMakin Rehab</u>:     $3000 paid immediately

<u>1038 Academy Rehab</u>:    $3500 file lien paid immediately

<u>Baywatch:</u>

<u>Jamestown;</u>  commission to be paid

<u>Westwood Ave:</u>  commission to be paid

<u>3634 Cheviot Avenue Rehab</u>:        release of mortgage on Mellwood & unrestricted access of personal belongings in exchange for release of liens on cheviot and Baywatch,  plus commission on sale or rental earnings Mr Garu extorted an illegal silent second mortgage on the Mellwood Ave property, knowing there is a current mortgage not filed, he took advantage of this loophole to claim himself as first mortgagee, which according to Ohio Real Estate Law, is illegal. Also Ms Jenkins was forced under coercion and duress to allow Mr Garu to file this mortgage which in turn funded the remodel of his own property.

<u>Breech of Verbal Contract:</u>_____March 2020-May 2021_____Ms. Jenkins served as personal secretary for Mr. Garu was never compensated.  Annual salary for approx 30 hours per week over the course of one year $52,000

<u>Physical Assault and Battery Claims</u>:       Mr Garu should have to attend counseling services to understand how being a pathological lying narcissistic sociopath affects people around him, intense therapy to lead him toward empathy and morality, work to address his anger issues and provide proof .

<u>Financial Assault</u>:        $1000 weekly from May-until we settle plus $52,000 lump sum payment or share of Earnings through Fortune Vine due to effects Mr Garu's demand had on Ms Jenkins long standing business and AirBnb.

<u>Fraud and Abuse of Process</u>:       community service

<u>Conversion and Trespass to Chattels</u>:      $5000 tool replacement

<u>Report to Division of Real Estate & NAR</u>:    review of all records for next 5 years

Copyright November 1, 2017          Property Address:                                                                    Page 2 of 8

52  **Financing Timeframe: IF BUYER FAILS TO PROVIDE CONFIRMATION THAT BUYER HAS COMPLETED ANY**
53  **OF THE REQUIREMENTS OF THE FINANCING TIMEFRAME, AS SET FORTH IN SUBSECTIONS (a) THROUGH**
54  **(c) below, THEN SELLER MAY, AT SELLER'S SOLE DISCRETION, BY WRITTEN NOTICE TO SELLING**
55  **REALTOR® OR BUYER, TERMINATE THIS CONTRACT.**

56  **(a)** Buyer financing qualification letter based upon initial credit check and preliminary information provided by Buyer stating that
57  such qualification ☐ is ☒ is not contingent upon the closing of Buyer's other real estate and ☒ is attached ☐ is not attached
58  ☐ shall be provided within _____ calendar days of the Contract Acceptance Date.

59  **(b)** Buyer shall complete a loan application, which shall include providing selected lender, with *"intent to proceed"*, including
60  payment for appraisal (if necessary), within _____ calendar days of the Contract Acceptance Date and will make a diligent
61  effort to obtain financing.

62  **(c)** Buyer or Buyer's lender shall notify Listing REALTOR® or Seller, in writing, that a loan approval has been obtained or waived
63  within _____ calendar days of the Contract Acceptance Date.

64  **BUYER IS RELYING ON BUYER'S OWN UNDERSTANDING OF FINANCING TO BE OBTAINED AND PROCESSES**
65  **REQUIRED BY A LENDER AS WELL AS THE LEGAL AND TAX CONSEQUENCES THEREOF, IF ANY.**

66  **4. APPRAISAL CONTINGENCY:** Buyer's obligation to close this transaction is contingent upon Real Estate appraising at or above
67  final sales price of the Real Estate. Buyer has the right to obtain, at Buyer's expense, an independent appraisal performed by an appraiser
68  licensed in Ohio. In the event the Real Estate does not obtain an appraised value (by either Buyer's or Lender's appraiser) equal to or greater
69  than the Purchase Price, Buyer shall have the right to terminate this Contract by delivering written notice to Seller on or before the expiration
70  of (i) the time-frame set forth in Section 3 above for obtaining an appraisal in connection with a cash sale or (ii) the time-frame set forth in
71  Section 3 above for obtaining a loan approval (such applicable time period being referred to as the "Appraisal Contingency Period"). If
72  Buyer does not deliver written notice to Seller that Buyer is terminating the Contract prior to the expiration of the Appraisal Contingency
73  Period, then Buyer's right to terminate this Contract due to appraised value shall be deemed waived. **Seller shall have ALL utilities**
74  **servicing the Real Estate on during the appraisal inspection.**

75  **5. INCLUSIONS/EXCLUSIONS OF SALE:** The Real Estate shall include the land, together with all improvements thereon,
76  all appurtenant rights, privileges, easements, fixtures, and all of, but not limited to, the following items if they are now located on
77  the Real Estate and used in connection therewith: electrical; plumbing; heating and air conditioning equipment, including window
78  units; bathroom mirrors and fixtures; shades; blinds; awnings; window rods; window/door screens, storm windows/doors;
79  shrubbery/landscaping; affixed mirrors/floor covering; wall-to-wall, inlaid and stair carpeting (attached or otherwise); fireplace
80  inserts/grates; fireplace screens/glass doors; wood stove; gas logs and starters; television and/or sound system mounting brackets
81  (excluding televisions and/or sound system), aerials/rotor operating boxes/satellite dishes (including non-leased components);
82  water softeners; water purifiers; central vacuum systems and equipment; garage door openers/operating devices; the following
83  **built-in** appliances: ranges/ovens/microwaves/refrigerators/dishwashers/garbage disposers/trash compactors/humidifiers; all
84  security alarm systems and controls; all affixed furniture/fixtures; utility/storage buildings/structures; inground/above ground
85  swimming pools and equipment; swing sets/play sets; affixed basketball backboard/pole; propane tank/oil tank and contents
86  thereof; electronic underground fencing transmitter and receiver collars; and parking space(s) number(s) _____ and
87  storage unit number _____ (where applicable); **except the following: which are leased in whole or in part** (please check
88  appropriate boxes); ☐ water softener; ☐ security/alarm system; ☐ propane tank; ☐ satellite dish; ☐ satellite dish components:
89  _____. **THE FOLLOWING ITEMS (WHICH ADD NO ADDITIONAL VALUE TO THE**
90  **REAL ESTATE) ARE SPECIFICALLY INCLUDED WITH THE REAL ESTATE:** _____.
91  As listed , Seller to provide list of appliances owned by seller
92  **THE FOLLOWING ITEMS ARE SPECIFICALLY EXCLUDED FROM THE REAL ESTATE:** _____
93  None _____.

94  **6. CERTIFICATION OF OWNERSHIP:** Seller certifies that Seller owns all of the items listed in Section 5 and that they will
95  be free and clear of any debt, lien or encumbrances at closing (except as listed in Section 20 of this Contract). Seller also represents
96  that those signing this Contract constitute all of the owners of the title to the real property and other items as listed in Section 5,
97  together with their respective spouses.

98  **7. SELLER'S CERTIFICATION:** Seller certifies to Buyer that **to the best of Seller's knowledge:** The Real Estate (a) ☐ is
99  ☒ is not located in a Historic District, (b) ☐ is ☒ is not subject to a maintenance agreement, (c) ☐ is ☒ is not located
100 in a flood plain requiring insurance, (d) ☐ is ☒ is not subject to a municipal pre-sale inspection, disclosure, and/or certification
101 of occupancy; if the Real Estate is located in a jurisdiction requiring housing inspection before transfer, Seller shall be responsible
102 for completing and submitting the necessary application and will furnish to Buyer or Buyer's agent a copy of the resulting
103 unconditional certificate on or before the date of Closing, (e) no orders of any public authority are pending, (f) no work has been
104 performed or improvement constructed that may result in future assessments, (g) no notices have been received from any public
105 agency with respect to condemnation or appropriation, change in zoning, proposed future assessments, correction of conditions or
106 other similar matters, and (h) to the best of Seller's knowledge, no toxic, explosive or other hazardous substances have been stored,
107 disposed of, concealed within or released on or from the Real Estate and no other adverse environmental conditions within the
108 boundaries of the Real Estate affect the Real Estate except No Exceptions _____. Seller further certifies
109 that, to the best of Seller's knowledge, there are no encroachments, shared driveways, party walls, property tax abatements or
110 homestead exemptions affecting the Real Estate except: No Exceptions _____ and

Buyer's Initials _____ _____  Date / Time 09 / 27 / 2020   Seller's Initials _____ _____  Date / Time _____

Doc ID: 204b5d5ed76464737e3ffa408d9ffa6ebe5c9c7e

that no improvements or services (site or area) have been installed or furnished, nor notification received from public authority or owner's association of future improvements of which any part of the costs may be assessed against the Real Estate, except: No Exceptions.

**8. HOMEOWNER ASSOCIATION/CONDOMINIUM DECLARATIONS, BYLAWS AND ARTICLES:** Real Estate (a) ☐ is ☒ is not subject to a homeowner association established by recorded declaration with mandatory membership, (b) ☐ is ☒ is not subject to a homeowner association assessment (separate from HOA fees) (c) ☐ is ☒ is not subject to mandatory fees imposed on the real estate [☐ pool, ☐ golf course, ☐ other ________________] (separate from HOA fees). Seller further certifies that, to the best of Seller's knowledge, there are no Homeowner Association violations (current or outstanding) affecting the Real Estate except: No Exceptions.

If the Real Estate is subject to a Homeowner Association Declaration or is a Condominium, Seller will, at Seller's expense, provide Buyer with a current copy of documents affecting the real estate including, but not limited to, documents recorded with the county, the Association Declaration, the Association's financial statements, Rules and Restrictions, schedule of monthly, annual and special assessments/fees, architectural standards (to the extent not included in the Rules and Restrictions), the Bylaws and the Articles of Incorporation and other pertinent documents ("Documents") within N/A calendar days beginning the day following the Contract Acceptance Date. Buyer shall have the right to disapprove of the Documents by delivering written notice of Buyer's disapproval to Seller within N/A calendar days beginning the day following receipt of Documents ("Disapproval Date"). If written notice of disapproval is delivered by the Disapproval Date, then this Contract shall become null and void. Unless written notice is delivered by the Disapproval Date, Buyer shall be deemed to have approved the Documents and waives the right to terminate the Contract based upon the terms and conditions of same. If Seller fails to provide Documents as required, Buyer has the right to terminate the Contract. Seller agrees, as a condition to Closing, to secure, at Seller's expense, written approval for this sale if required by the Documents. Seller, at Seller's expense, shall provide any letter of assessment required at Closing by the lender and/or title company. Seller certifies that the current HOA fees are: $ N/A ☐ Monthly ☐ Quarterly ☐ Annually and/ or ☐ Other ________________.

**9. MAINTENANCE:** Until physical possession is delivered to the Buyer, Seller shall continue to maintain the Real Estate, as described in Section 5, including the grounds and improvements thereon. Seller shall repair or replace any appliances, equipment or systems currently in normal operating condition that fail prior to possession except: No Exceptions. Seller further agrees that until physical possession is delivered to the Buyer, the Real Estate will be in as good condition as it is presently, except for normal wear and casualty damage from perils insurable under a standard all risk policy. If, prior to Closing, the Real Estate is damaged or destroyed by fire or other casualty, Buyer shall have the option to (a) proceed with the Closing, or (b) terminate this Contract. While this Contract is pending, Seller shall not change any existing lease or enter into any new lease, nor make any substantial alterations or repairs without the written consent of the Buyer. **Buyer and Seller agree that Buyer shall be provided the opportunity to conduct a walk-through inspection of the Real Estate within 48 hours prior to Closing, solely for the purpose of ascertaining that the Seller has maintained the Real Estate as required herein and has met all other contractual obligations.** Upon Closing, Buyer shall become responsible for any risk of loss and for insurance for the Real Estate.

**10. HOME WARRANTY PROGRAM:** Buyer has been informed that home warranty programs may be available to provide potential additional benefits to Buyer. Buyer ☐ selects ☐ does not select a home warranty to be provided by a company to be chosen by ________________ and paid for by ________________ at an amount not to exceed ________________.

**11. INSURANCE:** Buyer's right to terminate this Contract due to property and flood insurance availability and/or cost must be satisfied during the **Real Estate Inspection Contingency Period (as defined in Section 14 below).** Buyer(s) acknowledges that it is Buyer's sole responsibility to make inquiries with regard to insurance, including, but not limited to, real, flood and personal property insurance availability and cost. **BUYER(S) IS RELYING ON BUYER'S OWN UNDERSTANDING OF INSURANCE TO BE OBTAINED.**

**12. PROPERTY DISCLOSURE FORM:** Buyer ☒ has ☐ has not received the Ohio Residential Property Disclosure form or ☐ Seller represents and warrants that Seller is exempt from providing the Ohio Residential Property Disclosure.

**13. BUYER'S OFF-SITE ACKNOWLEDGEMENT: Buyer acknowledges that Buyer has conducted investigations with regard to the municipality, zoning, school district, and use of the Real Estate and conditions outside of the boundaries of the Real Estate, including but not limited to, crime statistics, registration of sex offenders, noise levels (i.e., airports, interstates, environmental), local regulations/development or any other issues of relevance to the Buyer and has verified that the Real Estate is suitable for Buyer's intended use. Buyer assumes sole responsibility for researching such conditions.** Notwithstanding anything to the contrary, Seller makes no representations or warranties with regard to these conditions and the use of the Real Estate. Buyer acknowledges that Buyer has been given the opportunity to conduct research pertaining to any and all of the foregoing prior to execution of this Contract. Buyer is relying solely on Buyer's own research, assessment and inquiry with local agencies and is not relying, and has not relied, on Seller or any REALTOR® involved in this transaction.

**14. REAL ESTATE INSPECTION CONTINGENCY: For purposes of this clause, time is of the essence.** The Buyer has the option to have the Real Estate inspected, at Buyer's expense. Buyer shall have up to NA calendar days ("Inspection Period") beginning the day following Contract Acceptance Date to conduct all inspections related to the Real Estate. Inspections regarding the physical material condition, insurability and cost of a casualty insurance policy, boundaries, and use of the Real Estate shall be the sole responsibility of the Buyer. **Buyer is relying solely upon Buyer's examination of the Real**

Copyright November 1, 2017      Property Address:                                                                    Page 4 of 8

169  Estate, the Seller's certification herein, and inspections herein requested by the Buyer or otherwise required, if any, for its
170  physical condition and overall character, and not upon any representation by the REALTORS® involved. During the
'71  Inspection Period, Buyer and Buyer's inspectors and contractors shall be permitted access to the Real Estate at reasonable
72  times and upon reasonable notice. Buyer shall be responsible for any damage to the real estate caused by Buyer or Buyer's
173  inspectors or contractors, which repairs shall be completed in a timely and workmanlike manner at Buyer's expense.

174  a) If Buyer is not satisfied with the condition of the Real Estate as revealed by the inspection(s) and desires corrections to
175  material defect(s), Buyer shall provide written notification of any material defect(s) and the portion(s) of the inspection report
176  which describe the basis for the Buyer's dissatisfaction to the Listing Firm or Seller with a request for corrections desired
177  within the Inspection Period. Buyer and Seller shall have NA _____ calendar days beginning the day following the date
178  of delivery of the Post-Inspection Agreement or other written notice requesting corrections ("Settlement Period") to negotiate
179  to reach a written agreement in settlement of the condition of the Real Estate. Delivery of the Post-Inspection Agreement or
180  other written notice requesting corrections to material defects will designate the end of the Inspection Period, if provided
181  prior to the end of the Inspection Period identified above.

182  If written settlement of the condition of the Real Estate is not reached within the Settlement Period, Buyer shall have the
183  option to withdraw the written request for corrections within the Settlement Period and accept the Real Estate in "as is"
184  condition. If written settlement is not reached, with signed copies of settlement agreement physically delivered to the parties
185  or their respective agents within the Settlement Period, and Buyer has not withdrawn the request for corrections in writing,
186  this Contract shall be terminated. Buyer shall have the right to terminate the Contract, prior to reaching written agreement
187  with signed copies physically delivered to the parties or their respective agents, during the Settlement Period. Buyer agrees
188  that minor repairs and routine maintenance items are not to be considered material defects with regard to this contingency.

189  OR

190  b) If Buyer is not satisfied with the condition of the Real Estate, as revealed by the inspection(s) and desires to terminate this
191  Contract, Buyer shall provide written notification to Listing Firm or Seller that Buyer is exercising Buyer's right to terminate
192  this Contract within the Inspection Period, and this Contract shall be terminated.

193  If Buyer is satisfied with the results of the inspection(s), Buyer shall deliver written notification to Listing Firm or Seller within
194  the Inspection Period stating Buyer's satisfaction and waiver of the contingency. IF BUYER DOES NOT DELIVER SUCH
195  NOTIFICATION OF SATISFACTION AND WAIVER OF THIS CONTINGENCY OR WRITTEN NOTIFICATION AS
196  IDENTIFIED IN (a) OR (b) ABOVE, WITHIN THE INSPECTION PERIOD, THEN BUYER SHALL BE DEEMED TO
197  BE SATISFIED WITH ALL INSPECTIONS AND THE CONTINGENCY SHALL BE CONSIDERED WAIVED. IF
198  BUYER DOES NOT COMPLETE REAL ESTATE INSPECTION(S) DURING THE INSPECTION PERIOD, BUYER'S
199  RIGHT TO INSPECT SHALL BE DEEMED WAIVED.

200  A. ❑ BUYER ELECTS TO CONDUCT INSPECTION(S) OF THE REAL ESTATE to determine the material physical
201  condition of the house, land, improvements, fixtures, equipment, any additional structures, and any hazardous conditions
202  on the Real Estate. *(The inspection(s) may include, but are not limited to, the following inspections which may or may not*
203  *be performed by the same or different inspectors on the same or different dates.)*

204  Air Conditioning    Heating      Roofing      Water Quality / Quantity    Structural      Well / Septic System
205  Plumbing  Fireplace  Mold      Electrical    Asbestos    Radon      Infestations    Any other desired by Buyer

206  B. ▣ BUYER WAIVES THE REAL ESTATE INSPECTIONS IN A above with the following exception(s):
207  _____
208  Buyer acknowledges that Buyer has been advised by REALTOR® to conduct inspections of the Real Estate and has been
209  provided the opportunity to make this Contract contingent upon the results of such inspections.

210  C. ❑ BUYER SELECTS A TERMITE AND WOOD-BORING INSECT INSPECTION (required by some lenders/types
211  of financing).

212  ▣ BUYER WAIVES A TERMITE AND WOOD-BORING INSECT INSPECTION.

213  D. LEAD-BASED PAINT INSPECTION: Buyer ▣ has    ❑ has not  received the Seller's disclosure of any lead-based
214  paint or lead-based paint hazards known to Seller on the Real Estate. Buyer ❑ has    ❑ has not  received the pamphlet
215  *"Protect Your Family From Lead in Your Home"*.

216  ❑ BUYER SELECTS THE LEAD-BASED PAINT INSPECTION pursuant to the attached Lead-Based Paint
217  Inspection Addendum, which provides rights and responsibilities that supersede those of the general inspection
218  contingency of this Contract.

219  ▣ BUYER WAIVES THE LEAD-BASED PAINT INSPECTION.

220  ❑ NOT APPLICABLE.

221  SELLER(S) AND REALTORS® SHALL NOT BE RESPONSIBLE FOR ANY UNKNOWN AND/OR DISCLOSED
222  DEFECTS IN THE REAL ESTATE. BUYER ACKNOWLEDGES THAT BUYER HAS BEEN ADVISED BY
223  REALTOR® TO CONDUCT INSPECTIONS OF THE REAL ESTATE THAT ARE OF CONCERN TO BUYER AND
224  HAS BEEN PROVIDED THE OPPORTUNITY TO MAKE THIS CONTRACT CONTINGENT UPON THE RESULTS
225  OF SUCH INSPECTION(S).

Buyer's Initials ___  ___    Date / Time  09 / 27 / 2020      Seller's Initials ___  ___    Date / Time _____

Copyright November 1, 2017     Property Address: _____

226   **15. PROPERTY SURVEY:** Buyer(s) acknowledges that surveys obtained by the lender are not for the benefit of the Buyer.
227   If Buyer elects to have the property surveyed for his benefit, it shall be at Buyer's expense.

228   **16. OTHER CONTINGENCIES/AGREEMENTS:** ❑ See attached Addenda which are signed by all parties and incorporated
229   into this Contract:
230   Contingent on any judgemnets or settlements to be cleared at closing .
231
232
233
234

235   **17. TITLE INSURANCE:** Title insurance is designed to protect the policyholder of such title insurance for covered losses caused
236   by defects in title (ownership) to the Real Estate that are in existence on the date and time the policy of title insurance is issued.
237   Title insurance is different from casualty or liability insurance. **Buyer is encouraged to inquire about the benefits of owner's**
238   **title insurance from a title insurance agency or provider. An Owner's Policy of Title Insurance, while not required, is**
239   **recommended. A Lender's Policy of Title Insurance, if required by the mortgage lender, does not provide protection to**
240   **the Buyer. Buyer acknowledges that it is Buyer's sole responsibility to make inquiries with regard to owner's title insurance**
241   **prior to Closing.**

242       ▣ Buyer selects an Owner's Policy of Title Insurance.

243       ▣ Buyer selects an Owner's Policy of Title Insurance at Buyer's expense.

244       ❑ **Seller shall pay an amount not to exceed $300 towards the purchase of an Owner's Policy of Title Insurance and**
245       **Buyer shall be responsible for payment of the balance of the Owner's Policy of Title Insurance premium**

246       ❑ **Seller shall pay the entire cost of an Owner's Policy of Title Insurance premium.**
247       Seller's contribution is payable only if Buyer has selected to obtain the Owner's Policy of Title Insurance at Closing, so
248       that Seller's contribution may be deducted from the proceeds paid to Seller at Closing. This amount shall be in addition to
249       Seller-paid settlement charges stated in Section 3, if any.

250   **18. TAXES AND ASSESSMENTS:** At Closing, Seller shall pay or credit on the purchase price (a) all real estate taxes and
251   assessments, including penalties and interest, which became due and payable prior to the Closing, (b) a pro rata share, calculated
252   as of the closing date in the manner set forth below, of the taxes and assessments becoming due and payable after the closing, and
253   (c) the amount of any agricultural tax savings accrued as of the Closing date which would be subject to recoupment if the Real
254   Estate were converted to a non-agricultural use (whether or not such conversion actually occurs), unless Buyer has indicated that
255   Buyer is acquiring the Real Estate for agricultural purposes. ❑ If checked, Buyer hereby states that Buyer will use Real Estate
256   for agricultural purposes and expressly waives Sellers payment to Buyer of the estimated agricultural tax savings subject to CAUV
257   recoupment.

258   **TAX PRORATIONS:** All prorations shall be based upon the most recent available tax rates, assessments and valuations. It is the
259   intent of the Seller and Buyer that each shall pay the real estate expenses as follows:

260   Seller's share is based upon the taxes and assessments which are a lien for the year of the Closing. Long Proration Method – Seller pays
261   entire taxes due which cover the tax period(s) up to the date of Closing. If new construction, Long Proration method shall apply.

262       ❑ **Short Proration Method:** ONLY CHECK THIS BOX IF THE SHORT PRORATION METHOD IS TO BE USED - Seller's
263       share shall be calculated as of the date of Closing, based upon the amount of the annual taxes (as determined by the most
264       recently assessed tax amounts) to establish a daily rate of taxes and then multiplying the daily rate by the number of days from
265       the first day of the current, semi-annual tax period to the date of Closing. If checked, the Short Proration Method shall be
266       applicable and shall supersede the provision to use the Long Proration Method.

267   **ASSESSMENTS:** Any special assessments are payable in a single annual installment and shall be prorated on the long proration method.
268   Seller and Buyer acknowledge that actual bills received by Buyer after Closing for real estate taxes and assessments may differ
269   from the amounts prorated at Closing; however, all Closing prorations shall be final, except for the following (if applicable): (i.e.,
270   tax abated property, new construction, etc.) NO EXCEPTIONS _____ Buyer
271   shall assume responsibility for above items upon Closing. The Real Estate may contain a newly-constructed residence which at
272   the time of Closing does not yet appear on the most recent official tax duplicate available, so that the tax bill prorated at the Closing
273   shows taxes for only the vacant or partially improved land. Seller agrees that Seller is responsible for the amount of all real estate
274   taxes assessed for the land and the residence through the date of Closing, regardless of when assessed, and if one or more tax bills
275   are issued after the Closing which show taxes which were not prorated by Seller and Buyer at the Closing, Seller shall immediately
276   pay the additional appropriate prorated amount to Buyer upon delivery by Buyer of the new tax bill(s). This provision shall survive
277   the Closing and delivery of the deed, and the REALTOR® shall not be responsible for enforcement of this provision. Buyer shall
278   be solely responsible for inquiring about and determining any tax credits or abatements available to the Real Estate.

279   **19. OTHER PRORATIONS:** It is the intent of the Seller and Buyer that each shall pay the real estate expenses listed in (a) and
280   (b) below due for the period of time that each owns the Real Estate. There shall be prorated between Seller and Buyer as of
281   Closing: (a) homeowner/condominium association assessments and other charges imposed by the association under the terms of
282   the Association/Condominium Documents, if applicable, as shown on the most recent official Association statement available as

Buyer's Initials _____ Date / Time  09 / 27 / 2020     Seller's Initials _____ Date / Time _____

Doc ID: 204b5d5ed76464737e3ffa408d9ffa6ebe5c9c7e

Copyright November 1, 2017          Property Address:                                                                 Page 6 of 8

283  of the date of Closing, and/or, (b) rents and operating expenses if the Real Estate is rented to tenants. Security and/or damage
284  deposits held by Seller shall be transferred to Buyer at Closing without proration. Seller and Buyer acknowledge that prorations
285  are based on the information provided at closing and that actual amounts charged and/or collected for prorated items may differ;
286  however all Closing prorations shall be final.

287  **20. CONVEYANCE AND CLOSING:**  Closing services will be provided by title company designated by Buyer:
288  Performance Title _____ (name of title company, if known).
289  Both Buyer and Seller agree to execute all documents required by the closing/escrow agent. At Closing, Seller shall be responsible
290  for transfer taxes, Condominium or HOA transfer fees, conveyance fees, deed preparation, settlement fees chargeable to Seller,
291  the cost of removing or discharging any defect, lien or encumbrance required for conveyance of the Real Estate as required by this
292  Contract; and shall convey marketable title (as determined with reference to the Ohio State Bar Association Standards of Title
293  Examination) to the Real Estate by recordable and transferable deed of general warranty or fiduciary deed, if applicable, in fee
294  simple absolute, with release of dower. Date of Closing will be 10/09/2020 _____, or earlier as
295  mutually agreed by the parties. Title shall be free, clear and unencumbered as of Closing, with the exception of the following, if
296  applicable: (1) covenants, conditions, restrictions and easements of record, (2) legal highways, (3) any mortgage expressly assumed
297  by Buyer and agreed to by Seller's current lender in writing, (4) all installments of taxes and assessments becoming due and payable
298  after Closing, (5) zoning and other laws,  (6) homeowner/condominium association fees becoming due and payable after Closing,
299  and  (7) the following assessments (certified or otherwise): _____. Seller shall
300  have the right at Closing to pay out of the Purchase Price any and all encumbrances or liens.  Make deed to:
301  Hidden Cloud LLC _____.

302  **21. POSSESSION AND OCCUPANCY: For purposes of this clause, time is of the essence.** Subject to rights of tenants,
303  possession/occupancy shall be given ☒ at Closing    ☐ on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon)
304  EASTERN/DAYLIGHT STANDARD TIME on _____, or such earlier date that the Seller
305  so notifies the Buyer. Until such time, Seller shall have the right of possession/occupancy free of rent, unless otherwise specified, but
306  shall pay for all utilities used. Seller shall order final meter readings to be made as of the occupancy date for all utilities serving the Real
307  Estate and Seller shall pay for all final bills rendered from such meter readings. Seller acknowledges and agrees that prior to Buyer taking
308  possession of the Real Estate, Seller shall remove all personal possessions not included in this Contract and shall remove all debris. **If**
309  **Seller fails to vacate as agreed in this Contract or any attached post-closing occupancy agreement, Seller shall be responsible for**
310  **all additional expenses, including attorney's fees, incurred by Buyer to take possession as a result of Seller's failure to vacate.**

311  **22. AGENCY DISCLOSURES:** Buyer and Seller acknowledge having reviewed the attached state-mandated agency disclosure
312  statement(s).

313  **23. COMPANY SPECIFIC PROVISIONS:**
314  Rajib Garu is a licensed Realtor in state of Ohio member/manager for Hidden Cloud LLC
315
316

317  **24. M.L.S. AND PUBLIC RECORD ACKNOWLEDGEMENT:** Seller and Buyer acknowledge that REALTOR® shall disclose
318  this sales information to any Multiple Listing Service to which REALTOR® is a member and that disclosure by M.L.S. to other M.L.S.
319  participants, affiliates, governmental agencies or other sources authorized to receive M.L.S. information shall be made. Seller and Buyer
320  acknowledge that sales information is public record and may be accessed and used by entities, both public and private, without the consent
321  of the parties.  Seller and Buyer authorize REALTOR® to disclose financing settlement charges paid by seller and other concession data
322  upon inquiry and to the M.L.S. sold database, as applicable, to the extent necessary to adjust price to accurately reflect market value.

323  **25. SOLE CONTRACT:** The parties agree that this Contract constitutes their entire agreement and no oral or implied agreement
324  exists. **Any acceptance of, amendments and/or extensions to this Contract shall be in writing, signed by all parties and**
325  **copies shall be included with all copies of the original Contract.** This Contract shall be binding upon the parties, their heirs,
326  administrators, executors, successors and assigns. Faxes and Internet transmissions are an acceptable method of communication
327  for physical delivery of the Contract in this transaction and shall be binding upon the parties.

328  **26. ELECTRONIC SIGNATURES:** Manual or electronic signatures on contract documents, transmitted in original, facsimile
329  or electronic format shall be valid for purposes of this Contract and any amendments, addendums or notices to be delivered in
330  connection with this Contract.

331  **27. INDEMNITY:** Seller and Buyer recognize that the REALTORS® involved in the sale are relying on all information provided
332  herein or supplied by Seller or Seller's sources and Buyer and Buyer's sources in connection with the Real Estate, and agree to
333  indemnify and hold harmless the REALTORS®, their agents and employees from any claims, demands, damages, lawsuits,
334  liabilities, costs and expenses (including reasonable attorney's fees) arising out of any referrals, misrepresentation or concealment
335  of facts by Seller or Seller's sources and/or Buyer and Buyer's sources.

336  **28. ELECTRONIC/WIRE FRAUD:** Email is **not** always secure or confidential. Never respond to a request that you send funds
337  or nonpublic personal information, such as credit card or debit card numbers or bank account and/or routing numbers, by email.
338  If you receive an email message concerning a transaction and the email requests that you send funds or provide nonpublic
339  personal information, **do not respond** to the email and immediately contact the known individual/entity with whom you have an
340  established relationship using a separate verified method of communication to determine/notify of suspected email fraud.

Buyer's Initials  _RG_ ____      Date / Time  09 / 27 / 2020      Seller's Initials  ____  ____    Date / Time  _____

Copyright November 1, 2017     Property Address: _____                    Page 7 of 8

341  **29. ACKNOWLEDGMENT:** Buyer and Seller acknowledge that any questions regarding legal liability with regard to any provision
342  in this Contract, accompanying disclosure forms and addendums or with regard to Buyer's/Seller's obligations as set forth in this Contract
343  must be directed to Buyer's/Seller's attorney. In the event the Broker provides to Buyer or Seller names of companies or sources for
344  such advice and assistance, the parties additionally acknowledge and agree that the Broker does not warrant, guarantee, or endorse the
345  services and/or products of such companies or sources.

346  **30. CONTRACT ACCEPTANCE DATE:** As used herein, the Contract Acceptance Date shall be defined as the date on
347  which all provisions of the Contract have been accepted and agreed by all parties to the Contract, and the document reflecting the
348  final signatures of acceptance has been physically delivered to the other party ("Contract Acceptance Date").

349  **31. EXPIRATION AND APPROVAL:** This offer is void if not accepted in writing on this Contract form, with this form
350  physically delivered to Buyer or Buyer's agent on or before  11 _____  o'clock ☐ (A.M.) ▨ (P.M.) ☐
351  (Noon) EASTERN/DAYLIGHT STANDARD TIME  10/09/2020 _____ . The Buyer has read, fully
352  understands and approves the foregoing offer and acknowledges receipt of a signed copy. Buyer certifies that the signatory(ies)
353  below has/have full authority to enter into this agreement and that no additional signatories, spouse or otherwise, are necessary in
354  order to purchase the property.

| Hidden Cloud LLC | _[signature]_ | 09 / 27 / 2020 |
|---|---|---|
| Print Buyer's Name | Buyer's Signature | Date/Time |
| _____ | _____ | _____ |
| Print Buyer's Name | Buyer's Signature | Date/Time |

Buyer's Address _____

355  **32. ACTION BY SELLER:** The undersigned Seller has read and fully understands the foregoing offer. Seller certifies that the
356  signatory(ies) below has/have full authority to enter into this Contract and that no additional signatories, spouse or otherwise, are
357  necessary in order to convey the Real Estate. Seller hereby: ☐ accepts said offer and agrees to convey the Real Estate according
358  to the above terms and conditions, ☐ rejects said offer, or ☐ counteroffers according to the above modifications initialed and
359  dated by Seller, which counteroffer shall become null and void if not accepted in writing on this Contract form, with this form
360  physically delivered to Seller or Seller's agent on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon)
361  EASTERN/DAYLIGHT STANDARD TIME _____ .

| _____ | _____ | _____ |
|---|---|---|
| Print Seller's Name | Seller's Signature | Date/Time |
| _____ | _____ | _____ |
| Print Seller's Name | Seller's Signature | Date/Time |

Seller's Address _____

**[ALL OWNERS AND SPOUSES OF OWNERS MUST SIGN.]**

---

**COMPLETE THE SECTIONS BELOW FOR ADMINISTRATIVE PROCESSING**

**CONTRACT ACCEPTANCE DATE: Contract terms dictate that physical delivery of final signature(s) on this contract form to the other party constitutes contract acceptance. Delivery of final contract to other party is to be made on the date of final signature(s).**

DATE OF FINAL SIGNATURE ON _____ .
                                              (Date/Time)

---

**RECEIPT OF EARNEST MONEY DEPOSIT: Failure to provide written verification as provided in Section 2 of the Contract to Purchase may result in Seller's termination of the Contract.**

I hereby certify receipt of Earnest Money (☐ check/money order # _____, ☐ wire/electronic transfer # _____, ☐ cash, ☐ other _____ ) in the amount of $_____ .

I further certify that the funds shall be submitted for deposit in accordance with Ohio law and acknowledge that failure to deposit in a timely manner is a violation of license law.

| _____ | _____ | _____ |
|---|---|---|
| Print REALTOR®'s Name/Firm | REALTOR®'s Signature | Date/Time |

Doc ID: 204b5d5ed76464737e3ffa408cf9ffa6ebe5c9c7e

Copyright November 1, 2017          Property Address: _____          Page 8 of 8

**THIS INFORMATION IS REQUIRED FOR TITLE, LENDER AND ADMINISTRATIVE PROCESSING**
The signatories below grant permission to the settlement agent to provide to their respective Real Estate Broker or their authorized
Sales Associates, copies of the Closing Disclosure and the Settlement Statement for review prior to Closing.

| | | | |
|---|---|---|---|
| Seller's Signature | Date/Time<br>09 / 27 / 2020 | Seller's Signature | Date/Time |
| Buyer's Signature | Date/Time | Buyer's Signature | Date/Time |

SELLING/BUYER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____ Broker Firm MLS ID _____

Contact (Agent) Name _____

Contact (Agent) State License Number _____ Agent MLS Number _____

Contact (Agent) Email and Phone _____

(Principal) Broker Name _____

LISTING/SELLER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____ Broker Firm MLS ID _____

Contact (Agent) Name _____

Contact (Agent) State License Number _____ Agent MLS Number _____

Contact (Agent) Email and Phone _____

(Principal) Broker Name _____

Doc ID: 204b5d5ed76464737e3ffa408d9ffa6ebe5c9c7e

Copyright November 1, 2017

Page 1 of 8

EXHIBIT ____

**Contract to Purchase**
Adopted by the
CINCINNATI AREA BOARD OF REALTORS®
DAYTON AREA BOARD OF REALTORS®
For exclusive use by REALTORS®.
This is a legally binding contract. If not understood, seek legal advice.
For real estate advice, consult a REALTOR®.

10-11-2020 _____ (date).

1. **PROPERTY DESCRIPTION:** I/We ("Buyer") offer to purchase from Seller ("Seller") the following described property:

Address 4457 Mellwood Ave, Cincinnati, OH 45232 _____ City/Township _____,

Ohio, Zip Code _____, County _____, Further described as: _____

220-0059-0015-00 _____ ("Real Estate").

2. **PRICE AND TERMS:** Buyer hereby agrees to pay $ 175000 _____
("Purchase Price") for the Real Estate, payable as follows:

a) **EARNEST MONEY: For purposes of this clause, time is of the essence.** $ 500
("Earnest Money") shall be submitted for deposit with Performance Title
within 3 calendar days of the Contract Acceptance Date, as hereinafter defined ("Contract"), in a trust account pending the final settlement and conveyance of the purchase and sale of the Real Estate contemplated in this Contract ("Closing"), or returned to the Buyer if this offer is not accepted in writing. Written acknowledgement of Earnest Money Deposit ☐ is included ■ shall be provided to Listing REALTOR® or Seller within 3 calendar days of the Contract Acceptance Date. If acknowledgement of Earnest Money is not provided as stated herein, then Seller, by Seller's sole option, may, by written notice to selling REALTOR® or Buyer, terminate this Contract. Any disbursement of Earnest Money shall be in compliance with Ohio R.C. 4735.24, which includes the following stipulations: The Earnest Money shall be disbursed as follows: (i) if the transaction is closed, the Earnest Money shall be applied to Purchase Price (may be retained by brokerage and credited toward brokerage commission owed) or as directed by Buyer or (ii) if either party fails or refuses to perform, or if any contingency is not satisfied or waived, the Earnest Money shall be (a) disbursed in accordance with a release of earnest money ("Release") signed by all parties to the Contract or (b) in the event of a dispute between the Seller and Buyer regarding the disbursement of the Earnest Money, the broker is required by law to maintain such funds in his trust account until the broker receives (a) written instructions signed by the parties specifying how the Earnest Money is to be disbursed or (b) a final court order that specifies to whom the Earnest Money is to be awarded. If the Real Estate is located in Ohio, and if within two years from the date the Earnest Money was deposited in the broker's trust account, the parties have not provided the broker with such signed instructions or written notice that such legal action to resolve the dispute has been filed, the broker shall return the Earnest Money to the Buyer with no further notice to the Seller. Both Buyer and Seller acknowledge and agree that, in the event of a dispute between Buyer and Seller as to entitlement of the Earnest Money, the REALTORS® will not make a determination as to which party is entitled to the Earnest Money.

b) **BALANCE:** The balance of the Purchase Price shall be paid by wire transfer, certified, cashier's, official bank, attorney or title company trust account check on date of Closing, subject to the terms of applicable law.

3. **FINANCING CONTINGENCY:** Buyer intends to use the Real Estate for the following purpose: ☐ Owner-occupied ■ Rental ☐ Other: _____.

☑ **CASH:** Buyer shall provide written confirmation of available funds on verifiable document from funding source within _____ calendar days of the Contract Acceptance Date. If Buyer fails to provide such documentation, then Seller may, by written notice to selling REALTOR® or Buyer, terminate this Contract. Buyer has the right to obtain an appraisal of the Real Estate by a licensed appraiser within _____ calendar days beginning the day following the Contract Acceptance Date.

☐ **CONVENTIONAL LOAN:** The Buyer's obligation to close this transaction is contingent upon Buyer applying for and obtaining: (a) ☐ fixed ☐ adjustable or ☐ other first mortgage loan on the Real Estate, (b) in an amount not to exceed _____% of the Purchase Price, (c) at an interest rate ☐ at prevailing rates and terms ☐ not to exceed _____%, (d) for a term of not less than _____ years or at a higher rate or shorter term agreeable to Buyer.

☐ **FHA/VA:** The Buyer's obligation to close this transaction is contingent upon Buyer applying for and obtaining (a) ☐ FHA, [(1) ☐ fixed or (2) ☐ adjustable] (including FHA closing costs) or ☐ VA (including VA funding fee) first mortgage loan in the maximum allowable amount (b) at an interest rate ☐ at prevailing rates and terms ☐ not to exceed _____%, (c) for a term of not less than _____ years or at a higher rate or shorter term agreeable to Buyer. ☐ Buyer has been provided the FHA **For Your Protection: Get a Home Inspection** disclosure. *When the Buyer is financing through FHA or VA, the Seller may be required to pay for certain fees. Check with your lending institution. Whole house inspection fees may be paid by the VA Buyer, but must be paid outside of the Closing. On FHA/VA contracts, the appraiser is not deemed to be a whole house inspector.*

■ **OTHER FINANCING: SEE ATTACHED ADDENDUM** Cash/Cash Like/ Hard Money/Commercial
_____
_____

**Settlement Charges:** In addition to costs incurred in order for the Seller to fulfill the terms of the Contract and to provide marketable title, Seller agrees to pay actual settlement charges on behalf of the Buyer, including, but not limited to, discount points, closing costs, pre-paids and any other fees allowed by Buyer's lender in an amount not to exceed, 0 _____.

Buyer's Initials _____ Date / Time 10 / 11 / 2020   Seller's Initials _____ Date / Time 10 / 11 / 2020

52  **Financing Timeframe: IF BUYER FAILS TO PROVIDE CONFIRMATION THAT BUYER HAS COMPLETED ANY**
53  **OF THE REQUIREMENTS OF THE FINANCING TIMEFRAME, AS SET FORTH IN SUBSECTIONS (a) THROUGH**
54  **(c) below, THEN SELLER MAY, AT SELLER'S SOLE DISCRETION, BY WRITTEN NOTICE TO SELLING**
55  **REALTOR® OR BUYER, TERMINATE THIS CONTRACT.**

56  (a) Buyer financing qualification letter based upon initial credit check and preliminary information provided by Buyer stating that
57  such qualification ☐ is ■ is not contingent upon the closing of Buyer's other real estate and ■ is attached ☐ is not attached
58  ☐ shall be provided within _____ calendar days of the Contract Acceptance Date.

59  (b) Buyer shall complete a loan application, which shall include providing selected lender, with *"intent to proceed"*, including
60  payment for appraisal (if necessary), within _____ calendar days of the Contract Acceptance Date and will make a diligent
61  effort to obtain financing.

62  (c) Buyer or Buyer's lender shall notify Listing REALTOR® or Seller, in writing, that a loan approval has been obtained or waived
63  within _____ calendar days of the Contract Acceptance Date.

64  **BUYER IS RELYING ON BUYER'S OWN UNDERSTANDING OF FINANCING TO BE OBTAINED AND PROCESSES**
65  **REQUIRED BY A LENDER AS WELL AS THE LEGAL AND TAX CONSEQUENCES THEREOF, IF ANY.**

66  **4. APPRAISAL CONTINGENCY:** Buyer's obligation to close this transaction is contingent upon Real Estate appraising at or above
67  final sales price of the Real Estate. Buyer has the right to obtain, at Buyer's expense, an independent appraisal performed by an appraiser
68  licensed in Ohio. In the event the Real Estate does not obtain an appraised value (by either Buyer's or Lender's appraiser) equal to or greater
69  than the Purchase Price, Buyer shall have the right to terminate this Contract by delivering written notice to Seller on or before the expiration
70  of (i) the time-frame set forth in Section 3 above for obtaining an appraisal in connection with a cash sale or (ii) the time-frame set forth in
71  Section 3 above for obtaining a loan approval (such applicable time period being referred to as the "Appraisal Contingency Period"). If
72  Buyer does not deliver written notice to Seller that Buyer is terminating the Contract prior to the expiration of the Appraisal Contingency
73  Period, then Buyer's right to terminate this Contract due to appraised value shall be deemed waived. **Seller shall have ALL utilities**
74  **servicing the Real Estate on during the appraisal inspection.**

75  **5. INCLUSIONS/EXCLUSIONS OF SALE:** The Real Estate shall include the land, together with all improvements thereon,
76  all appurtenant rights, privileges, easements, fixtures, and all of, but not limited to, the following items if they are now located on
77  the Real Estate and used in connection therewith: electrical; plumbing; heating and air conditioning equipment, including window
78  units; bathroom mirrors and fixtures; shades; blinds; awnings; window rods; window/door screens, storm windows/doors;
79  shrubbery/landscaping; affixed mirrors/floor covering; wall-to-wall, inlaid and stair carpeting (attached or otherwise); fireplace
80  inserts/grates; fireplace screens/glass doors; wood stove; gas logs and starters; television and/or sound system mounting brackets
81  (excluding televisions and/or sound system), aerials/rotor operating boxes/satellite dishes (including non-leased components);
82  water softeners; water purifiers; central vacuum systems and equipment; garage door openers/operating devices; the following
83  **built-in** appliances: ranges/ovens/microwaves/refrigerators/dishwashers/garbage disposers/trash compactors/humidifiers; all
84  security alarm systems and controls; all affixed furniture/fixtures; utility/storage buildings/structures; inground/above ground
85  swimming pools and equipment; swing sets/play sets; affixed basketball backboard/pole; propane tank/oil tank and contents
86  thereof; electronic underground fencing transmitter and receiver collars; and parking space(s) number(s) _____ and
87  storage unit number _____ (where applicable); **except the following: which are leased in whole or in part** (please check
88  appropriate boxes); ☐ water softener; ☐ security/alarm system; ☐ propane tank; ☐ satellite dish; ☐ satellite dish components:
89  _____ . **THE FOLLOWING ITEMS (WHICH ADD NO ADDITIONAL VALUE TO THE**
90  **REAL ESTATE) ARE SPECIFICALLY INCLUDED WITH THE REAL ESTATE:** _____ .
91  As listed , Seller to provide list of appliances owned by seller
92  **THE FOLLOWING ITEMS ARE SPECIFICALLY EXCLUDED FROM THE REAL ESTATE:** _____
93  None

94  **6. CERTIFICATION OF OWNERSHIP:** Seller certifies that Seller owns all of the items listed in Section 5 and that they will
95  be free and clear of any debt, lien or encumbrances at closing (except as listed in Section 20 of this Contract). Seller also represents
96  that those signing this Contract constitute all of the owners of the title to the real property and other items as listed in Section 5,
97  together with their respective spouses.

98  **7. SELLER'S CERTIFICATION:** Seller certifies to Buyer that **to the best of Seller's knowledge:** The Real Estate (a) ☐ is
99  ■ is not located in a Historic District, (b) ☐ is ■ is not subject to a maintenance agreement, (c) ☐ is ■ is not located
100 in a flood plain requiring insurance, (d) ☐ is ■ is not subject to a municipal pre-sale inspection, disclosure, and/or certification
101 of occupancy; if the Real Estate is located in a jurisdiction requiring housing inspection before transfer, Seller shall be responsible
102 for completing and submitting the necessary application and will furnish to Buyer or Buyer's agent a copy of the resulting
103 unconditional certificate on or before the date of Closing, (e) no orders of any public authority are pending, (f) no work has been
104 performed or improvement constructed that may result in future assessments, (g) no notices have been received from any public
105 agency with respect to condemnation or appropriation, change in zoning, proposed future assessments, correction of conditions or
106 other similar matters, and (h) to the best of Seller's knowledge, no toxic, explosive or other hazardous substances have been stored,
107 disposed of, concealed within or released on or from the Real Estate and no other adverse environmental conditions within the
108 boundaries of the Real Estate affect the Real Estate except No Exceptions _____ . Seller further certifies
109 that, to the best of Seller's knowledge, there are no encroachments, shared driveways, party walls, property tax abatements or
110 homestead exemptions affecting the Real Estate except: No Exceptions _____ and

Buyer's Initials _____ Date / Time 10 / 11 / 2020     Seller's Initials _____ Date / Time 10 / 11 / 2020

111 that no improvements or services (site or area) have been installed or furnished, nor notification received from public authority or
112 owner's association of future improvements of which any part of the costs may be assessed against the Real Estate, except:
113 No Exceptions

114 **8. HOMEOWNER ASSOCIATION/CONDOMINIUM DECLARATIONS, BYLAWS AND ARTICLES:** Real Estate (a)
115 ☐ is ■ is not subject to a homeowner association established by recorded declaration with mandatory membership,
116 (b) ☐ is ■ is not subject to a homeowner association assessment (separate from HOA fees) (c) ☐ is ■ is not subject
117 to a mandatory fees imposed on the real estate [☐ pool, ☐ golf course, ☐ other_____] (separate from HOA
118 fees). Seller further certifies that, to the best of Seller's knowledge, there are no Homeowner Association violations (current or
119 outstanding) affecting the Real Estate except: No Exceptions

120 If the Real Estate is subject to a Homeowner Association Declaration or is a Condominium, Seller will, at Seller's expense, provide
121 Buyer with a current copy of documents affecting the real estate including, but not limited to, documents recorded with the county,
122 the Association Declaration, the Association's financial statements, Rules and Restrictions, schedule of monthly, annual and
123 special assessments/fees, architectural standards (to the extent not included in the Rules and Restrictions), the Bylaws and the
124 Articles of Incorporation and other pertinent documents ("Documents") within N/A calendar days beginning the day
125 following the Contract Acceptance Date. Buyer shall have the right to disapprove of the Documents by delivering written notice
126 of Buyer's disapproval to Seller within N/A calendar days beginning the day following receipt of Documents
127 ("Disapproval Date"). If written notice of disapproval is delivered by the Disapproval Date, then this Contract shall become null
128 and void. Unless written notice is delivered by the Disapproval Date, Buyer shall be deemed to have approved the Documents and
129 waives the right to terminate the Contract based upon the terms and conditions of same. If Seller fails to provide Documents as
130 required, Buyer has the right to terminate the Contract. Seller agrees, as a condition to Closing, to secure, at Seller's expense,
131 written approval for this sale if required by the Documents. Seller, at Seller's expense, shall provide any letter of assessment
132 required at Closing by the lender and/or title company. Seller certifies that the current HOA fees are: $ N/A
133 ☐ Monthly ☐ Quarterly ☐ Annually and/ or ☐ Other

134 **9. MAINTENANCE**: Until physical possession is delivered to the Buyer, Seller shall continue to maintain the Real Estate, as
135 described in Section 5, including the grounds and improvements thereon. Seller shall repair or replace any appliances, equipment
136 or systems currently in normal operating condition that fail prior to possession except: No Exceptions . Seller
137 further agrees that until physical possession is delivered to the Buyer, the Real Estate will be in as good condition as it is presently,
138 except for normal wear and casualty damage from perils insurable under a standard all risk policy. If, prior to Closing, the Real
139 Estate is damaged or destroyed by fire or other casualty, Buyer shall have the option to (a) proceed with the Closing, or (b) terminate
140 this Contract. While this Contract is pending, Seller shall not change any existing lease or enter into any new lease, nor make any
141 substantial alterations or repairs without the written consent of the Buyer. **Buyer and Seller agree that Buyer shall be provided**
142 **the opportunity to conduct a walk-through inspection of the Real Estate within 48 hours prior to Closing, solely for the**
143 **purpose of ascertaining that the Seller has maintained the Real Estate as required herein and has met all other contractual**
144 **obligations**. Upon Closing, Buyer shall become responsible for any risk of loss and for insurance for the Real Estate.

145 **10. HOME WARRANTY PROGRAM:** Buyer has been informed that home warranty programs may be available to provide
146 potential additional benefits to Buyer. Buyer ☐ selects ☐ does not select a home warranty to be provided by a company to be
147 chosen by_____ and paid for by_____ at an amount not to exceed_____.

148 **11. INSURANCE:** Buyer's right to terminate this Contract due to property and flood insurance availability and/or cost must be
149 satisfied during the **Real Estate Inspection Contingency Period (as defined in Section 14 below)**. Buyer(s) acknowledges that
150 it is Buyer's sole responsibility to make inquiries with regard to insurance, including, but not limited to, real, flood and personal
151 property insurance availability and cost. **BUYER(S) IS RELYING ON BUYER'S OWN UNDERSTANDING OF**
152 **INSURANCE TO BE OBTAINED.**

153 **12. PROPERTY DISCLOSURE FORM:** Buyer ■ has ☐ has not received the Ohio Residential Property Disclosure form
154 or ☐ Seller represents and warrants that Seller is exempt from providing the Ohio Residential Property Disclosure.

155 **13. BUYER'S OFF-SITE ACKNOWLEDGEMENT: Buyer acknowledges that Buyer has conducted investigations with**
156 **regard to the municipality, zoning, school district, and use of the Real Estate and conditions outside of the boundaries of**
157 **the Real Estate, including but not limited to, crime statistics, registration of sex offenders, noise levels (i.e., airports,**
158 **interstates, environmental), local regulations/development or any other issues of relevance to the Buyer and has verified**
159 **that the Real Estate is suitable for Buyer's intended use.** Notwithstanding anything to the contrary, Seller makes no representations or warranties with regard to these conditions and the
160 use of the Real Estate. Buyer acknowledges that Buyer has been given the opportunity to conduct research pertaining to any and
161 all of the foregoing prior to execution of this Contract. Buyer is relying solely on Buyer's own research, assessment and inquiry
163 with local agencies and is not relying, and has not relied, on Seller or any REALTOR® involved in this transaction.

164 **14. REAL ESTATE INSPECTION CONTINGENCY: For purposes of this clause, time is of the essence.** The Buyer has the
165 option to have the Real Estate inspected, at Buyer's expense. Buyer shall have up to NA calendar days
166 ("Inspection Period") beginning the day following Contract Acceptance Date to conduct all inspections related to the Real Estate.
167 Inspections regarding the physical material condition, insurability and cost of a casualty insurance policy, boundaries, and use of
168 the Real Estate shall be the sole responsibility of the Buyer. **Buyer is relying solely upon Buyer's examination of the Real**

Buyer's Initials _____ Date / Time 10 / 11 / 2020    Seller's Initials _____ Date / Time 10 / 11 / 2020

Copyright November 2019 Case: 1:22-bk-10063   Doc 47-1   Filed 07/25/22   Entered 07/25/22 17:26:02   Desc
Exhibit 1-13   Page 9 of 35

169 Estate, the Seller's certification herein, and inspections herein requested by the Buyer or otherwise required, if any, for its
170 physical condition and overall character, and not upon any representation by the REALTORS® involved. During the
171 Inspection Period, Buyer and Buyer's inspectors and contractors shall be permitted access to the Real Estate at reasonable
172 times and upon reasonable notice. Buyer shall be responsible for any damage to the real estate caused by Buyer or Buyer's
173 inspectors or contractors, which repairs shall be completed in a timely and workmanlike manner at Buyer's expense.

174    a) If Buyer is not satisfied with the condition of the Real Estate as revealed by the inspection(s) and desires corrections to
175       material defect(s), Buyer shall provide written notification of any material defect(s) and the portion(s) of the inspection report
176       which describe the basis for the Buyer's dissatisfaction to the Listing Firm or Seller with a request for corrections desired
177       within the Inspection Period. Buyer and Seller shall have NA_____ calendar days beginning the day following the date
178       of delivery of the Post-Inspection Agreement or other written notice requesting corrections ("Settlement Period") to negotiate
179       to reach a written agreement in settlement of the condition of the Real Estate. Delivery of the Post-Inspection Agreement or
180       other written notice requesting corrections to material defects will designate the end of the Inspection Period, if provided
181       prior to the end of the Inspection Period identified above.

182       If written settlement of the condition of the Real Estate is not reached within the Settlement Period, Buyer shall have the
183       option to withdraw the written request for corrections within the Settlement Period and accept the Real Estate in "as is"
184       condition. If written settlement is not reached, with signed copies of settlement agreement physically delivered to the parties
185       or their respective agents within the Settlement Period, and Buyer has not withdrawn the request for corrections in writing,
186       this Contract shall be terminated. Buyer shall have the right to terminate the Contract, prior to reaching written agreement
187       with signed copies physically delivered to the parties or their respective agents, during the Settlement Period. Buyer agrees
188       that minor repairs and routine maintenance items are not to be considered material defects with regard to this contingency.

189    OR

190    b) If Buyer is not satisfied with the condition of the Real Estate, as revealed by the inspection(s) and desires to terminate this
191       Contract, Buyer shall provide written notification to Listing Firm or Seller that Buyer is exercising Buyer's right to terminate
192       this Contract within the Inspection Period, and this Contract shall be terminated.

193    If Buyer is satisfied with the results of the inspection(s), Buyer shall deliver written notification to Listing Firm or Seller within
194    the Inspection Period stating Buyer's satisfaction and waiver of the contingency. **IF BUYER DOES NOT DELIVER SUCH**
195    **NOTIFICATION OF SATISFACTION AND WAIVER OF THIS CONTINGENCY OR WRITTEN NOTIFICATION AS**
196    **IDENTIFIED IN (a) OR (b) ABOVE, WITHIN THE INSPECTION PERIOD, THEN BUYER SHALL BE DEEMED TO**
197    **BE SATISFIED WITH ALL INSPECTIONS AND THE CONTINGENCY SHALL BE CONSIDERED WAIVED. IF**
198    **BUYER DOES NOT COMPLETE REAL ESTATE INSPECTION(S) DURING THE INSPECTION PERIOD, BUYER'S**
199    **RIGHT TO INSPECT SHALL BE DEEMED WAIVED.**

200    A. ❑ **BUYER ELECTS TO CONDUCT INSPECTION(S) OF THE REAL ESTATE** to determine the material physical
201       condition of the house, land, improvements, fixtures, equipment, any additional structures, and any hazardous conditions
202       on the Real Estate. *(The inspection(s) may include, but are not limited to, the following inspections which may or may not*
203       *be performed by the same or different inspectors on the same or different dates.)*

204       Air Conditioning   Heating      Roofing     Water Quality / Quantity   Structural     Well / Septic System
205       Plumbing  Fireplace   Mold       Electrical    Asbestos    Radon         Infestations   Any other desired by Buyer

206    B. ■ **BUYER WAIVES THE REAL ESTATE INSPECTIONS** in A above with the following exception(s):
207
208       Buyer acknowledges that Buyer has been advised by REALTOR® to conduct inspections of the Real Estate and has been
209       provided the opportunity to make this Contract contingent upon the results of such inspections.

210    C. ❑ **BUYER SELECTS A TERMITE AND WOOD-BORING INSECT INSPECTION** (required by some lenders/types
211       of financing).

212       ■ **BUYER WAIVES A TERMITE AND WOOD-BORING INSECT INSPECTION.**

213    D. **LEAD-BASED PAINT INSPECTION:** Buyer ■ has  ❑ has not  received the Seller's disclosure of any lead-based
214       paint or lead-based paint hazards known to Seller on the Real Estate. Buyer ❑ has  ❑ has not  received the pamphlet
215       *"Protect Your Family From Lead in Your Home".*

216       ❑ **BUYER SELECTS THE LEAD-BASED PAINT INSPECTION** pursuant to the attached Lead-Based Paint
217       Inspection Addendum, which provides rights and responsibilities that supersede those of the general inspection
218       contingency of this Contract.

219       ■ **BUYER WAIVES THE LEAD-BASED PAINT INSPECTION.**

220       ❑ **NOT APPLICABLE.**

221    **SELLER(S) AND REALTORS® SHALL NOT BE RESPONSIBLE FOR ANY UNKNOWN AND/OR DISCLOSED**
222    **DEFECTS IN THE REAL ESTATE. BUYER ACKNOWLEDGES THAT BUYER HAS BEEN ADVISED BY**
223    **REALTOR® TO CONDUCT INSPECTIONS OF THE REAL ESTATE THAT ARE OF CONCERN TO BUYER AND**
224    **HAS BEEN PROVIDED THE OPPORTUNITY TO MAKE THIS CONTRACT CONTINGENT UPON THE RESULTS**
225    **OF SUCH INSPECTION(S).**

Buyer's Initials _YY_____   Date / Time _10 / 11 / 2020_        Seller's Initials _MJ_____   Date / Time _10 / 11 / 2020_

226 **15. PROPERTY SURVEY:** Buyer(s) acknowledges that surveys obtained by the lender are not for the benefit of the Buyer.
227 If Buyer elects to have the property surveyed for his benefit, it shall be at Buyer's expense.

228 **16. OTHER CONTINGENCIES/AGREEMENTS:** ❑ See attached Addenda which are signed by all parties and incorporated
229 into this Contract:
230 Contingent on any judgemnets or settlements to be cleared at closing .
231
232
233
234

235 **17. TITLE INSURANCE**: Title insurance is designed to protect the policyholder of such title insurance for covered losses caused
236 by defects in title (ownership) to the Real Estate that are in existence on the date and time the policy of title insurance is issued.
237 Title insurance is different from casualty or liability insurance. **Buyer is encouraged to inquire about the benefits of owner's**
238 **title insurance from a title insurance agency or provider. An Owner's Policy of Title Insurance, while not required, is**
239 **recommended. A Lender's Policy of Title Insurance, if required by the mortgage lender, does not provide protection to**
240 **the Buyer. Buyer acknowledges that it is Buyer's sole responsibility to make inquiries with regard to owner's title insurance**
241 **prior to Closing.**

242 ■ Buyer selects an Owner's Policy of Title Insurance.

243 ■ Buyer selects an Owner's Policy of Title Insurance at Buyer's expense.

244 ❑ **Seller shall pay an amount not to exceed $300 towards the purchase of an Owner's Policy of Title Insurance and**
245 **Buyer shall be responsible for payment of the balance of the Owner's Policy of Title Insurance premium**

246 ❑ **Seller shall pay the entire cost of an Owner's Policy of Title Insurance premium.**
247 Seller's contribution is payable only if Buyer has selected to obtain the Owner's Policy of Title Insurance at Closing, so
248 that Seller's contribution may be deducted from the proceeds paid to Seller at Closing. This amount shall be in addition to
249 Seller-paid settlement charges stated in Section 3, if any.

250 **18. TAXES AND ASSESSMENTS:** At Closing, Seller shall pay or credit on the purchase price (a) all real estate taxes and
251 assessments, including penalties and interest, which became due and payable prior to the Closing, (b) a pro rata share, calculated
252 as of the closing date in the manner set forth below, of the taxes and assessments becoming due and payable after the closing, and
253 (c) the amount of any agricultural tax savings accrued as of the Closing date which would be subject to recoupment if the Real
254 Estate were converted to a non-agricultural use (whether or not such conversion actually occurs), unless Buyer has indicated that
255 Buyer is acquiring the Real Estate for agricultural purposes. ❑ If checked, Buyer hereby states that Buyer will use Real Estate
256 for agricultural purposes and expressly waives Sellers payment to Buyer of the estimated agricultural tax savings subject to CAUV
257 recoupment.

258 **TAX PRORATIONS:** All prorations shall be based upon the most recent available tax rates, assessments and valuations. It is the
259 intent of the Seller and Buyer that each shall pay the real estate expenses as follows:

260 Seller's share is based upon the taxes and assessments which are a lien for the year of the Closing. Long Proration Method - Seller pays
261 entire taxes due which cover the tax period(s) up to the date of Closing. If new construction, Long Proration method shall apply.

262 ❑ Short Proration Method: ONLY CHECK THIS BOX IF THE SHORT PRORATION METHOD IS TO BE USED - Seller's
263 share shall be calculated as of the date of Closing, based upon the amount of the annual taxes (as determined by the most
264 recently assessed tax amounts) to establish a daily rate of taxes and then multiplying the daily rate by the number of days from
265 the first day of the current, semi-annual tax period to the date of Closing. If checked, the Short Proration Method shall be
266 applicable and shall supersede the provision to use the Long Proration Method.

267 **ASSESSMENTS:** Any special assessments are payable in a single annual installment and shall be prorated on the long proration method.
268 Seller and Buyer acknowledge that actual bills received by Buyer after Closing for real estate taxes and assessments may differ
269 from the amounts prorated at Closing; however, all Closing prorations shall be final, except for the following (if applicable): (i.e.,
270 tax abated property, new construction, etc.) NO EXCEPTIONS _____ Buyer
271 shall assume responsibility for above items upon Closing. The Real Estate may contain a newly-constructed residence which at
272 the time of Closing does not yet appear on the most recent official tax duplicate available, so that the tax bill prorated at the Closing
273 shows taxes for only the vacant or partially improved land. Seller agrees that Seller is responsible for the amount of all real estate
274 taxes assessed for the land and the residence through the date of Closing, regardless of when assessed, and if one or more tax bills
275 are issued after the Closing which show taxes which were not prorated by Seller and Buyer at the Closing, Seller shall immediately
276 pay the additional appropriate prorated amount to Buyer upon delivery by Buyer of the new tax bill(s). This provision shall survive
277 the Closing and delivery of the deed, and the REALTOR® shall not be responsible for enforcement of this provision. Buyer shall
278 be solely responsible for inquiring about and determining any tax credits or abatements available to the Real Estate.

279 **19. OTHER PRORATIONS:** It is the intent of the Seller and Buyer that each shall pay the real estate expenses listed in (a) and
280 (b) below due for the period of time that each owns the Real Estate. There shall be prorated between Seller and Buyer as of
281 Closing: (a) homeowner/condominium association assessments and other charges imposed by the association under the terms of
282 the Association/Condominium Documents, if applicable, as shown on the most recent official Association statement available as

Buyer's Initials _____ Date / Time 10 / 11 / 2020    Seller's Initials _____ Date / Time 10 / 11 / 2020

Case 1:22-bk-10063   Doc 47-1   Filed 07/25/22   Entered 07/25/22 17:26:02   Desc
Copyright November 1, 2017          Property Address: Exhibit 1-13   Page 11 of 35                                    Page 6 of 8

283  of the date of Closing, and/or, (b) rents and operating expenses if the Real Estate is rented to tenants. Security and/or damage
284  deposits held by Seller shall be transferred to Buyer at Closing without proration. Seller and Buyer acknowledge that prorations
285  are based on the information provided at closing and that actual amounts charged and/or collected for prorated items may differ;
286  however all Closing prorations shall be final.

287  **20. CONVEYANCE AND CLOSING:**   Closing services will be provided by title company designated by Buyer:
288  Performance Title _____ (name of title company, if known).
289  Both Buyer and Seller agree to execute all documents required by the closing/escrow agent. At Closing, Seller shall be responsible
290  for transfer taxes, Condominium or HOA transfer fees, conveyance fees, deed preparation, settlement fees chargeable to Seller,
291  the cost of removing or discharging any defect, lien or encumbrance required for conveyance of the Real Estate as required by this
292  Contract; and shall convey marketable title (as determined with reference to the Ohio State Bar Association Standards of Title
293  Examination) to the Real Estate by recordable and transferable deed of general warranty or fiduciary deed, if applicable, in fee
294  simple absolute, with release of dower. Date of Closing will be 10/21/2020 _____, or earlier as
295  mutually agreed by the parties. Title shall be free, clear and unencumbered as of Closing, with the exception of the following, if
296  applicable: (1) covenants, conditions, restrictions and easements of record, (2) legal highways, (3) any mortgage expressly assumed
297  by Buyer and agreed to by Seller's current lender in writing, (4) all installments of taxes and assessments becoming due and payable
298  after Closing, (5) zoning and other laws,   (6) homeowner/condominium association fees becoming due and payable after Closing,
299  and   (7) the following assessments (certified or otherwise): _____. Seller shall
300  have the right at Closing to pay out of the Purchase Price any and all encumbrances or liens.   Make deed to:
301  Hidden Cloud LLC

302  **21. POSSESSION AND OCCUPANCY: For purposes of this clause, time is of the essence.** Subject to rights of tenants,
303  possession/occupancy shall be given ■ at Closing   ☐ on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon)
304  EASTERN/DAYLIGHT STANDARD TIME on _____, or such earlier date that the Seller
305  so notifies the Buyer. Until such time, Seller shall have the right of possession/occupancy free of rent, unless otherwise specified, but
306  shall pay for all utilities used. Seller shall order final meter readings to be made as of the occupancy date for all utilities serving the Real
307  Estate and Seller shall pay for all final bills rendered from such meter readings. Seller acknowledges and agrees that prior to Buyer taking
308  possession of the Real Estate, Seller shall remove all personal possessions not included in this Contract and shall remove all debris. **If**
309  **Seller fails to vacate as agreed in this Contract or any attached post-closing occupancy agreement, Seller shall be responsible for**
310  **all additional expenses, including attorney's fees, incurred by Buyer to take possession as a result of Seller's failure to vacate.**

311  **22. AGENCY DISCLOSURES:** Buyer and Seller acknowledge having reviewed the attached state-mandated agency disclosure
312  statement(s).

313  **23. COMPANY SPECIFIC PROVISIONS:**
314  Rajib Garu is a licensed Realtor in state of Ohio member/manager for Hidden Cloud LLC
315
316

317  **24. M.L.S. AND PUBLIC RECORD ACKNOWLEDGEMENT:** Seller and Buyer acknowledge that REALTOR® shall disclose
318  this sales information to any Multiple Listing Service to which REALTOR® is a member and that disclosure by M.L.S. to other M.L.S.
319  participants, affiliates, governmental agencies or other sources authorized to receive M.L.S. information shall be made. Seller and Buyer
320  acknowledge that sales information is public record and may be accessed and used by entities, both public and private, without the consent
321  of the parties. Seller and Buyer authorize REALTOR® to disclose financing settlement charges paid by seller and other concession data
322  upon inquiry and to the M.L.S. sold database, as applicable, to the extent necessary to adjust price to accurately reflect market value.

323  **25. SOLE CONTRACT:** The parties agree that this Contract constitutes their entire agreement and no oral or implied agreement
324  exists. **Any acceptance of, amendments and/or extensions to this Contract shall be in writing, signed by all parties and**
325  **copies shall be included with all copies of the original Contract.** This Contract shall be binding upon the parties, their heirs,
326  administrators, executors, successors and assigns. Faxes and Internet transmissions are an acceptable method of communication
327  for physical delivery of the Contract in this transaction and shall be binding upon the parties.

328  **26. ELECTRONIC SIGNATURES:** Manual or electronic signatures on contract documents, transmitted in original, facsimile
329  or electronic format shall be valid for purposes of this Contract and any amendments, addendums or notices to be delivered in
330  connection with this Contract.

331  **27. INDEMNITY:** Seller and Buyer recognize that the REALTORS® involved in the sale are relying on all information provided
332  herein or supplied by Seller or Seller's sources and Buyer and Buyer's sources in connection with the Real Estate, and agree to
333  indemnify and hold harmless the REALTORS®, their agents and employees from any claims, demands, damages, lawsuits,
334  liabilities, costs and expenses (including reasonable attorney's fees) arising out of any referrals, misrepresentation or concealment
335  of facts by Seller or Seller's sources  and/or Buyer and Buyer's sources.

336  **28. ELECTRONIC/WIRE FRAUD:** Email is **not** always secure or confidential. Never respond to a request that you send funds
337  or nonpublic personal information, such as credit card or debit card numbers or bank account and/or routing numbers, by email.
338  If you receive an email message concerning a transaction and the email requests that you send funds or provide nonpublic
339  personal information, **do not respond** to the email and immediately contact the known individual/entity with whom you have an
340  established relationship using a separate verified method of communication to determine/notify of suspected email fraud.

Buyer's Initials _____ Date / Time 10 / 11 / 2020      Seller's Initials _____ Date / Time 10 / 11 / 2020

341 **29. ACKNOWLEDGMENT**: Buyer and Seller acknowledge that any questions regarding legal liability with regard to any provision
342 in this Contract, accompanying disclosure forms and addendums or with regard to Buyer's/Seller's obligations as set forth in this Contract
343 must be directed to Buyer's/Seller's attorney. In the event the Broker provides to Buyer or Seller names of companies or sources for
344 such advice and assistance, the parties additionally acknowledge and agree that the Broker does not warrant, guarantee, or endorse the
345 services and/or products of such companies or sources.

346 **30. CONTRACT ACCEPTANCE DATE**: As used herein, the Contract Acceptance Date shall be defined as the date on
347 which all provisions of the Contract have been accepted and agreed by all parties to the Contract, and the document reflecting the
348 final signatures of acceptance has been physically delivered to the other party ("Contract Acceptance Date").

349 **31. EXPIRATION AND APPROVAL**: This offer is void if not accepted in writing on this Contract form, with this form
350 physically delivered to Buyer or Buyer's agent on or before 11 _____ o'clock ☐ (A.M.) ■ (P.M.) ☐
351 (Noon) EASTERN/DAYLIGHT STANDARD TIME 10/21/2020 _____. The Buyer has read, fully
352 understands and approves the foregoing offer and acknowledges receipt of a signed copy. Buyer certifies that the signatory(ies)
353 below has/have full authority to enter into this agreement and that no additional signatories, spouse or otherwise, are necessary in
354 order to purchase the property.

| Hidden Cloud LLC | _[signature]_ | 10 / 11 / 2020 |
|---|---|---|
| Print Buyer's Name | Buyer's Signature | Date/Time |

| | | |
|---|---|---|
| Print Buyer's Name | Buyer's Signature | Date/Time |

Buyer's Address _____

355 **32. ACTION BY SELLER**: The undersigned Seller has read and fully understands the foregoing offer. Seller certifies that the
356 signatory(ies) below has/have full authority to enter into this Contract and that no additional signatories, spouse or otherwise, are
357 necessary in order to convey the Real Estate. Seller hereby: ☐ accepts said offer and agrees to convey the Real Estate according
358 to the above terms and conditions, ☐ rejects said offer, or ☐ counteroffers according to the above modifications initialed and
359 dated by Seller, which counteroffer shall become null and void if not accepted in writing on this Contract form, with this form
360 physically delivered to Seller or Seller's agent on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon)
361 EASTERN/DAYLIGHT STANDARD TIME _____

| Melisa Jenkins | _Melisa Jenkins_ | 10 / 11 / 2020 |
|---|---|---|
| Print Seller's Name | Seller's Signature | Date/Time |

| | | |
|---|---|---|
| Print Seller's Name | Seller's Signature | Date/Time |

Seller's Address _____

**[ALL OWNERS AND SPOUSES OF OWNERS MUST SIGN.]**

---

**COMPLETE THE SECTIONS BELOW FOR ADMINISTRATIVE PROCESSING**

**CONTRACT ACCEPTANCE DATE**: Contract terms dictate that physical delivery of final signature(s) on this contract form
to the other party constitutes contract acceptance. Delivery of final contract to other party is to be made on the date of final
signature(s).

**DATE OF FINAL SIGNATURE ON** _____ 10 / 11 / 2020 _____ .
(Date/Time)

---

**RECEIPT OF EARNEST MONEY DEPOSIT**: Failure to provide written verification as provided in Section 2 of the Contract
to Purchase may result in Seller's termination of the Contract.

I hereby certify receipt of Earnest Money (☐ check/money order # _____, ☐ wire/electronic transfer # _____, ☐ cash, ☐ other

_____ ) in the amount of $_____ .

I further certify that the funds shall be submitted for deposit in accordance with Ohio law and acknowledge that failure to deposit in a
timely manner is a violation of license law.

| Print REALTOR®'s Name/Firm | REALTOR®'s Signature | Date/Time |
|---|---|---|

Copyright Nov Case 22-bk-10063 Society A Doc 47-1   Filed 07/25/22   Entered 07/25/22 17:26:02   Desc Page 8 of 8
Exhibit 1-13   Page 13 of 35

**THIS INFORMATION IS REQUIRED FOR TITLE, LENDER AND ADMINISTRATIVE PROCESSING**
The signatories below grant permission to the settlement agent to provide to their respective Real Estate Broker or their authorized Sales Associates, copies of the Closing Disclosure and the Settlement Statement for review prior to Closing.

*Melisa Jenkins*                     10 / 11 / 2020
Seller's Signature                     Date/Time                Seller's Signature                        Date/Time

Buyer's Signature          10 / 11 / 2020 Date/Time              Buyer's Signature                        Date/Time

SELLING/BUYER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____ Broker Firm MLS ID _____

Contact (Agent) Name _____

Contact (Agent) State License Number _____ Agent MLS Number _____

Contact (Agent) Email and Phone _____

(Principal) Broker Name _____

LISTING/SELLER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____ Broker Firm MLS ID _____

Contact (Agent) Name _____

Contact (Agent) State License Number _____ Agent MLS Number _____

Contact (Agent) Email and Phone _____

(Principal) Broker Name _____

Copyright© January 1997 CINCINNATI AREA BOARD OF REALTORS®, Inc.

## Addendum #1

A product of the
CINCINNATI AREA BOARD OF REALTORS®, INC.
Approved by Board Legal Counsel
(If not understood, seek legal advice. For real
estate advice, consult your REALTOR®.)



The undersigned Buyer and Seller, having executed a **Purchase Agreement**

contract dated **10/11**_____, **2020**_____, ("Contract") covering the real property known as
**4457 Mellwood Ave, Cincinnati, OH 45232**_____, further agree as follows:

_____

**The Closing is extended to on or before 10/31**_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This addendum, upon execution by the parties, becomes an integral part of the Contract. Except as amended or modified
by this addendum, the Contract, in all other respects, remains the same.

Date: _____**10 / 22 / 2020**_____          Date: _____**10 / 22 / 2020**_____

_____          _____*Melissa Jenkins*_____
Buyer                                                      Seller

_____          _____
Buyer                                                      Seller

Witness: _____          Witness: _____

Doc ID: 64d24742185ffdc7666c2883ca299c1c2654c3c9

Copyright© January 1997 CINCINNATI AREA BOARD OF REALTORS®, Inc.

## Addendum #1

A product of the
CINCINNATI AREA BOARD OF REALTORS®, INC.
Approved by Board Legal Counsel
(If not understood, seek legal advice. For real
estate advice, consult your REALTOR®.)



The undersigned Buyer and Seller, having executed a Purchase Agreement
contract dated 10/11 , 2020 , ("Contract") covering the real property known as
4457 Mellwood Ave, Cincinnati, OH 45232 , further agree as follows:

The Closing is extended to on or before 10/31

This addendum, upon execution by the parties, becomes an integral part of the Contract. Except as amended or modified by this addendum, the Contract, in all other respects, remains the same.

Date: 10 / 22 / 2020                Date: 10 / 22 / 2020

_____              Melisa Jenkins
Buyer                                Seller

_____              _____
Buyer                                Seller

Witness: _____            Witness: _____

Doc ID: 64d24742185ffdc7666c2863ca299c1c2654c3c9

Copyright November 1, 2017 Page 1 of 8



## Contract to Purchase
### Adopted by the
**CINCINNATI AREA BOARD OF REALTORS®**
**DAYTON AREA BOARD OF REALTORS®**
For exclusive use by REALTORS®.
This is a legally binding contract. If not understood, seek legal advice.
For real estate advice, consult a REALTOR®.

11-18-2020
_____ (date).

1. **PROPERTY DESCRIPTION**: I/We ("Buyer") offer to purchase from Seller ("Seller") the following described property:

Address 4457 Mellwood Ave,Cincinnati, OH 45232 _____ City/Township _____,

Ohio, Zip Code _____, County _____, Further described as: _____

220-0059-0015-00 ("Real Estate").

2. **PRICE AND TERMS:** Buyer hereby agrees to pay $ 175000 _____

("Purchase Price") for the Real Estate, payable as follows:

a) **EARNEST MONEY: For purposes of this clause, time is of the essence.** $ 500 _____

("Earnest Money") shall be submitted for deposit with Performance Title _____

within 3 ____ calendar days of the Contract Acceptance Date, as hereinafter defined ("Contract"), in a trust account pending the final settlement and conveyance of the purchase and sale of the Real Estate contemplated in this Contract ("Closing"), or returned to the Buyer if this offer is not accepted in writing. Written acknowledgement of Earnest Money Deposit ☐ is included ■ shall be provided to Listing REALTOR® or Seller within 3 ____ calendar days of the Contract Acceptance Date. If acknowledgement of Earnest Money is not provided as stated herein, then Seller, by Seller's sole option, may, by written notice to selling REALTOR® or Buyer, terminate this Contract. Any disbursement of Earnest Money shall be in compliance with Ohio R.C. 4735.24, which includes the following stipulations: The Earnest Money shall be disbursed as follows: (i) if the transaction is closed, the Earnest Money shall be applied to Purchase Price (may be retained by brokerage and credited toward brokerage commission owed) or as directed by Buyer or (ii) if either party fails or refuses to perform, or if any contingency is not satisfied or waived, the Earnest Money shall be (a) disbursed in accordance with a release of earnest money ("Release") signed by all parties to the Contract or (b) in the event of a dispute between the Seller and Buyer regarding the disbursement of the Earnest Money, the broker is required by law to maintain such funds in his trust account until the broker receives (a) written instructions signed by the parties specifying how the Earnest Money is to be disbursed or (b) a final court order that specifies to whom the Earnest Money is to be awarded. If the Real Estate is located in Ohio, and if within two years from the date the Earnest Money was deposited in the broker's trust account, the parties have not provided the broker with such signed instructions or written notice that such legal action to resolve the dispute has been filed, the broker shall return the Earnest Money to the Buyer with no further notice to the Seller. Both Buyer and Seller acknowledge and agree that, in the event of a dispute between Buyer and Seller as to entitlement of the Earnest Money, the REALTORS® will not make a determination as to which party is entitled to the Earnest Money.

b) **BALANCE:** The balance of the Purchase Price shall be paid by wire transfer, certified, cashier's, official bank, attorney or title company trust account check on date of Closing, subject to the terms of applicable law.

3. **FINANCING CONTINGENCY:** Buyer intends to use the Real Estate for the following purpose: ☐ Owner-occupied ■ Rental ☐ Other: _____.

☑ **CASH:** Buyer shall provide written confirmation of available funds on verifiable document from funding source within _____ calendar days of the Contract Acceptance Date. If Buyer fails to provide such documentation, then Seller may, by written notice to selling REALTOR® or Buyer, terminate this Contract. Buyer has the right to obtain an appraisal of the Real Estate by a licensed appraiser within _____ calendar days beginning the day following the Contract Acceptance Date.

☐ **CONVENTIONAL LOAN:** The Buyer's obligation to close this transaction is contingent upon Buyer applying for and obtaining: (a) ☐ fixed ☐ adjustable or ☐ other first mortgage loan on the Real Estate, (b) in an amount not to exceed _____ % of the Purchase Price, (c) at an interest rate ☐ at prevailing rates and terms ☐ not to exceed _____ %, (d) for a term of not less than _____ years or at a higher rate or shorter term agreeable to Buyer.

☐ **FHA/VA:** The Buyer's obligation to close this transaction is contingent upon Buyer applying for and obtaining (a) ☐ FHA, [(1) ☐ fixed or (2) ☐ adjustable] (including FHA closing costs) or ☐ VA (including VA funding fee) first mortgage loan in the maximum allowable amount (b) at an interest rate ☐ at prevailing rates and terms ☐ not to exceed _____ %, (c) for a term of not less than _____ years or at a higher rate or shorter term agreeable to Buyer. ☐ Buyer has been provided the FHA **For Your Protection: Get a Home Inspection** disclosure. *When the Buyer is financing through FHA or VA, the Seller may be required to pay for certain fees. Check with your lending institution. Whole house inspection fees may be paid by the VA Buyer, but must be paid outside of the Closing. On FHA/VA contracts, the appraiser is not deemed to be a whole house inspector.*

■ **OTHER FINANCING: SEE ATTACHED ADDENDUM** Cash/Cash Like/ Hard Money/Commercial _____

**Settlement Charges:** In addition to costs incurred in order for the Seller to fulfill the terms of the Contract and to provide marketable title, Seller agrees to pay actual settlement charges on behalf of the Buyer, including, but not limited to, discount points, closing costs, pre-paids and any other fees allowed by Buyer's lender in an amount not to exceed, 0 _____.

Buyer's Initials _P̶Y̶_____ Date / Time 11 / 18 / 2020    Seller's Initials _____ Date / Time 11 / 18 / 2020

Copyright November 1, 2017        Property Address:                                                    Page 2 of 8

52  **Financing Timeframe: IF BUYER FAILS TO PROVIDE CONFIRMATION THAT BUYER HAS COMPLETED ANY**
53  **OF THE REQUIREMENTS OF THE FINANCING TIMEFRAME, AS SET FORTH IN SUBSECTIONS (a) THROUGH**
54  **(c) below, THEN SELLER MAY, AT SELLER'S SOLE DISCRETION, BY WRITTEN NOTICE TO SELLING**
55  **REALTOR® OR BUYER, TERMINATE THIS CONTRACT.**

56  (a) Buyer financing qualification letter based upon initial credit check and preliminary information provided by Buyer stating that
57  such qualification ❑ is ■ is not contingent upon the closing of Buyer's other real estate and ■ is attached ❑ is not attached
58  ❑ shall be provided within _____ calendar days of the Contract Acceptance Date.

59  (b) Buyer shall complete a loan application, which shall include providing selected lender, with *"intent to proceed",* including
60  payment for appraisal (if necessary), within _____ calendar days of the Contract Acceptance Date and will make a diligent
61  effort to obtain financing.

62  (c) Buyer or Buyer's lender shall notify Listing REALTOR® or Seller, in writing, that a loan approval has been obtained or waived
63  within _____ calendar days of the Contract Acceptance Date.

64  **BUYER IS RELYING ON BUYER'S OWN UNDERSTANDING OF FINANCING TO BE OBTAINED AND PROCESSES**
65  **REQUIRED BY A LENDER AS WELL AS THE LEGAL AND TAX CONSEQUENCES THEREOF, IF ANY.**

66  **4.  APPRAISAL CONTINGENCY:** Buyer's obligation to close this transaction is contingent upon Real Estate appraising at or above
67  final sales price of the Real Estate. Buyer has the right to obtain, at Buyer's expense, an independent appraisal performed by an appraiser
68  licensed in Ohio. In the event the Real Estate does not obtain an appraised value (by either Buyer's or Lender's appraiser) equal to or greater
69  than the Purchase Price, Buyer shall have the right to terminate this Contract by delivering written notice to Seller on or before the expiration
70  of (i) the time-frame set forth in Section 3 above for obtaining an appraisal in connection with a cash sale or (ii) the time-frame set forth in
71  Section 3 above for obtaining a loan approval (such applicable time period being referred to as the "Appraisal Contingency Period"). If
72  Buyer does not deliver written notice to Seller that Buyer is terminating the Contract prior to the expiration of the Appraisal Contingency
73  Period, then Buyer's right to terminate this Contract due to appraised value shall be deemed waived. **Seller shall have ALL utilities**
74  **servicing the Real Estate on during the appraisal inspection.**

75  **5.  INCLUSIONS/EXCLUSIONS OF SALE:** The Real Estate shall include the land, together with all improvements thereon,
76  all appurtenant rights, privileges, easements, fixtures, and all of, but not limited to, the following items if they are now located on
77  the Real Estate and used in connection therewith: electrical; plumbing; heating and air conditioning equipment, including window
78  units; bathroom mirrors and fixtures; shades; blinds; awnings; window rods; window/door screens, storm windows/doors;
79  shrubbery/landscaping; affixed mirrors/floor covering; wall-to-wall, inlaid and stair carpeting (attached or otherwise); fireplace
80  inserts/grates; fireplace screens/glass doors; wood stove; gas logs and starters; television and/or sound system mounting brackets
81  (excluding televisions and/or sound system); aerials/rotor operating boxes/satellite dishes (including non-leased components);
82  water softeners; water purifiers; central vacuum systems and equipment; garage door openers/operating devices; the following
83  **built-in** appliances: ranges/ovens/microwaves/refrigerators/dishwashers/garbage disposers/trash compactors/humidifiers; all
84  security alarm systems and controls; all affixed furniture/fixtures; utility/storage buildings/structures; inground/above ground
85  swimming pools and equipment; swing sets/play sets; affixed basketball backboard/pole; propane tank/oil tank and contents
86  thereof; electronic underground fencing transmitter and receiver collars; and parking space(s) number(s) _____ and
87  storage unit number _____ (where applicable); **except the following: which are leased in whole or in part** (please check
88  appropriate boxes); ❑ water softener; ❑ security/alarm system; ❑ propane tank; ❑ satellite dish; ❑ satellite dish components:
89  _____. THE FOLLOWING ITEMS (WHICH ADD NO ADDITIONAL VALUE TO THE
90  **REAL ESTATE) ARE SPECIFICALLY INCLUDED WITH THE REAL ESTATE:** _____.
91  As listed , Seller to provide list of appliances owned by seller
92  **THE FOLLOWING ITEMS ARE SPECIFICALLY EXCLUDED FROM THE REAL ESTATE:** _____
93  None                                                                                                     .

94  **6.  CERTIFICATION OF OWNERSHIP:** Seller certifies that Seller owns all of the items listed in Section 5 and that they will
95  be free and clear of any debt, lien or encumbrances at closing (except as listed in Section 20 of this Contract). Seller also represents
96  that those signing this Contract constitute all of the owners of the title to the real property and other items as listed in Section 5,
97  together with their respective spouses.

98  **7.  SELLER'S CERTIFICATION:** Seller certifies to Buyer that **to the best of Seller's knowledge:** The Real Estate (a) ❑ is
99  ■ is not located in a Historic District, (b) ❑ is ■ is not subject to a maintenance agreement, (c) ❑ is ■ is not located
100  in a flood plain requiring insurance, (d) ❑ is ■ is not subject to a municipal pre-sale inspection, disclosure, and/or certification
101  of occupancy; if the Real Estate is located in a jurisdiction requiring housing inspection before transfer, Seller shall be responsible
102  for completing and submitting the necessary application and will furnish to Buyer or Buyer's agent a copy of the resulting
103  unconditional certificate on or before the date of Closing, (e) no orders of any public authority are pending, (f) no work has been
104  performed or improvement constructed that may result in future assessments, (g) no notices have been received from any public
105  agency with respect to condemnation or appropriation, change in zoning, proposed future assessments, correction of conditions or
106  other similar matters, and (h) to the best of Seller's knowledge, no toxic, explosive or other hazardous substances have been stored,
107  disposed of, concealed within or released on or from the Real Estate and no other adverse environmental conditions within the
108  boundaries of the Real Estate affect the Real Estate except No Exceptions _____. Seller further certifies
109  that, to the best of Seller's knowledge, there are no encroachments, shared driveways, party walls, property tax abatements or
110  homestead exemptions affecting the Real Estate except: No Exceptions _____ and

Buyer's Initials ____PY____  Date / Time 11 / 18 / 2020    Seller's Initials ____MW____  Date / Time 11 / 18 / 2020

Copyright November 1, 2017          Property Address:                                                                                  Page 3 of 8

111    that no improvements or services (site or area) have been installed or furnished, nor notification received from public authority or
112    owner's association of future improvements of which any part of the costs may be assessed against the Real Estate; except:
113    No Exceptions

114    **8.  HOMEOWNER ASSOCIATION/CONDOMINIUM DECLARATIONS, BYLAWS AND ARTICLES:** Real Estate (a)
115    ☐ is    ■ is not    subject to a homeowner association established by recorded declaration with mandatory membership,
116    (b) ☐ is    ■ is not    subject to a homeowner association assessment (separate from HOA fees)   (c) ☐ is    ■ is not    subject
117    to mandatory fees imposed on the real estate [☐ pool, ☐ golf course, ☐ other_____] (separate from HOA
118    fees). Seller further certifies that, to the best of Seller's knowledge, there are no Homeowner Association violations (current or
119    outstanding) affecting the Real Estate except: No Exceptions                                                                    .

120    If the Real Estate is subject to a Homeowner Association Declaration or is a Condominium, Seller will, at Seller's expense, provide
121    Buyer with a current copy of documents affecting the real estate including, but not limited to, documents recorded with the county,
122    the Association Declaration, the Association's financial statements, Rules and Restrictions, schedule of monthly, annual and
123    special assessments/fees, architectural standards (to the extent not included in the Rules and Restrictions), the Bylaws and the
124    Articles of Incorporation and other pertinent documents ("Documents") within N/A_____ calendar days beginning the day
125    following the Contract Acceptance Date. Buyer shall have the right to disapprove of the Documents by delivering written notice
126    of Buyer's disapproval to Seller within N/A_____ calendar days beginning the day following receipt of Documents
127    ("Disapproval Date"). If written notice of disapproval is delivered by the Disapproval Date, then this Contract shall become null
128    and void. Unless written notice is delivered by the Disapproval Date, Buyer shall be deemed to have approved the Documents and
129    waives the right to terminate the Contract based upon the terms and conditions of same. If Seller fails to provide Documents as
130    required, Buyer has the right to terminate the Contract. Seller agrees, as a condition to Closing, to secure, at Seller's expense,
131    written approval for this sale if required by the Documents. Seller, at Seller's expense, shall provide any letter of assessment
132    required at Closing by the lender and/or title company. Seller certifies that the current HOA fees are: $ N/A_____
133    ☐ Monthly   ☐ Quarterly   ☐ Annually and/ or   ☐ Other_____.

134    **9.  MAINTENANCE:** Until physical possession is delivered to the Buyer, Seller shall continue to maintain the Real Estate, as
135    described in Section 5, including the grounds and improvements thereon. Seller shall repair or replace any appliances, equipment
136    or systems currently in normal operating condition that fail prior to possession except: No Exceptions_____. Seller
137    further agrees that until physical possession is delivered to the Buyer, the Real Estate will be in as good condition as it is presently,
138    except for normal wear and casualty damage from perils insurable under a standard all risk policy. If, prior to Closing, the Real
139    Estate is damaged or destroyed by fire or other casualty, Buyer shall have the option to (a) proceed with the Closing, or (b) terminate
140    this Contract. While this Contract is pending, Seller shall not change any existing lease or enter into any new lease, nor make any
141    substantial alterations or repairs without the written consent of the Buyer. **Buyer and Seller agree that Buyer shall be provided
142    the opportunity to conduct a walk-through inspection of the Real Estate within 48 hours prior to Closing, solely for the
143    purpose of ascertaining that the Seller has maintained the Real Estate as required herein and has met all other contractual
144    obligations.** Upon Closing, Buyer shall become responsible for any risk of loss and for insurance for the Real Estate.

145    **10.  HOME WARRANTY PROGRAM:** Buyer has been informed that home warranty programs may be available to provide
146    potential additional benefits to Buyer. Buyer ☐ selects   ☐ does not select   a home warranty to be provided by a company to be
147    chosen by_____ and paid for by_____ at an amount not to exceed_____.

148    **11.  INSURANCE:** Buyer's right to terminate this Contract due to property and flood insurance availability and/or cost must be
149    satisfied during the **Real Estate Inspection Contingency Period (as defined in Section 14 below).** Buyer(s) acknowledges that
150    it is Buyer's sole responsibility to make inquiries with regard to insurance, including, but not limited to, real, flood and personal
151    property insurance availability and cost. **BUYER(S) IS RELYING ON BUYER'S OWN UNDERSTANDING OF
152    INSURANCE TO BE OBTAINED.**

153    **12.  PROPERTY DISCLOSURE FORM:** Buyer ■ has   ☐ has not   received the Ohio Residential Property Disclosure form
154    or ☐ Seller represents and warrants that Seller is exempt from providing the Ohio Residential Property Disclosure.

155    **13.  BUYER'S OFF-SITE ACKNOWLEDGEMENT: Buyer acknowledges that Buyer has conducted investigations with
156    regard to the municipality, zoning, school district, and use of the Real Estate and conditions outside of the boundaries of
157    the Real Estate, including but not limited to, crime statistics, registration of sex offenders, noise levels (i.e., airports,
158    interstates, environmental), local regulations/development or any other issues of relevance to the Buyer and has verified
159    that the Real Estate is suitable for Buyer's intended use. Buyer assumes sole responsibility for researching such conditions.**
160    Notwithstanding anything to the contrary, Seller makes no representations or warranties with regard to these conditions and the
161    use of the Real Estate. Buyer acknowledges that Buyer has been given the opportunity to conduct research pertaining to any and
162    all of the foregoing prior to execution of this Contract. Buyer is relying solely on Buyer's own research, assessment and inquiry
163    with local agencies and is not relying, and has not relied, on Seller or any REALTOR® involved in this transaction.

164    **14.  REAL ESTATE INSPECTION CONTINGENCY:  For purposes of this clause, time is of the essence.** The Buyer has the
165    option to have the Real Estate inspected, at Buyer's expense.  Buyer shall have up to NA_____ calendar days
166    ("Inspection Period") beginning the day following Contract Acceptance Date to conduct all inspections related to the Real Estate.
167    Inspections regarding the physical material condition, insurability and cost of a casualty insurance policy, boundaries, and use of
168    the Real Estate shall be the sole responsibility of the Buyer. **Buyer is relying solely upon Buyer's examination of the Real**

Buyer's Initials ___P̂___    Date / Time 11 / 18 / 2020    Seller's Initials ___M̂___    Date / Time 11 / 18 / 2020

169  Estate, the Seller's certification herein, and inspections herein requested by the Buyer or otherwise required, if any, for its
170  physical condition and overall character, and not upon any representation by the REALTORS® involved. During the
171  Inspection Period, Buyer and Buyer's inspectors and contractors shall be permitted access to the Real Estate at reasonable
172  times and upon reasonable notice. Buyer shall be responsible for any damage to the real estate caused by Buyer or Buyer's
173  inspectors or contractors, which repairs shall be completed in a timely and workmanlike manner at Buyer's expense.

174  a) If Buyer is not satisfied with the condition of the Real Estate as revealed by the inspection(s) and desires corrections to
175      material defect(s), Buyer shall provide written notification of any material defect(s) and the portion(s) of the inspection report
176      which describe the basis for the Buyer's dissatisfaction to the Listing Firm or Seller with a request for corrections desired
177      within the Inspection Period. Buyer and Seller shall have NA _____ calendar days beginning the day following the date
178      of delivery of the Post-Inspection Agreement or other written notice requesting corrections ("Settlement Period") to negotiate
179      to reach a written agreement in settlement of the condition of the Real Estate. Delivery of the Post-Inspection Agreement or
180      other written notice requesting corrections to material defects will designate the end of the Inspection Period, if provided
181      prior to the end of the Inspection Period identified above.

182      If written settlement of the condition of the Real Estate is not reached within the Settlement Period, Buyer shall have the
183      option to withdraw the written request for corrections within the Settlement Period and accept the Real Estate in "as is"
184      condition. If written settlement is not reached, with signed copies of settlement agreement physically delivered to the parties
185      or their respective agents within the Settlement Period, and Buyer has not withdrawn the request for corrections in writing,
186      this Contract shall be terminated. Buyer shall have the right to terminate the Contract, prior to reaching written agreement
187      with signed copies physically delivered to the parties or their respective agents, during the Settlement Period. Buyer agrees
188      that minor repairs and routine maintenance items are not to be considered material defects with regard to this contingency.

189  OR

190  b) If Buyer is not satisfied with the condition of the Real Estate, as revealed by the inspection(s) and desires to terminate this
191      Contract, Buyer shall provide written notification to Listing Firm or Seller that Buyer is exercising Buyer's right to terminate
192      this Contract within the Inspection Period, and this Contract shall be terminated.

193  If Buyer is satisfied with the results of the inspection(s), Buyer shall deliver written notification to Listing Firm or Seller within
194  the Inspection Period stating Buyer's satisfaction and waiver of the contingency. **IF BUYER DOES NOT DELIVER SUCH**
195  **NOTIFICATION OF SATISFACTION AND WAIVER OF THIS CONTINGENCY OR WRITTEN NOTIFICATION AS**
196  **IDENTIFIED IN (a) OR (b) ABOVE, WITHIN THE INSPECTION PERIOD, THEN BUYER SHALL BE DEEMED TO**
197  **BE SATISFIED WITH ALL INSPECTIONS AND THE CONTINGENCY SHALL BE CONSIDERED WAIVED. IF**
198  **BUYER DOES NOT COMPLETE REAL ESTATE INSPECTION(S) DURING THE INSPECTION PERIOD, BUYER'S**
199  **RIGHT TO INSPECT SHALL BE DEEMED WAIVED.**

200  A. ☐ **BUYER ELECTS TO CONDUCT INSPECTION(S) OF THE REAL ESTATE** to determine the material physical
201      condition of the house, land, improvements, fixtures, equipment, any additional structures, and any hazardous conditions
202      on the Real Estate. *(The inspection(s) may include, but are not limited to, the following inspections which may or may not*
203      *be performed by the same or different inspectors on the same or different dates.)*

204      Air Conditioning    Heating      Roofing      Water Quality / Quantity      Structural      Well / Septic System
205      Plumbing  Fireplace   Mold      Electrical    Asbestos    Radon          Infestations    Any other desired by Buyer

206  B. ■ **BUYER WAIVES THE REAL ESTATE INSPECTIONS** in A above with the following exception(s):
207
208      Buyer acknowledges that Buyer has been advised by REALTOR® to conduct inspections of the Real Estate and has been
209      provided the opportunity to make this Contract contingent upon the results of such inspections.

210  C. ☐ **BUYER SELECTS A TERMITE AND WOOD-BORING INSECT INSPECTION** (required by some lenders/types
211      of financing).

212      ■ **BUYER WAIVES A TERMITE AND WOOD-BORING INSECT INSPECTION.**

213  D. **LEAD-BASED PAINT INSPECTION:** Buyer ■ has   ☐ has not   received the Seller's disclosure of any lead-based
214      paint or lead-based paint hazards known to Seller on the Real Estate. Buyer ☐ has   ☐ has not   received the pamphlet
215      *"Protect Your Family From Lead in Your Home"*.

216      ☐ **BUYER SELECTS THE LEAD-BASED PAINT INSPECTION** pursuant to the attached Lead-Based Paint
217      Inspection Addendum, which provides rights and responsibilities that supersede those of the general inspection
218      contingency of this Contract.

219      ■ **BUYER WAIVES THE LEAD-BASED PAINT INSPECTION.**

220      ☐ **NOT APPLICABLE.**

221  **SELLER(S) AND REALTORS® SHALL NOT BE RESPONSIBLE FOR ANY UNKNOWN AND/OR DISCLOSED**
222  **DEFECTS IN THE REAL ESTATE. BUYER ACKNOWLEDGES THAT BUYER HAS BEEN ADVISED BY**
223  **REALTOR® TO CONDUCT INSPECTIONS OF THE REAL ESTATE THAT ARE OF CONCERN TO BUYER AND**
224  **HAS BEEN PROVIDED THE OPPORTUNITY TO MAKE THIS CONTRACT CONTINGENT UPON THE RESULTS**
225  **OF SUCH INSPECTION(S).**

Buyer's Initials ___Pr___   Date / Time 11 / 18 / 2020      Seller's Initials ___M___   Date / Time 11 / 18 / 2020

Copyright November 1, 2017        Property Address:                                                                    Page 5 of 8

**15. PROPERTY SURVEY:** Buyer(s) acknowledges that surveys obtained by the lender are not for the benefit of the Buyer. If Buyer elects to have the property surveyed for his benefit, it shall be at Buyer's expense.

**16. OTHER CONTINGENCIES/AGREEMENTS:** ☐ See attached Addenda which are signed by all parties and incorporated into this Contract:
Contingent on any judgments or settlements to be cleared at closing .
Seller need time to move out to new place , the closing date reflects the same.



**17. TITLE INSURANCE:** Title insurance is designed to protect the policyholder of such title insurance for covered losses caused by defects in title (ownership) to the Real Estate that are in existence on the date and time the policy of title insurance is issued. Title insurance is different from casualty or liability insurance. **Buyer is encouraged to inquire about the benefits of owner's title insurance from a title insurance agency or provider. An Owner's Policy of Title Insurance, while not required, is recommended. A Lender's Policy of Title Insurance, if required by the mortgage lender, does not provide protection to the Buyer. Buyer acknowledges that it is Buyer's sole responsibility to make inquiries with regard to owner's title insurance prior to Closing.**

   ▣ Buyer selects an Owner's Policy of Title Insurance.

      ▣ Buyer selects an Owner's Policy of Title Insurance at Buyer's expense.

      ☐ **Seller shall pay an amount not to exceed $300 towards the purchase of an Owner's Policy of Title Insurance and Buyer shall be responsible for payment of the balance of the Owner's Policy of Title Insurance premium**

      ☐ **Seller shall pay the entire cost of an Owner's Policy of Title Insurance premium.**
      Seller's contribution is payable only if Buyer has selected to obtain the Owner's Policy of Title Insurance at Closing, so that Seller's contribution may be deducted from the proceeds paid to Seller at Closing. This amount shall be in addition to Seller-paid settlement charges stated in Section 3, if any.

**18. TAXES AND ASSESSMENTS:** At Closing, Seller shall pay or credit on the purchase price (a) all real estate taxes and assessments, including penalties and interest, which became due and payable prior to the Closing, (b) a pro rata share, calculated as of the closing date in the manner set forth below, of the taxes and assessments becoming due and payable after the closing, and (c) the amount of any agricultural tax savings accrued as of the Closing  date which would be subject to recoupment if the Real Estate were converted to a non-agricultural use (whether or not such conversion actually occurs), unless Buyer has indicated that Buyer is acquiring the Real Estate for agricultural purposes. ☐ If checked, Buyer hereby states that Buyer will use Real Estate for agricultural purposes and expressly waives Sellers payment to Buyer of the estimated agricultural tax savings subject to CAUV recoupment.

**TAX PRORATIONS:** All prorations shall be based upon the most recent available tax rates, assessments and valuations. It is the intent of the Seller and Buyer that each shall pay the real estate expenses as follows:

Seller's share is based upon the taxes and assessments which are a lien for the year of the Closing. Long Proration Method - Seller pays entire taxes due which cover the tax period(s) up to the date of Closing. If new construction, Long Proration method shall apply.

      ☐ Short Proration Method: ONLY CHECK THIS BOX IF THE SHORT PRORATION METHOD IS TO BE USED - Seller's share shall be calculated as of the date of Closing, based upon the amount of the annual taxes (as determined by the most recently assessed tax amounts) to establish a daily rate of taxes and then multiplying the daily rate by the number of days from the first day of the current, semi-annual tax period to the date of Closing. If checked, the Short Proration Method shall be applicable and shall supersede the provision to use the Long Proration Method.

**ASSESSMENTS:** Any special assessments are payable in a single annual installment and shall be prorated on the long proration method. Seller and Buyer acknowledge that actual bills received by Buyer after Closing for real estate taxes and assessments may differ from the amounts prorated at Closing; however, all Closing prorations shall be final, except for the following (if applicable): (i.e., tax abated property, new construction, etc.) NO EXCEPTIONS                                                     Buyer shall assume responsibility for above items upon Closing. The Real Estate may contain a newly-constructed residence which at the time of Closing does not yet appear on the most recent official tax duplicate available, so that the tax bill prorated at the Closing shows taxes for only the vacant or partially improved land. Seller agrees that Seller is responsible for the amount of all real estate taxes assessed for the land and the residence through the date of Closing, regardless of when assessed, and if one or more tax bills are issued after the Closing which show taxes which were not prorated by Seller and Buyer at the Closing, Seller shall immediately pay the additional appropriate prorated amount to Buyer upon delivery by Buyer of the new tax bill(s). This provision shall survive the Closing and delivery of the deed, and the REALTOR® shall not be responsible for enforcement of this provision. Buyer shall be solely responsible for inquiring about and determining any tax credits or abatements available to the Real Estate.

**19. OTHER PRORATIONS:** It is the intent of the Seller and Buyer that each shall pay the real estate expenses listed in (a) and (b) below due for the period of time that each owns the Real Estate. There shall be prorated between Seller and Buyer as of Closing: (a) homeowner/condominium association assessments and other charges imposed by the association under the terms of the Association/Condominium Documents, if applicable, as shown on the most recent official Association statement available as

Buyer's Initials _P̶r̶_ _____   Date / Time 11 / 18 / 2020      Seller's Initials _M̶_ _____   Date / Time 11 / 18 / 2020

283 of the date of Closing, and/or, (b) rents and operating expenses if the Real Estate is rented to tenants. Security and/or damage
284 deposits held by Seller shall be transferred to Buyer at Closing without proration. Seller and Buyer acknowledge that prorations
285 are based on the information provided at closing and that actual amounts charged and/or collected for prorated items may differ;
286 however all Closing prorations shall be final.

287 **20. CONVEYANCE AND CLOSING:** Closing services will be provided by title company designated by Buyer:
288 Performance Title (name of title company, if known).
289 Both Buyer and Seller agree to execute all documents required by the closing/escrow agent. At Closing, Seller shall be responsible
290 for transfer taxes, Condominium or HOA transfer fees, conveyance fees, deed preparation, settlement fees chargeable to Seller,
291 the cost of removing or discharging any defect, lien or encumbrance required for conveyance of the Real Estate as required by this
292 Contract; and shall convey marketable title (as determined with reference to the Ohio State Bar Association Standards of Title
293 Examination) to the Real Estate by recordable and transferable deed of general warranty or fiduciary deed, if applicable, in fee
294 simple absolute, with release of dower. Date of Closing will be 03/31/2021 , or earlier as
295 mutually agreed by the parties. Title shall be free, clear and unencumbered as of Closing, with the exception of the following, if
296 applicable: (1) covenants, conditions, restrictions and easements of record, (2) legal highways, (3) any mortgage expressly assumed
297 by Buyer and agreed to by Seller's current lender in writing, (4) all installments of taxes and assessments becoming due and payable
298 after Closing, (5) zoning and other laws, (6) homeowner/condominium association fees becoming due and payable after Closing,
299 and (7) the following assessments (certified or otherwise): . Seller shall
300 have the right at Closing to pay out of the Purchase Price any and all encumbrances or liens. Make deed to:
301 Hidden Cloud LLC .

302 **21. POSSESSION AND OCCUPANCY: For purposes of this clause, time is of the essence.** Subject to rights of tenants,
303 possession/occupancy shall be given ■ at Closing ❑ on or before o'clock ❑ (A.M.) ❑ (P.M.) ❑ (Noon)
304 EASTERN/DAYLIGHT STANDARD TIME on , or such earlier date that the Seller
305 so notifies the Buyer. Until such time, Seller shall have the right of possession/occupancy free of rent, unless otherwise specified, but
306 shall pay for all utilities used. Seller shall order final meter readings to be made as of the occupancy date for all utilities serving the Real
307 Estate and Seller shall pay for all final bills rendered from such meter readings. Seller acknowledges and agrees that prior to Buyer taking
308 possession of the Real Estate, Seller shall remove all personal possessions not included in this Contract and shall remove all debris. **If
309 Seller fails to vacate as agreed in this Contract or any attached post-closing occupancy agreement, Seller shall be responsible for
310 all additional expenses, including attorney's fees, incurred by Buyer to take possession as a result of Seller's failure to vacate.**

311 **22. AGENCY DISCLOSURES:** Buyer and Seller acknowledge having reviewed the attached state-mandated agency disclosure
312 statement(s).

313 **23. COMPANY SPECIFIC PROVISIONS:**
314 Rajib Garu is a licensed Realtor in state of Ohio member/manager for Hidden Cloud LLC
315
316

317 **24. M.L.S. AND PUBLIC RECORD ACKNOWLEDGEMENT:** Seller and Buyer acknowledge that REALTOR® shall disclose
318 this sales information to any Multiple Listing Service to which REALTOR® is a member and that disclosure by M.L.S. to other M.L.S.
319 participants, affiliates, governmental agencies or other sources authorized to receive M.L.S. information shall be made. Seller and Buyer
320 acknowledge that sales information is public record and may be accessed and used by entities, both public and private, without the consent
321 of the parties. Seller and Buyer authorize REALTOR® to disclose financing settlement charges paid by seller and other concession data
322 upon inquiry and to the M.L.S. sold database, as applicable, to the extent necessary to adjust price to accurately reflect market value.

323 **25. SOLE CONTRACT:** The parties agree that this Contract constitutes their entire agreement and no oral or implied agreement
324 exists. **Any acceptance of, amendments and/or extensions to this Contract shall be in writing, signed by all parties and
325 copies shall be included with all copies of the original Contract.** This Contract shall be binding upon the parties, their heirs,
326 administrators, executors, successors and assigns. Faxes and Internet transmissions are an acceptable method of communication
327 for physical delivery of the Contract in this transaction and shall be binding upon the parties.

328 **26. ELECTRONIC SIGNATURES:** Manual or electronic signatures on contract documents, transmitted in original, facsimile
329 or electronic format shall be valid for purposes of this Contract and any amendments, addendums or notices to be delivered in
330 connection with this Contract.

331 **27. INDEMNITY:** Seller and Buyer recognize that the REALTORS® involved in the sale are relying on all information provided
332 herein or supplied by Seller or Seller's sources and Buyer and Buyer's sources in connection with the Real Estate, and agree to
333 indemnify and hold harmless the REALTORS®, their agents and employees from any claims, demands, damages, lawsuits,
334 liabilities, costs and expenses (including reasonable attorney's fees) arising out of any referrals, misrepresentation or concealment
335 of facts by Seller or Seller's sources and/or Buyer and Buyer's sources.

336 **28. ELECTRONIC/WIRE FRAUD:** Email is **not** always secure or confidential. Never respond to a request that you send funds
337 or nonpublic personal information, such as credit card or debit card numbers or bank account and/or routing numbers, by email.
338 If you receive an email message concerning a transaction and the email requests that you send funds or provide nonpublic
339 personal information, **do not respond** to the email and immediately contact the known individual/entity with whom you have an
340 established relationship using a separate verified method of communication to determine/notify of suspected email fraud.

Buyer's Initials _RG_ Date / Time 11 / 18 / 2020    Seller's Initials _____ Date / Time 11 / 18 / 2020

Copyright November 1, 2017 _____ Property Address: _____ Page 7 of 8

341 **29. ACKNOWLEDGMENT:** Buyer and Seller acknowledge that any questions regarding legal liability with regard to any provision
342 in this Contract, accompanying disclosure forms and addendums or with regard to Buyer's/Seller's obligations as set forth in this Contract
343 must be directed to Buyer's/Seller's attorney. In the event the Broker provides to Buyer or Seller names of companies or sources for
344 such advice and assistance, the parties additionally acknowledge and agree that the Broker does not warrant, guarantee, or endorse the
345 services and/or products of such companies or sources.

346 **30. CONTRACT ACCEPTANCE DATE:** As used herein, the Contract Acceptance Date shall be defined as the date on
347 which all provisions of the Contract have been accepted and agreed by all parties to the Contract, and the document reflecting the
348 final signatures of acceptance has been physically delivered to the other party ("Contract Acceptance Date").

349 **31. EXPIRATION AND APPROVAL:** This offer is void if not accepted in writing on this Contract form, with this form
350 physically delivered to Buyer or Buyer's agent on or before 11 ___ o'clock ☐ (A.M.) ■ (P.M.) ☐
351 (Noon) EASTERN/DAYLIGHT STANDARD TIME 11/20/2020 ___. The Buyer has read, fully
352 understands and approves the foregoing offer and acknowledges receipt of a signed copy. Buyer certifies that the signatory(ies)
353 below has/have full authority to enter into this agreement and that no additional signatories, spouse or otherwise, are necessary in
354 order to purchase the property.

Hidden Cloud LLC | _____ | 11 / 18 / 2020
Print Buyer's Name | Buyer's Signature | Date/Time

Print Buyer's Name | Buyer's Signature | Date/Time

Buyer's Address _____

355 **32. ACTION BY SELLER:** The undersigned Seller has read and fully understands the foregoing offer. Seller certifies that the
356 signatory(ies) below has/have full authority to enter into this Contract and that no additional signatories, spouse or otherwise, are
357 necessary in order to convey the Real Estate. Seller hereby: ☐ accepts said offer and agrees to convey the Real Estate according
358 to the above terms and conditions, ☐ rejects said offer, or ☐ counteroffers according to the above modifications initialed and
359 dated by Seller, which counteroffer shall become null and void if not accepted in writing on this Contract form, with this form
360 physically delivered to Seller or Seller's agent on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon)
361 EASTERN/DAYLIGHT STANDARD TIME _____.

Melisa Jenkins | Melisa Jenkins | 11 / 18 / 2020
Print Seller's Name | Seller's Signature | Date/Time

Print Seller's Name | Seller's Signature | Date/Time

Seller's Address _____

**[ALL OWNERS AND SPOUSES OF OWNERS MUST SIGN.]**

**COMPLETE THE SECTIONS BELOW FOR ADMINISTRATIVE PROCESSING**

**CONTRACT ACCEPTANCE DATE: Contract terms dictate that physical delivery of final signature(s) on this contract form to the other party constitutes contract acceptance. Delivery of final contract to other party is to be made on the date of final signature(s).**

**DATE OF FINAL SIGNATURE ON** _____.
(Date/Time)

**RECEIPT OF EARNEST MONEY DEPOSIT: Failure to provide written verification as provided in Section 2 of the Contract to Purchase may result in Seller's termination of the Contract.**

I hereby certify receipt of Earnest Money (☐ check/money order # _____, ☐ wire/electronic transfer # _____, ☐ cash, ☐ other
_____ ) in the amount of $_____.

I further certify that the funds shall be submitted for deposit in accordance with Ohio law and acknowledge that failure to deposit in a timely manner is a violation of license law.

Print REALTOR®'s Name/Firm | REALTOR®'s Signature | Date/Time

Copyright November 1, 2017          Property Address:                                                                Page 8 of 8

---

**THIS INFORMATION IS REQUIRED FOR TITLE, LENDER AND ADMINISTRATIVE PROCESSING**

The signatories below grant permission to the settlement agent to provide to their respective Real Estate Broker or their authorized Sales Associates, copies of the Closing Disclosure and the Settlement Statement for review prior to Closing.

| _____ | 11 / 18 / 2020 | _____ | _____ |
| Seller's Signature | Date/Time | Seller's Signature | Date/Time |
| _____ | 11 / 18 / 2020 | _____ | _____ |
| Buyer's Signature | Date/Time | Buyer's Signature | Date/Time |

SELLING/BUYER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____     Broker Firm MLS ID _____

Contact (Agent) Name _____

Contact (Agent) State License Number _____     Agent MLS Number _____

Contact (Agent) Email and Phone _____

(Principal) Broker Name _____


LISTING/SELLER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____     Broker Firm MLS ID _____

Contact (Agent) Name _____

Contact (Agent) State License Number _____     Agent MLS Number _____

Contact (Agent) Email and Phone _____

(Principal) Broker Name _____

Copyright April 1, 2019                                                                                          Page 1 of 5



**Exclusive Right to Sell Listing Contract**
**("Contract")**
A product of the
**CINCINNATI AREA BOARD OF REALTORS®, INC.**
Approved by Board Legal Counsel, except for underlined items,
for exclusive use by REALTORS®.
This is a legally binding contract. If not understood, seek legal advice.
For real estate advice, consult your REALTOR®.

InternetAgents.US _____, Xenia _____, Ohio.
NAME OF LISTING REALTOR® FIRM

1  **1. APPOINTMENT OF REALTOR®:** The undersigned owner(s)/authorized representative(s) (hereinafter referred to as
2  "Seller"), hereby employs the undersigned REALTOR® Firm ("REALTOR®") as Seller's exclusive agent and grants to
3  REALTOR® the exclusive right, without reservation, from  12 ___ [✓] a.m. [ ] p.m. [ ] noon on  Jan 7th 2021
4  ("Commencement Date") until midnight of  May 7th 2021 _____ ("Expiration Date") to sell the following described real
5  property ("Real Estate"): Address  4457 MELLWOOD AVE CINCINNATI OH 45232 , City/Township _____,
6  Ohio, Zip Code _____, County  Hamilton _____ , further described as: _____
7  _____ together with all improvements thereon and with all appurtenant
8  rights and easements and other items listed in Section 4 of this Contract for the sum of $  240 000
9  ("Listed Price"), or to sell or exchange it on any other terms which are acceptable to the Seller. Seller agrees to delegate to
10 REALTOR® the authority to appoint other licensees within the brokerage to represent Seller's interest. If an appointment is made,
11 Seller will be notified at the time of the appointment. Seller has the right to veto the appointment of any other licensee.

12 **2. REALTOR® ACCEPTANCE:** REALTOR® accepts employment and agrees, in consideration of agreements by the Seller, to use its
13 best efforts to sell the Real Estate.

14 **3. INCLUSIONS/EXCLUSIONS OF SALE:** The Real Estate shall include the land, together with all buildings, improvements,
15 fixtures, and all items affixed or wired to the property located thereon (but excluding any items specifically excluded below), and
16 all rights, privileges, licenses, easements and appurtenances of Seller appurtenant thereto, which may include some or all of the
17 following items, if they are now located on the Real Estate and used in connection therewith: electrical; plumbing; heating and air
18 conditioning equipment, including window units; bathroom mirrors and fixtures; shades; blinds; awnings; window rods;
19 window/door screens, storm windows/doors; shrubbery/landscaping; affixed mirrors/floor covering; wall-to-wall, inlaid and stair
20 carpeting (attached or otherwise); fireplace inserts/grates; fireplace screens/glass doors; wood stove; gas logs and starters;
21 television and/or sound system mounting brackets (excluding televisions and/or sound system), aerials/rotor operating
22 boxes/satellite dishes (including non-leased components); water softeners; water purifiers; central vacuum systems and equipment;
23 garage door openers/operating devices; the following **built-in** appliances: ranges/ovens/microwaves/ refrigerators/dishwashers/
24 garbage disposers/trash compactors/humidifiers; all security alarm systems and controls; all affixed furniture/fixtures;
25 utility/storage buildings/structures; inground/above ground swimming pools and equipment; swing sets/play sets; affixed
26 basketball backboard/pole; propane tank/oil tank and contents thereof; electronic underground fencing transmitter and receiver
27 collars; and parking space(s) number(s)  N/A _____ and storage unit number  N/A _____ (where applicable); **except the**
28 **following: which are leased in whole or in part** (please check appropriate boxes): [ ] water softener; [ ] security/alarm system;
29 [ ] propane tank; [ ] satellite dish; [ ] satellite dish components: _____. Seller shall provide all keys to the
30 Real Estate and provide information for items that require codes/programming no later than the date of occupancy. **THE**
31 **FOLLOWING ITEMS ARE SPECIFICALLY EXCLUDED FROM THE REAL ESTATE:** _____
32 Water Filter System , STOVE _____. *In the event of a conflict between*
33 *this Section 3 and any subsequent written agreement between Seller and a potential buyer, the subsequent agreement shall control.*

34 **4. OTHER ITEMS:** The following items shall be included in the marketing of the Real Estate for sale:  ☐ Stove ☐ Refrigerator
35 [ ] Dishwasher [ ] Microwave [ ] Washer [ ] Dryer [ ] Other: _____

36 **5. CERTIFICATION OF OWNERSHIP:** Seller certifies that Seller owns all of the above Real Estate and other items included
37 in the sale as listed in Sections 3 & 4 and that they will be free and clear of any debt, lien or encumbrances upon the final settlement
38 and conveyance of the Real Estate (the "Closing") except as listed in Section 11 of this Contract. Seller represents and warrants
39 that it is the fee owner to the Real Estate, and owner of the other items listed in Sections 3 & 4, together with respective spouses,
40 if applicable, and no third party signatures are required to transfer fee simple title in the Real Estate, unless expressly provided in
41 Section 11 of this Contract.

42 **6. POSSESSION AND OCCUPANCY:** Subject to rights of tenants, possession/occupancy shall be given to the individual or
43 entity acquiring the Real Estate (hereinafter referred to as, "Buyer") as agreed in a purchase contract. Seller shall order final meter
44 readings to be made as of the occupancy date for all utilities serving the Real Estate and Seller shall pay for all final bills rendered from
45 such meter readings. Seller acknowledges and agrees that prior to Buyer taking possession of the Real Estate, Seller shall remove
46 all personal possessions not included in the purchase contract and shall remove all debris.

47 **7. SELLER'S CERTIFICATION:** Seller certifies that to the **actual Seller's knowledge, without further inquiry:** The Real
48 Estate (a) [ ] is [✓] is not located in a Historic District, (b) [ ] is [✓] is not subject to a lease (c) [ ] is [✓] is not subject to

Seller's initials  _MM_                                           Date/Time:  1/7/2021

Copyright April 1, 2019        Property Address:                                        Page 2 of 5

49  an agreement pertaining to joint maintenance of shared aspects of/by the real estate , (d) ☐ is ☑ is not located in a flood
50  plain requiring insurance, (e) ☐ is ☑ is not subject to subdivision or plat covenants or restrictions; if the Real Estate is subject
51  to such covenants or restrictions, Seller shall furnish Buyer with a copy of the covenants or restrictions prior to the Contract
52  Acceptance Date (f) no orders of any public authority are pending, (g) no work has been performed or improvement constructed
53  that may result in future assessments, (h) no notices have been received from any public agency with respect to condemnation or
54  appropriation, change in zoning, proposed future assessments, correction of conditions or other similar matters, and (i) to the best
55  of Seller's knowledge, no toxic, explosive or other hazardous substances have been stored, disposed of, concealed within or
56  released on or from the Real Estate and no other adverse environmental conditions within the boundaries of the Real Estate affect
57  the Real Estate except No Exceptions                                                     . Seller further certifies
58  that, to the best of Seller's knowledge, there are no encroachments, shared driveways, party walls, property tax abatements or
59  homestead exemptions affecting the Real Estate except: No Exceptions                          and that no
60  improvements or services (site or area) have been installed or furnished, nor notification received from public authority or owner's
61  association of future improvements of which any part of the costs may be assessed against the Real Estate, except:
62  No Exceptions                                 . Seller understands that the law requires disclosure of all known material
63  defects adversely affecting the value or desirability of the Real Estate and that failure to disclose all known material defects may
64  result in civil liability. Seller represents that except as disclosed in the state-mandated property disclosure form completed by the
65  Seller and attached to this Contract, Seller has no knowledge of and has not notified REALTOR® of any material defects
66  concerning the Real Estate. Seller understands that prospective buyers and other REALTORS® may rely upon the state-mandated
67  property disclosure form and the assurances by the Seller in this paragraph. Seller shall continue to maintain the Real Estate,
68  including the grounds and improvements thereon, in good condition and repair, ordinary wear and tear excepted, until possession
69  is given to Buyer. Inspections regarding the condition and use of the Real Estate shall be the sole responsibility of Buyer.

70  **8.  LEAD-BASED PAINT CERTIFICATION**: Seller agrees to complete a federal-mandated lead based paint disclosure form if
71  home was built prior to 1978.

72  **9.  RESIDENTIAL PROPERTY DISCLOSURE FORM**: Seller agrees to complete a state-mandated property disclosure form or
73  the Ohio REALTORS® Residential Property Disclosure Exemption Form.

74  **10. HOMEOWNER ASSOCIATION/CONDOMINIUM/DECLARATIONS, BYLAWS AND ARTICLES**:  Real Estate
75  (a) ☐ is ☑ is not  subject to a homeowner association established by recorded declaration with mandatory membership,
76  (b) ☐ is ☐ is not subject to a homeowner association assessment (separate from HOA fees) (c) ☐ is ☑ is not subject
77  to mandatory fees imposed on the real estate ☐ pool ☐ golf course ☐ other_____ ] (separate from HOA
78  fees). Seller further certifies that, to the **actual Seller's knowledge, without further inquiry**, there are no Homeowner Association
79  violations (current or outstanding) affecting the Real Estate except: No Exceptions
80  _____ . If the Real Estate is subject to a Homeowner Association Declaration
81  or is a Condominium Seller will, at Seller's expense, provide Buyer with a current copy of the documents affecting the real estate
82  including, but not limited to, documents recorded with the county, the Association Declaration, the Association's financial
83  statements, Rules and Restrictions, schedule of monthly, annual and special assessments/fees, architectural standards (to the extent
84  not included in the Rules and Restrictions), the Bylaws and the Articles of Incorporation, Minutes for the previous 2 years, and
85  other pertinent documents ("Documents") as requested. Seller shall secure, at Seller's expense, written approval for the sale of the
86  Real Estate, if required by the Documents. Seller shall, at Seller's expense, provide any letter of assessment required at Closing
87  by the lender and/or title company. Current HOA fees are: $_____ ☐ Monthly ☐ Quarterly ☐ Annually
88  and/ or ☐ Other_____ .

89  **11. CONVEYANCE AND STATUS OF TITLE**: Seller agrees to execute all documents required by the closing/escrow agent.
90  Seller shall be responsible for transfer taxes/conveyance fees, Condominium or HOA transfer fees, deed preparation, the cost of
91  removing or discharging any defect, lien or encumbrance required for conveyance of the Real Estate as required by a purchase
92  contract; and shall convey marketable title (as determined with reference to the Ohio State Bar Association Standards of Title
93  Examination) to the Real Estate by recordable and transferable deed of general warranty or fiduciary deed, if applicable, in fee
94  simple absolute, with release of dower. Title shall be free, clear and unencumbered as of Closing, with the exception of the
95  following: (1) covenants, conditions, restrictions and easements of record, (2) legal highways, (3) any mortgage expressly assumed
96  by Buyer and agreed to by Seller's current lender in writing, (4) all installments of taxes and assessments becoming due and payable
97  after closing, (5) zoning and other laws, (6) homeowner/condominium association fees becoming due and payable after Closing,
98  and (7) the following assessments (certified or otherwise): No Exceptions                      . List all persons
99  or entities, including yourself, who own any portion of the Real Estate and/or have an ownership interest in the Real Estate
100 (dower/ownership rights) and/or the names of the individuals whose signature is necessary in order to convey the real estate:
101 Idealogiz Group LLC

102 **12. TAXES AND ASSESSMENTS**: At Closing, Seller shall pay or credit on the purchase price (a) all real estate taxes and
103 assessments, including penalties and interest, which became due and payable prior to the Closing, (b) a share of the real estate
104 taxes and assessments becoming due and payable after the Closing, prorated as of the Closing date in the manner set forth in a
105 purchase contract, and (c) the amount of any agricultural tax savings accrued as of the Closing date which would be subject to
106 recoupment if the Real Estate were converted to a non-agricultural use as set forth in a purchase contract.

Seller's initials _____     Date/Time: 1/7/2022

Copyright April 1, 2019         Property Address:                                    Page 3 of 5

**13. OTHER PRORATIONS:** There shall be prorated between Seller and Buyer as of Closing: (a) homeowner/condominium association assessments and other charges imposed by an association under the terms of the Association/ Condominium Documents (if applicable), and/or, (b) rents and operating expenses if the Real Estate is rented to tenants. Security and/or damage deposits held by Seller shall be transferred to Buyer at Closing without proration.

**14. REALTOR®'S FEE:** Seller agrees to pay REALTOR® a commission ("Commission") of $ 5%       or _____ % of the gross selling price regardless of agency relationships, in the event that, within the exclusive listing period (a) Seller conveys or agrees to convey the Real Estate; or (b) REALTOR® or any person procures a written offer to purchase from a buyer who is ready, willing and able to purchase the Real Estate for the listed price or any other price acceptable to Seller, unless the closing does not take place due to no fault of the Seller.

**15. PROTECTION PERIOD:** Seller agrees to pay REALTOR® the Commission if the Seller, acting as Seller's own agent, within 60 days after the Expiration Date, conveys or agrees to convey the Real Estate to any Buyer, whether individually or in combination with others, with whom Seller negotiated during the term hereof, or to any Buyer, whether individually or in combination with others, who was shown the Real Estate by REALTOR® or any person during the term hereof. This clause shall be null and void if the Real Estate has been listed exclusively with another broker by written agreement.

**16. COOPERATION WITH OTHER BROKERS:** The REALTOR® may cooperate with other brokers and their agents to procure a Buyer and, accordingly, the REALTOR® is authorized to offer compensation to cooperating brokers. REALTOR® will offer to pay 2.5% _____ to any cooperating broker that has participated in the sale of the Real Estate as the procuring broker, regardless of agency relationships.

**17. CIVIL RIGHTS:** It is illegal, pursuant to the Ohio Fair Housing Law, Division (H) of Section 4112.02 of the Revised Code and the Federal Fair Housing Law, 42 U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in Section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

**18. MLS AUTHORITY:** REALTOR®/Broker is authorized to file said listing and place information about the real estate in the Multiple Listing Service of Greater Cincinnati, or any other multiple listing service to which REALTOR®/Broker is a member, in accordance with MLS Regulations. The REALTOR®/Broker and MLS may disclose information pertaining to said Real Estate to MLS Participants authorized to receive MLS information. REALTOR®/Broker is further authorized to place information about the Real Estate in any listing services, informational services and other media of REALTOR®'s choosing to advertise and promote the sale of the Real Estate. REALTOR® is authorized to disclose in any MLS said information with the following provisions: 1) Publish Listings to Internet ☑ yes ☐ no); 2) Show Address on Internet ☑ yes ☐ no); 3) Allow Internet AVM [Automated Valuation Model] ☑ yes ☐ no); 4) Allow Internet Blogging ☑ yes ☐ no); 5) Subject to Short Sale/third-party approval ☐ yes ☑ no). If yes, Seller agrees to execute the Short Sale Listing Addendum. Seller authorizes REALTOR® to disclose financing and other concession data upon inquiry by other real estate professionals and to any authorized database, as applicable, to the extent necessary to establish accurate market value.

**19. SIGNS:** REALTOR® is authorized to place its sign(s) on the Real Estate and to promote its sale, except where prohibited by law or regulation. When sold, REALTOR® is authorized to place a "Sold" sign thereon. Seller acknowledges and agrees that no signs, advertising or other promotions containing the language "for sale by owner" will be used to advertise the Real Estate, pursuant to Ohio Revised Code 4735.16(B)(4).

**20. KEY/ACCESS AUTHORIZATION:** Seller authorizes REALTOR® to place a lockbox on the Real Estate to facilitate access to the Real Estate for marketing, showing, inspecting, appraising, etc. REALTOR® shall convey Seller's showing instructions to individuals authorized for such access to the Real Estate. Seller consents to access of the Real Estate as follows: **Initial below to acknowledge review of each item:**

_____ _____ Seller authorizes licensed brokers/agents to access the Real Estate to conduct showings, including open house showings and agent previews, to provide access for inspections or appraisals, or to provide access for other activities required to facilitate the marketing and sale of the Real Estate including, but not limited to, access via the lockbox.

_____ _____ Seller authorizes non-licensed assistants under the supervision of the listing REALTOR® to access the Real Estate to perform duties not requiring a license on behalf of the listing REALTOR®, without the presence of a licensed real estate agent/broker, including, but not limited to, access via the lockbox.

_____ _____ Seller authorizes other non-licensed individuals required to facilitate the marketing and sale of the Real Estate to access the Real Estate, without the presence of a licensed real estate agent/broker, including, but not limited to, access via the lockbox.

Seller's initials _____                            Date/Time: _____

162   \_\_\_\_ \_\_\_\_    Seller authorizes REALTOR® to allow inspectors, licensed appraisers and other parties as required by the purchase
163                  contract who **are** an electronic keybox system subscriber via the Multiple Listing Service of Greater Cincinnati
164                  System access to the Real Estate, without the presence of a licensed real estate agent/broker, including, but not
165                  limited to, access via the lockbox.
166   \_\_\_\_ \_\_\_\_    Seller authorizes REALTOR® to allow inspectors, licensed appraisers and other parties as required by the purchase
167                  contract who **are not** an electronic keybox system subscriber via the Multiple Listing Service of Greater Cincinnati
168                  System access to the Real Estate, without the presence of a licensed real estate agent/broker, including, but not
169                  limited to, access via the lockbox.
170   \_\_\_\_ \_\_\_\_    Seller authorizes a buyer under a contract to purchase the Real Estate to accompany buyer's inspector(s) without
171                  the presence of a licensed real estate agent/broker.

172 **Seller acknowledges that it has read and fully understands the authorizations provided above. In accordance with the**
173 **authorizations in Section 20, Seller will be notified in advance when such authorized individuals will be entering their**
174 **property. Seller agrees that the listing agent/brokerage, the buyer's agent and brokerage and any individuals authorized**
175 **under Section 20 will not be responsible for any damages, loss, theft or injury that occurs at the Real Estate, unless the**
176 **damages, loss, theft or injury is caused by the negligence or intentional act of such persons.**

177 **21. SELLER'S COOPERATION:** Seller agrees to cooperate with REALTOR® by making the Real Estate available for showing
178 to prospective buyers, inspectors, appraisers and other authorized parties as required by the purchase contract at reasonable hours.
179 Seller shall disclose to cooperating brokers the existence of this Contract upon their direct contact with Seller.

180 **22. EARNEST MONEY DEPOSIT:** REALTOR® is authorized to act as a trust agent to accept and deposit in a trust account upon
181 acceptance of said offers, earnest money deposits from prospective buyers making written offers to purchase the Real Estate.

182 **23. HOME WARRANTY:** Seller agrees to offer a limited home warranty, at a cost not to exceed $ _____,
183 to prospective buyers, in the marketing of the Real Estate ☐ yes ☑ no.

184 **24. OWNER'S TITLE INSURANCE:** In some cases, an Owner's Policy of Title Insurance may be transferrable to Buyer. Seller
185 currently ☐ does ☐ does not  hold a policy of Owner's Title Insurance on the Real Estate. Seller agrees to offer to purchase a
186 policy of Owner's Title Insurance to prospective buyers, in the marketing of the Real Estate ☐ yes ☑ no. *[Note: Buyer may*
187 *request Seller to purchase a policy of Owner's Title Insurance or to contribute to such purchase.]*

188 **25. AGENCY:** Seller acknowledges receipt of the *Consumer Guide to Agency Relationships* and understands the effect of each type of agency
189 relationship on the sale of Seller's Real Estate.  Seller agrees to execute an Agency Disclosure Statement as required by state law or regulation.

190 **26. DISCLOSED DUAL AGENCY:** In this type of relationship, one agent may represent both parties in a real estate transaction,
191 BUT ONLY IF BOTH PARTIES CONSENT.  Disclosed dual agency is most likely to occur when both Buyer and Seller are
192 represented by the same agent.  A dual agent may not disclose any confidential information that would place one party at an
193 advantage over the other party and may not disclose any of the following information without the informed consent of the party to
194 whom the information pertains:  1) that a buyer is willing to pay more than the price offered; 2) that a seller is willing to accept
195 less than the asking price; 3) motivating factors of either party for buying or selling; 4) that a party will agree to financing terms
196 other than those offered; 5) repairs or improvements Seller is willing to make as a condition of sale; and 6) or any concession
197 having an economic impact upon the transaction that either party is willing to make.

198 **27. INDEMNITY BY SELLER:** Seller recognizes that REALTOR® is relying on all information provided herein or supplied
199 by Seller in connection with the Real Estate, and agrees to indemnify and hold harmless REALTOR®, its employees, agents and
200 cooperating brokers from any claims, demands, damages, lawsuits, liabilities, costs and expenses (including reasonable attorney's
201 fees) arising out of any misrepresentation or concealment of facts made herein by Seller. Seller acknowledges and agrees that the
202 sale or lease of Real Estate encompasses many professional disciplines and, while REALTOR® possesses general knowledge,
203 REALTOR® is not expert in matters of law, tax, financing, surveying, property inspections, structural conditions, hazardous
204 materials, engineering, etc. Seller acknowledges that he and/or she has been advised by REALTOR® to seek professional expert
205 assistance and advice in these and other areas of professional expertise.  In the event that REALTOR® provides to Seller names
206 of companies or sources for such advice and assistance, Seller acknowledges and agrees that REALTOR® does not warrant,
207 guarantee or endorse the services and/or products of such companies or sources.

208 **28. DISCLOSURE:** Seller acknowledges and agrees that REALTOR® is authorized to disclose non-confidential information
209 pertaining to the Real Estate to all parties involved with its marketing and/or sale.  REALTOR® is subject to an ethical obligation to
210 disclose the existence of an accepted purchase contract pertaining to the Real Estate to all parties involved with its marketing and/or
211 sale. Upon authorization from the Seller, REALTOR® shall disclose the existence of multiple offers, as directed by the Seller.

212 **29. ADDITIONAL TERMS AND CONDITIONS(S):** _____
213 _____
214 _____
215 _____

Seller's initials _____       Date/Time: _____

216 **30. SEX OFFENDER REGISTRATION AND NOTIFICATION LAWS:** In Ohio, sex offenders are required to notify sheriff's
217 offices when they move into the area. Information regarding said notification may be obtained by contacting the local sheriff's
218 office applicable to the Real Estate.

219 **31. SOLE CONTRACT:** This Contract constitutes the entire agreement between the REALTOR® and Seller, and no oral or
220 implied agreement, representation, or understanding shall cancel or vary the terms of this Contract. Any amendments to this
221 Contract shall be made in writing, signed by both parties and copies shall be attached to all copies of this original Contract. Seller
222 acknowledges that Seller has read and received a completed copy of this Contract and the information contained herein is true and
223 accurate to the best of Seller's knowledge. Seller ✓ is ☐ is not prohibited from entering into an exclusive right to lease agreement
224 with any other broker during the pendency of this Contract. This Contract shall be binding upon the parties, their heirs,
225 administrators, executors, successors and assigns.

226 **32. ELECTRONIC SIGNATURES:** This Contract may be executed by manual or electronic signatures on contract documents,
227 transmitted in original, facsimile or electronic format and the same shall be valid for purposes of this Contract and any amendments,
228 addendums or notices to be delivered in connection with this Contract. This Contract may be executed in any number of
229 counterparts, each of which shall be deemed an original and constitute one and the same instrument, and the parties hereto may
230 execute this Contract by signing any such counterpart.

231 **33. SELLER'S ACKNOWLEDGMENT:** Seller acknowledges that any questions regarding legal liability with regard to any
232 provision in this Contract, accompanying disclosure forms and addendums or with regard to Seller's obligations as set forth in a
233 fully executed purchase contract for the Real Estate (in the event of a conflict between the terms of a subsequent purchase
234 agreement and this Contract, the terms of the purchase agreement shall control) must be directed to Seller's attorney. Seller
235 acknowledges that Seller has read this Contract and the information contained herein is true and accurate to the best of Seller's
236 knowledge and that Seller received a copy of this Contract in its completed form on   Jan 7th 2021
237     (date) at 12    (time ✓ am or ☐ pm).

238 **34. SELLER'S CERTIFICATION OF AUTHORITY:** Seller certifies that the Seller signatory(ies) below has/have full
239 authority to enter into this Contract, that all owners of the Real Estate authorize the marketing of the Real Estate as provided in
240 this Contract, and that no additional signatories, spouse or otherwise, are necessary in order to convey the Real Estate, other than
241 those disclosed in Section 11 of this Contract.

**35. SIGNATURES:**

Melisa Jenkins
Print Seller's Name

Seller's Signature / Date / Time   1/7/2021 4:30

(If an Entity, Print Name of Seller's Representative)

(If an Entity, Print Representative's Title)

5138082044
Seller's Phone      Seller's Phone      Seller's Other Contact Information

Melisa Jenkins
Print Seller's Name      Seller's Signature / Date / Time

5138082044
Seller's Phone      Seller's Phone      Seller's Other Contact Information

REALTOR® Firm: InternetAgents.US

Print Contact (Manager) Name

Print Contact (Listing Agent) Name Rajib Garu

Agent Contact 6128603484      rajib.garu@outlook.com
Office Phone      Other Phone      Other Contact Information

Agent Signature/ Date / Time   1/7/2021

NOTICE OF TERMINATION OF LISTING CONTRACT

This is a termination notice for any Listing contract that may exist between Fortune Vine Realty and
Melisa Jenkins for the property located at: **4457 Mellwood Ave Cincinnati OH 45232**

_____

**(Rajib Garu)**

**Broker**

**Date:** 05 / 13 / 2021

Idealogiz Group LLC
PO Box 36576
Cincinnati, Ohio 45232

May 27, 2021

Ms. Melisa Jenkins
4457 Mellwood Ave
Cincinnati, Ohio 45232

NOTICE OF DEFAULT

Ms. Jenkins:

Be advised that the January 7, 2021 Secured Promissory Note that you executed in favor of Idealogiz Group, LLC, as amended February 5, 2021, in consideration of the principal amount of $90,000.00, matured on May 7, 2021, on which date the entire unpaid principal balance and accrued interest was due and payable.

Pursuant to Article 8(C) of the January 7, 2021 Secured Promissory Note, Idealogiz Group, LLC, Holder of the Note, does hereby provide written Notice of Default of the obligation.

On or before June 30, 2021, the principal sum of $94,500, plus accrued interest as provided in the promissory note at $50.00 per day, totaling $750.00, plus $500.00, all as of May 26, 2021, is now due and payable to Idealogiz Group, LLC. If the default is not cured by that date, legal proceedings may be initiated to recover the balance due on the obligation, plus interest until paid, and may include demand for judicial sale of the real property 4457 Mellwood Avenue.

Proceed accordingly.

Respectfully,

/s/    Rajib Garu , Member
Idealogiz Group, LLC

## NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

1. The amount of the debt is $95,750, as of May 26, 2021, as stated in in the attached Notice.

2. IDEALOGIZ, LLC as named in the Notice, is the creditor to whom the debt is owed.

3. The debt described will be assumed to be valid by NIEBERDING & NIEBERDING CO., L.P.A., unless, within thirty (30) days after the receipt of this notice, you dispute, in writing, the validity of the debt or some portion thereof.

4. If you notify NIEBERDING & NIEBERDING CO., L.P.A. in writing within thirty (30) of the receipt of this notice that the debt or any portion thereof is disputed, NIEBERDING & NIEBERDING CO., L.P.A. will obtain a verification of the debt and a copy of the verification will be mailed to you by NIEBERDING & NIEBERDING CO., L.P.A.

5. If the creditor named herein is not the original creditor, and if you made a written request to NIEBERDING & NIEBERDING CO., L.P.A. within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to you by NIEBERDING & NIEBERDING CO., L.P.A.

6. Written requests should be addressed to:

   NIEBERDING & NIEBERDING CO., L.P.A.
   1117 Broadway Street, 2d fl
   Cincinnati, Ohio 45202.

Also Brian can provide the title details.

RAJIB GARU [RJ] (Realtor)
Cincy Cash Flow
InternetAgents.us
rajib.garu@outlook.com
(Lic #: 2017003120)



4457_Mellwood_Av...

---

**Brian Bauer BB**                                                                                  Mon, Sep 21, 2020 1:45 PM

Please send me a fully executed contract once you have it and I will get title ordered Thanks Visit our website at www.theperformancetitle.com Download our mob

---

**Rajib Garu** <rajib.garu@outlook.com>                                          Sun, Sep 27, 2020 10:25 AM
to mtm.cincilaw@gmail.com, Brian, Sustenancedesigncincy@gmail.com

Hello Michael ,

Please use this version of the offer when need be , this one has the disclosure that i am a realtor , rest all remains the same.

Thanks,

Rajib

---

**From:** Rajib Garu
**Sent:** Monday, September 21, 2020 2:42 PM
**To:** mtm.cincilaw@gmail.com <mtm.cincilaw@gmail.com>; Brian Bauer BB <bbauer@theperformancetitle.com>; Sustenancedesigncincy@gmail.com <Sustenancedesigncincy@gmail.com>
**Subject:** 4457 Mellwood Ave - Offer for 175K

Please use this version of the offer when need be , this one has the disclosure that i am a realtor , rest all remains the same.

Thanks,

Rajib

---

**From:** Rajib Garu

**Sent:** Monday, September 21, 2020 2:42 PM

**To:** mtm.cincilaw@gmail.com <mtm.cincilaw@gmail.com>; **Brian Bauer BB** <bbauer@theperformancetitle.com>; Sustenancedesigncincy@gmail.com <Sustenancedesigncincy@gmail.com>

**Subject:** 4457 Mellwood Ave - Offer for 175K

...





📄 Offer_for_4457_Me...

---

**Michael Mann**                                                                                    Sep 27, 2020, 4:18 PM  ☆

Got it - thanks  Michael T  MannMann & Mann  LLC  michael@mannandmannlaw com  www  mannandmannlaw com  30 Garfield Pl   Suite 920 Cincinnati  OH 45202 P  (513)621-2

---

**Michael Mann**                                                                                    Sep 27, 2020, 4:22 PM  ☆

Can you revise a couple of things - the expiration date of the offer is 9/25  but the offer is dated 9/27  The closing date also says 9/25  Offer_for_4457_Mell

---

**Rajib Garu** <rajib.garu@outlook.com>                                                           Sep 27, 2020, 8:41 PM  ☆  ↩  ⋮
to Michael, Brian, Sustenancedesigncincy@gmail.com  ▾

Revised the dates

---

**From:** Michael Mann <mtm.cincilaw@gmail.com>

**Sent:** Sunday, September 27, 2020 4:22 PM

**To:** Rajib Garu <rajib.garu@outlook.com>

**Cc:** Brian Bauer BB <bbauer@theperformancetitle.com>; Sustenancedesigncincy@gmail.com <Sustenancedesigncincy@gmail.com>

**Subject:** Re: 4457 Mellwood Ave - Offer for 175K

...



Sent: Sunday, September 27, 2020 2:12 AM

To: Rajib Garu <rajib.garu@outlook.com>

Cc: Brian Bauer BB <bbauer@theperformancetitle.com>; Sustenancedesigncincy@gmail.com <Sustenancedesigncincy@gmail.com>

Subject: Re: 4457 Mellwood Ave - Offer for 175K

...



 

 Offer_for_4457_Me...

---

**Brian Bauer BB**

Thanks I will get title ordered ASAP

Sep 28, 2020, 8:37 AM ☆

---

7

---

**Michael Mann**

I've advised Laura Parker's attorney that settlement is agreed, contingent on the closing taking place. Rajib and Brian - please go ahead and run title and let

Oct 9, 2020, 2:39 PM ☆

---

**Rajib Garu** - rajib.garu@outlook.com
to Michael, me, Brian ▾

Oct 11, 2020, 10:16 PM ☆ ↰ ⋮

Please proceed with the executed offer attached here, closing is scheduled for **10/21/2020**, please make sure the settlement is signed on or @ the closing and a copy is shared with me.

From: Michael Mann <mtm.cincilaw@gmail.com>

Sent: Friday, October 9, 2020 2:39 PM

To: Melisa Jenkins <sustenancedesigncincy@gmail.com>

Cc: Rajib Garu <rajib.garu@outlook.com>; Brian Bauer BB <bbauer@theperformancetitle.com>

Subject: Re: 4457 Mellwood Ave - Offer for 175K

...

 



📁 Offer_for_Mellwoo...

**Michael Mann**  Oct 12, 2020, 8:46 AM ☆
Sounds good. <Offer_for_Mellwood-m jenkins1105_gmail com pdf>

**Michael Mann**  Oct 19, 2020, 12:03 PM ☆
Brian: Are we still looking at October 21 for the closing? If so, Laura Parker's attorney (Simon Groner) is not available in the morning so afternoon would be b

**Brian Bauer BB**  Oct 19, 2020, 1:33 PM ☆
I do not think title is back yet I will reach out as soon as it is. Please forward any info you feel I am going to need From: Michael Mann [mailto:mtm cincilaw@g

**Rajib Garu**  Oct 22, 2020, 10:25 AM ☆
Here is the extension From: Brian Bauer BB <bbauer@theperformancetitle.com> Sent: Monday, October 19, 2020 1:33 PM To: Michael Mann <mtm cincilaw@gmail.com> S

**Michael Mann**  Oct 22, 2020, 10:28 AM ☆
Great - thanks. <image001.jpg> <image002.png> <image003.png> <image004.png> <Extension_Mellwood-m jenkins1105_gmail com pdf>

**Brian Bauer BB**  Oct 26, 2020, 10:40 AM ☆
Good Morning Title is back There are a couple things I need I need Melissa s marital status I also need the marital Status of Laura Parker in 2017 and now. The

**Melisa Jenkins**  Oct 26, 2020, 2:54 PM ☆
Melisa is unmarried On Oct 26, 2020 at 10:40 AM Brian Bauer BB <bbauer@theperformancetitle.com> wrote

**Brian Bauer BB**  Oct 26, 2020, 2:57 PM ☆
OK thanks I Need your souses name and they will have to be at closing

**Melisa Jenkins**  Oct 26, 2020, 3:46 PM ☆
That should have said Melisa is UNmarried On Oct 26, 2020 at 2:57 PM Brian Bauer BB <bbauer@theperformancetitle.com> wrote

**Melisa Jenkins**  Oct 26, 2020, 3:46 PM ☆

14419    03087

Scott Crowley
Hamilton County Recorder's Office
Doc #: 2021-0061198  Type: ML
Filed: 05/17/21 02:31:30 PM  $42.00
Off.Rec.: 14419 03087 F    3    643





#### Affidavit for Mechanic's Lien
#### (O.R.C.1311.06)

State of Ohio           )
                        )    SS:
County of Butler        )

I, **Melisa Jenkins**, being first duly sworn and having personal knowledge, state and affirm as follows:

1.     I am the owner and duly authorized representative and agent **Sustenance Design Cincy, LLC ("SDC")**, whose address is **4457 Mellwood Avenue, Cincinnati, Ohio 45232**.

2.     Pursuant to a contract with **Idealogiz Group, LLC**, whose address is 4140 Home Street, Cincinnati, Ohio 45236, SDC furnished certain material of performed certain labor or work in the furtherance of improvement located on or removed to the land commonly described as 3464 Cheviot Avenue, Cincinnati, Ohio 45211, hereinafter described in greater detail in the attached **Exhibit A (the "Premises")**. This Affidavit, as well as a copy of the official lien, will be sent to Idealogiz Group, LLC by both certified mail and ordinary mail.

3.     The first of the labor or work was performed or material was furnished on **February 1, 2021**. The last of the labor or work was performed or material was furnished on the **May 14, 2021**.

4.     There is justly and truly due the lien claimant, therefore from the owner, part-owner, lessee, original contractor, subcontractor, or other person, whose name is Idealogiz Group, LLC, as the case may be, over and above all legal setoffs, **the sum of $75,000.00**, for which amount, the lien claimant, claims a lien on the land, building or

14419    03088

leasehold, of which Idealogiz Group, LLC is or was the owner, part-owner, or lessee, as the case may be, which premises is described above and in the attached Exhibit A.

**FURTHER AFFIANT SAYETH NAUGHT.**

Melisa Jenkins, A Duly Authorized Agent and Representative of Sustenance Design Cincy, LLC

Sworn to before me and subscribed in my presence this ___17th___ day of May, 2021.

Notary Public

My commission expires: __6/14/2023__

This instrument was prepared by:
Andrew L. Smith, Esq.
ROLFES HENRY CO., LPA
600 Vine Street, Suite 2600
Cincinnati, Ohio 45202

R.C. 1311.07 provides:

*"Any person filing an affidavit pursuant to section 1311.06 of the Revised Code [Affidavit of Mechanic's Lien] shall serve a copy of the affidavit on the owner, part owner, or lessee of the improved property or his designee, within thirty days after filing the affidavit. If the affidavit cannot be served in accordance with section 1311.19 of the Revised Code, then the person shall serve the copy by posting it in some conspicuous place on the premises of the improved property within ten days after the expiration of the thirty days."*

2

14419    03089

## EXHIBIT A

### LEGAL DESCRIPTION

Situated in the City of Cincinnati, Green Township, Hamilton County, Ohio and being Lot Nine (9) as shown on Edmund Craig's Subdivision in Section 9, Township, County, and State aforesaid, recorded in Plat Book 5, Page 193, in the Recorder's Office of Hamilton County, Ohio.

Prior Owner:                    Vincent Joseph Willman, Jr. and Shelby J. Willman

Parcel No.:                     211-0071-0050-00

Prior Instrument Reference:     Deed dated January 22, 2015, filed February 3, 2015, recorded as Official Records Volume 12812, Page 1802, Hamilton County, Ohio records

3

**14449    03567**

Scott Crowley
Hamilton County Recorder's Office
Doc #: 2021-0079839  Type: REL
Filed: 06/30/21 01:59:30 PM  $54.00
Off.Rec.: 14449 03567 F      2    651



**RELEASE OF LIEN**

KY

State of ~~Ohio~~                    )

                                     )        SS:

County of Campbell                   )

On the 17ᵗʰ day of May. 2021 I, Melisa Jenkins filed an Affidavit for Mechanic's Lien in the Recorder's Office of Hamilton County, Ohio. The lien has the following reference or document number 14419 63087. The lien claimed the sum of $.5,000 against the real property located at the following address 3404 Cheviot Ave Cincinnati OH 45211 . in Hamilton County, Ohio, as more completely described in Exhibit A attached hereto and incorporated herein. For good and valuable consideration, the undersigned releases and discharges the lien and any right, interest, and claim I may have acquired in the property by reason of filing the Affidavit of Lien.

Melisa Jenkins

Sworn to before me and subscribed in my presence this 30 day of June , 2021.

Notary Public

JOELSEPH DEAN FITCH
Notary Public
Kentucky - State at Large
My Commission Expires Aug 6, 2023

**14449    03568**

## EXHIBIT A

### LEGAL DESCRIPTION

Situated in the City of Cincinnati, Green Township, Hamilton County, Ohio and being Lot Nine (9) as shown on Edmund Craig's Subdivision in Section 9, Township, County, and State aforesaid, recorded in Plat Book 5, Page 193, in the Recorder's Office of Hamilton County, Ohio.

Prior Owner:       Vincent Joseph Willman, Jr. and Shelby J. Willman

Parcel No.:       211-0071-0050-00

Prior Instrument Reference:   Deed dated January 22, 2015, filed February 3, 2015, recorded as Official Records Volume 12812, Page 1802, Hamilton County, Ohio records

3

21-23386
Sustenance Design Cincy, LLC Business Matters

## FULL AND FINAL RELEASE OF CLAIMS

**KNOW ALL PERSONS BY THESE PRESENTS**, that the undersigned, **Rajib Garu** and **Melisa Jenkins**, on behalf of themselves, and their agents, servants, successors, heirs, executors, administrators, employees and attorneys, and any and all other persons, firms, corporations, limited liability companies, associations, or partnerships employed by or associated therewith, do hereby enter into this Full and Final Release of Claims **("Release")** and do hereby agree to the following terms and conditions:

- Ms. Jenkins agrees to release the mechanic's lien (Doc. No. 2021-0061198) associated with Mr. Garu's property located at 3634 Cheviot Avenue, Cincinnati, Ohio.

- Mr. Garu agrees not to file any form of foreclosure lawsuit and agrees to cancel and void the $90,000 mortgage on the property located at 4457 Mellwood Avenue, Cincinnati, Ohio (Doc. No. 2021-0019334).

The undersigned attest and affirm the undersigned relied wholly upon the undersigned's own judgment, belief and knowledge regarding the nature, extent, effect and duration of any damages or losses of any type or nature, whether to real or personal property, and any liability therefore, and this Release is being entered into without any reliance upon any statement or representation of any party, or parties, being released hereby, their representatives, or by any person employed by the undersigned.

The undersigned declare and represent no promise, inducement or agreement not herein expressly set forth has been made to the undersigned in any regard, and this Release contains the entirety of the agreement by and between the parties hereto and the terms of this Release are contractual and not a mere recital.

The undersigned attest the undersigned have been provided the opportunity to read the foregoing Release, to secure all appropriate legal advice and counsel related thereto, and fully understand all terms and conditions set forth herein and that the undersigned have no right to make any additional claim, of any type or nature, or in any way related to or as a result of the claim previously referenced herein.

This Release is hereby entered into this ____ day of _____, 2021.

_____

Rajib Garu

STATE OF OHIO    )
          ) SS:
COUNTY OF HAMILTON )

   Sworn to and subscribed to before me, a Notary Public in and for the State of Ohio, personally came the aforementioned Rajib Garu, who acknowledges he has read the foregoing Full and Final Release of Claims and signed the same this _____ day of _____, 2021, of his own free will and deed.

_____

Notary Public

_____

Melisa Jenkins

STATE OF OHIO            )
                         ) SS:
COUNTY OF HAMILTON       )

     Sworn to and subscribed to before me, a Notary Public in and for the State of Ohio, personally came the aforementioned Melisa Jenkins who acknowledges she has read the foregoing Full and Final Release of Claims and signed the same this _____ day of _____, 2021, of her own free will and deed.

_____

Notary Public

**PROMISSORY NOTE**

$120,000.00

_____, 2023

Cincinnati, Ohio

1.    Promise to Pay

FOR VALUE RECEIVED, the undersigned, **MELISA JENKINS** whose address is 4457 Mellwood Avenue, Cincinnati, Ohio 45232 ("Borrower"), promises to pay in lawful money of the United States of America to the order of **LAURA PARKER** her heirs and assigns forever ("Lender"), by direct deposit at Lender's Capital One Checking Account #179690697, Routing #031176110, or such other place either within or without the State of Ohio as Lender may designate in writing from time to time, the principal sum of One Hundred Twenty Thousand Dollars ($120,000.00) at no interest minus the amount received by Lender through the United States Bankruptcy Court for the Southern District of Ohio, Western Division, *In Re: Melisa Jenkins*, Case No. 1:22-10063 ("Chapter 13 Bankruptcy Case").

*5 yrs bankruptcy*

2.    Effective Date    *+ 24 months of additional payments before*
*balloon leaving 9H 76,800 as left balance*

The effective Date of this Note is the earlier of:

   a.    The 15th day of the month following the month on which the Chapter 13 Certificate of Final Paymnet is filed in the United States Bankruptcy Court for the Southern District of Ohio, Western Division, *In Re: Melisa Jenkins*, Case No. 1:22-10063 ("Chapter 13 Bankruptcy Case"); or

   b.    The 15th day of the month following the month in which the Chapter 13 Bankruptcy Case is dismissed or is converted to a Chapter 7 case.

3.    Term and Payments.

   a.    The term of this Promissory Note shall be twenty-four (24) months, following the effective date of this note.

   b.    Borrower shall make twenty-four (24) equal and consecutive monthly payments of principal, each in the sum of Eight Hundred Dollars ($800.00), which shall be due and payable on the fifteenth (15th) day of every calendar month, commencing on the Effective Date and continuing on the fifteenth (15th) day of every calendar month thereafter.  The entire indebtedness evidenced by this Note, if not sooner paid, shall be due and payable on the 28th day of the twenty-fifth (25th) month following the Effective Date.

4.     No Prepayment Penalty

        Borrower may prepay this Note in whole or in part at any time or from time to time without penalty or additional interest.

5.     Security for Note

        This Note is secured by a Mortgage dated _____, 2023, given by Borrower to Lender upon certain property located at 4457 Mellwood Avenue, Hamilton County, Ohio 45232.

6.     Default

        a.     The occurrence of any one or more of the following shall constitute an event of default under this Note:

                        i.      Failure to make any payment of principal or interest within five (5) days of when due hereunder.

                        ii.     The occurrence of any other event of default under the Mortgage.

        b.     **Time is of the essence**. In the event of default under this Note, (i) the entire principal balance hereof and all accrued interest shall, at the option of Lender, without notice, bear interest at a rate from time to time equal to 15% per annum (or the maximum rate permitted by applicable law if that is less) from the date of default until the default is cured and (ii) the entire principal balance hereof and all accrued interest shall immediately become due and payable at the option of Lender, without notice. Lender's failure to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

7.     Loan Charges

        Interest, fees and charges collected or to be collected in connection with the indebtedness evidenced hereby shall not exceed the maximum, if any, permitted by an applicable law. If any such law is interpreted so that said interest, fees and/or charges would exceed any such maximum and Borrower is entitled to the benefit of such law, then: (A) such interest, fees and/or charges shall be reduced by the amount necessary to reduce the same to the permitted maximum;

and (B) any sums already collected from Borrower which exceeded the permitted maximum will be treated as prepayments of principal.

8.    Governing Law.

This Note shall be construed, enforced and otherwise governed by the laws of the State of Ohio.

9.    Lender.

As used herein, the term "Lender" shall mean holder and owner of this Note.

10.    Entire Agreement.

This document represents the entire agreement between the parties, and there are no agreements or representations which are not stated herein. This agreement may not be modified unless it is in writing and signed by both parties.

This Note was executed in Cincinnati, Hamilton County, Ohio.

                                        **BORROWER:**

                                        _____

                                        Melisa Jenkins
















**Transaction History**

Customer: SUSTENANCE DESIGN CINCY, LLC                    Return to Customer Summary
Account:  OH/WV/DC/MD/VA Checking #XXXXX1507

*required field

| Current Balance | Present Balance | Available Less Overdraft | Available Balance | Calendar |
|---|---|---|---|---|
| $1,958.37 | $1,920.36 | $1,920.36 | $1,920.36 | |

Search By
Amount                    Hold History     Account Protection Info        ATM/Debit Card Declines     Print

                                           Monthly Service Fee History

┌─ Show Transactions by Amount ─────────────────────────────────────────────┐
│  Options*                                                                   │
│   ● Exact Amount                                                            │
│   ○ Range of Amounts                                                        │
│  Amount of Transaction*                                                     │
│  $ 18000.00                                                                 │
│                                                                             │
│   Show Matching Transactions      Cancel                                    │
└─────────────────────────────────────────────────────────────────────────────┘

**Showing $18000.00 Transactions**

* denotes end of day balance

| Date Posted | Tran Type | Description | $ | Debits(-) | $ | Credits(+) | $ | Balance |
|---|---|---|---|---|---|---|---|---|
| 10/28/2020 | Deposit | DEPOSIT ID NUMBER 705987 # 19 | | | | 18,000.00 | | |
| 10/28/2020 | Withdrawal | WITHDRAWAL # 698131126 | | -18,000.00 | | | | |

Return to Customer Summary

**CHASE** ⬡

**DEPOSIT/DEPÓSITO**

CHECKING/CHEQUES ☐
SAVINGS/AHORROS ☐
CHASE LIQUID ☐

R/T 500001020

DEPOSIT/DEPÓSITO

Today's Date/Fecha
1/20/2020

Customer Name (Please Print)/Nombre del cliente (en letra de molde)
Sustenance Design Melisa Jenkins

CASH/
EFECTIVO ▶ 9000.00

CHECK/
CHEQUE ▶

**Sign Here** (If cash is received from this deposit)/
**Firme aquí** (si recibe efectivo de este depósito) - - - - - -
X

TOTAL FROM
OTHER SIDE/
TOTAL DEL REVERSO ▶

N13052-CH (Rev 07/12)  90364756  12/19

SUBTOTAL ▶

Start your account number here/
▼ Empiece su número de cuenta aquí

LESS CASH/
MENOS EFECTIVO
RECIBIDO ▶

2057115D7

TOTAL **$** 9000.00

⑈ 10900 7673 5⑈  ⑈ 50000 10 20⑈

JPMorganChaseBank  072000  260133  9005700052300

**CHASE** ⬤

**DEPOSIT**

CHECKING ☐
SAVINGS ☐
CHASE LIQUID ☐

R/T 500001020

Today's Date

Customer Name *(Please Print)*,

Melisa Jenkins
Sustenance Design Cincu

Sign Here *(if cash is received from this deposit)*
X

N13050-CH (Rev 07/12)   00112658   03/20

▼ Start your account number here

205711507

| | |
|---|---|
| CASH | ▶ |
| CHECK | ▶ |
| TOTAL FROM OTHER SIDE | ▶ |
| SUBTOTAL | ▶ |
| CASH BACK | ▶ |

TOTAL **$**    18000.

⑆193670598⑈ ⑇500001020⑈

JPMorganChaseBank 102808 280133 900570045076



WITHDRAWAL

**WITHDRAWAL**

CHECKING ☑
SAVINGS ☐
CHASE LIQUID ☐

Today's Date          Customer Name *(Please Print)*          Melisa Junkins          R/T 500001017

If Purchasing a Cashier's Check Provide Payee Name

N13061-CH (Rev 10/15)    70174761   05/17

Customer Signature
X

▼ Start your account number here          AMOUNT

205711707          TOTAL $          18000.00

⑈0698131126⑈ ⑆5000010171⑆

JPMorganChaseBank 102808 280133 900570045178







ELECTRIC
3RD FL



FRONT

BACK



Sketch by Apex Sketch



Sketch by Apex Sketch



OUTDOOR SHOWER
DRAIN
GRAY WATER
DRAIN TO YARD

113









HOUSE PLAN
3RD FL







House
plan 1st floor

General House Plan







| | | | |
|---|---|---|---|
| 119 | other contractror quote | | |
| 120 | other contractror quote photos | | |
| | flash drive | video of harassment | 3/2/2021 |
| | flash drive | video of cabinet opening | 4/9/2021 |
| | flash drive | video of painting | 4/18/2021 |
| | flash drive | video of painting | 4/27/2021 |
| | | video of harassment condo parking lot | 5/13/2021 |
| | flash drive | at beginning of video and minute number 3;07 he says im maintenance worker | 5/14/2021 |
| | flash drive | google drive documents of wotk on other properties as indicated in notebooks below, digital time stamp of file created available in google drive | |
| | hard drive | youtube channel Culture Shock Videos | |
| | white binder of Laura Parker case | | |

| 102.A | Lowes | $308 | 6/1/2021 | tool replacement |
| 102.B | Home Depot | $169.38 | 5/31/2021 | tool replacement |
| 103 | check # 354 Rolfes & Henry | $2,500 | 6/8/2021 | retainer |
| 104 | check # 353 | $256.56 | 6/14/2021 | invoice for cheviot delivery of sand |
| 105 | rajib Grocery receipts | | 7/2021 | |
| 106 | other dating expense receipts | | 7/2021 | |
| 107 | rajib grocery receipts | | 7/2021 | |
| 108 | more money spent on Rajib | | 7/2021 | |
| 110 | furniture design plans | | | |
| 111 | general house plan | | | |
| 112 | plumbing design plan | | | |
| 113 | electric design plan | | | |
| 114 | outdoor design plan | | | |
| 115 | evidence of city orders | | | |
| 116 | general cheviot work notes | | | |
| 117 | general cheviot work notes | | | |
| 118 | general cheviot work notes | | | |

| 95 | termination of listing contract | | | 5/13/2021 | note: Listing contract was not with fortune vine, it was through previous briker internet agents |
|---|---|---|---|---|---|
| 95.A | check # 215 Hamilton County Recorder | $43 | cheviot lein | 5/17/2021 | |
| 95.B | check # 217 Dave Donnett | $750 | retainer | | |
| 96.A | Menards | $144 | cheviot supplies | 5/16/2021 | |
| 96.B | Lowes | $42.67 | replacement | 5/25/2021 | |
| 97 | GCWW | $54.54 | cheviot water | 5/28/2021 | |
| 98 | Menards | $3,832.28 | cheviot cabinet order | 5/7/2021 | design time |
| 99.A | H&R Candy | $80 | filing cabinets | 5/2021 | |
| 99.B | Warren County Auditor | $99 | Baywatch lein | 5/18/2021 | |
| 99.C | folder of documents regarding lein against property for unpaid work performed Warren County | | | | |
| 99.D | Hamilton County documents on cheviot lein | | | | |
| 99.E | Performance Title documents with mortgage and promisorry note | | | 5/17/2021 | |
| 101 | release of lien | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 82 | cheviot photo collage time and place stamped | | | 4/29/2021 | |
| 83 | cheviot photo collage time and place stamped | | | 5/11/2021 | |
| 84 | cheviot photo collage time and place stamped | | | 5/12/2021 | |
| 85.A | Lowes | $259.67 | cheviot paint | 4/6/2021 | |
| 85.B | Lowes | $175 | cheviot paint | 4/8/2021 | |
| 86.A | Lowes | $7.52 | cheviot tools | 4/10/2021 | |
| 86.B | Menards | $868.78 | cheviot lighting | 4/29/2021 | |
| 87.A | Lowes | $67.25 | cheviot paint supplies | 4/12/2021 | |
| 87.B | Lowes | $152.31 | cheviot supplies | 4/10/2021 | |
| 88.A | Menards | $258.22 | illegible | | |
| 88.B | TJ maxx | $17 | rajib clothes | void this was a return | |
| 89.A | Lowes | $61.72 | cheviot supplies | 4/20/2021 | |
| 89.B | TJ maxx | $50 | rajib clothes | 4/11/2021 | — find payment |
| 90 | GCWW | $96.26 | | 4/30/2022 | |
| 91.A | Menards | $109.94 | cheviot paint | | |
| 91.B | Lowes | $154.90 | cheviot paint | | |
| 92.A | Lowes | $89.99 | cheviot supplies | 05/03/2021 | |
| 92.B | Lowes | $741.76 | cheviot plants | 5/5/2021 | |
| 93.A | Lowes | $101.76 | cheviot paint | 5/13/2021 | |
| 93.B | Lowes | $211.01 | cheviot paint | 5/2/2021 | |
| 94.A | Lowes | $199.99 | cheviot paint | 5/3/2021 | |
| 94.B | Menards | $222.01 | cheviot paint | 5/2021 | |

| 72.B | Contracotr mtng for stained glass window on 3rd floor cheviot | 4/1/2022 |
| 73 | cheviot photo collage time and place stamped | 4/16/2021 |
| 74 | cheviot photo collage time and place stamped | 4/17/2021 |
| 75 | cheviot photo collage time and place stamped | 4/17/2021 |
| 76 | cheviot photo collage time and place stamped | 4/17-4/18/2021 |
| 77 | cheviot photo collage time and place stamped | 4/19/2021 |
| 78 | cheviot photo collage time and place stamped | 4/18-4/19/2021 |
| 79 | cheviot photo collage time and place stamped | 4/21/2021 |
| 80 | cheviot photo collage time and place stamped | 4/24/2021 |
| 81 | cheviot photo collage time and place stamped | 4/26/2021 |

| 59 | Ace | $32.38 | cheviot lock | 3/3/2021 |
| 60.A | check # 336 Oscar | $2,100 | cheviot roof | 34/2021 |
| 60.B | check # 339 James Alan Sauer | $350 | cheviot lead abatement | 3/10/2021 |
| 61.A | Homegoods | $119.98 | cheviot lamps | 3/8/2021 |
| 61.B | Homegoods | $39.98 | cheviot rugs | 3/14/2021 |
| 62.A | Menards | $521.32 | cheviot bathroom | 3/13/2021 |
| 62.B | Menards | $233.90 | cheviot paint | 3/15/2021 |
| 63.A | Menards | $139.97 | cheviot lighting | 3/19/2021 |
| 63.B | Menards | $567.93 | cheviot lighting | 3/14/2021 |
| 64.A | Menards | $20.42 | Rajibs project ridgeway | 3/17/2021 |
| 64.B | Lowes | $13.42 | cheviot supplies | 3/5/2021 |
| 65 | Building Value | $269.50 | cheviot clawfoot tub | 3/17/2021 |
| 66 | ABC Supply | $29.87 | cheviot roof | 3/16/2021 |
| 67 | ABC Supply | $43.06 | cheviot roof | 3/16/2021 |
| 68 | Duke Energy | $41.72 | cheviot util | 3/15/2021 |
| 69.A | Cincinnati Color | $89.70 | cheviot lead paint seal | 3/6/2021 |
| 69.B | Lowes | illegible | cheviot paint | 3/21/2021 |
| 70.A | TJ maxx | $110 | Rajib clothing | 3/31/2021 |
| 70.B | Lowes | $81.48 | cheviot supplies | 3/21/2021 |
| 71.A | Homegoods | $318.92 | cheviot storage and decor | |
| 71.B | Lowes | $10.78 | cheviot supplies | 3/22/2022 |
| 72.A | photo Christina Burton and I at KW mtng | | | 4/1/2022 |

| | | | | |
|---|---|---|---|---|
| 46 | cheviot photo collage | | | 3/11/2021 |
| 47 | cheviot photo collage | | | 3/12/2021 |
| 48 | cheviot photo collage | | | 3/18/2021 |
| 49 | cheviot photo collage, incuding photo of Rajib hand holding his new bizz cards | | | 3/26/2021 |
| 50 | cheviot photo collage | | | 3/25/2021 |
| 51.A | TJ maxx | $24 | clothes for Rajib | |
| 51.B | Lowes | $119.17 | Cheviot supplies | 3/1/2021 |
| 52.A | Lowes | | | |
| 52.B | Lowes cont. | $1,173.21 | Cheviot cabinets | 3/2/2021 |
| 53.A | check #335 to Rajib | $2,037 | illegible | 3/2/2021 |
| 53.B | check # 338 Oran | $3,000 | Cheviot electric | 3/5/2021 |
| 54.A | Lowes | $56.98 | cheviot supplies | 3/8/2021 |
| 54.B | Lowes | $762.20 | cheviot electric | 3/4/2021 |
| 55.A | Lowes | $315.67 | cheviot paint | 3/8/2021 |
| 55.B | Lowes | $illegible | cheviot paint | 3/5/2021 |
| 56.A | Lowes | $170.87 | cheviot supplies | 3/19/2021 |
| 56.B | Lowes | $329.78 | cheviot supplies | 03/08/2021 |
| 57.A | Lowes | $307.96 | cheviot supplies | 3/9/2021 |
| 57.B | Lowes | $444.89 | cheviot supplies | 3/10/2021 |
| 58.A | check # 340 Oscar Childs | $500 | cheviot roof | 3/12/2021 |
| 58.B | check # 214 James Alan Sauer | $250 | cheviot wall repair | 4/8/2021 |

| 33.B | check # 211 Oscar Childs | $2,000 | Cheviot roof | 2/21/2021 | |
|------|------|------|------|------|------|
| 34 | Menards special order | $379.99 | cheviot lighting | 2/7/2021 | |
| 35.A | Lowes | $66.14 | cheviot electric | 2/10/2021 | |
| 35.B | Menards | illegible | cheviot bathroom | 2/8/2021 | |
| 36.A | check # 334 Oran | $228.07 | cheviot electric | 2/28/2021 | |
| 36.B | check # 332 | $600 | cheviot roof | 2/27/2021 | |
| 37 | Watsons order | | | 2/8/202`1 | * |
| 38 | Watsons order | | | | |
| 39 | Watsons order | | | | |
| 40 | Watsons order | | | | |
| 41 | Morris Furniture | $8,269.95 | cheviot living room furnitre | 2/13/2021 | * |
| 42.A | Home Depot | $119.71 | cheviot supplies | 2/7/2021 | |
| 42.B | Lowes | $3,299 | cheviot appliances | 2/10/2021 | |
| 43.A | payment to Christina Burton | $100 | Cheviot paint | 4/10/2021 | |
| 43.B | payment to Casie Jenkins | $240 | cheviot paint | 4/11/2021 | |
| 43.C | payment from Fortune Vine | $1,000 | labor | 3/21/2021 | |
| 43.D | payment to Frotune Vine | $146.64 | cheviot permit | 3/18/2021 | |
| 43.E | payment to Fortune Vine | $348 | Cheviot Home Depot run | 3/13/2021 | |
| 43.F | payment to Fortune Vine | $15 | cheviot | 3/9/2021 | |
| 44 | cheviot photo collage | | | 3/6/2021 | |
| 45 | cheviot photo collage | | | 3/11/2021 | |

| | | | | |
|---|---|---|---|---|
| 19.E | payment to Winter Hopper/Luke Hundley | $120 | Cheviot cleanout and mulching | 1/17/2021 |
| 19.F | payment to Fortune Vine | $550 | receipts | 12/16/2020 |
| 20.A | payment to Casie Jenkins work on Lehman | $200 | work on Lehman | 10/28/2020 |
| 20.B | payment to Christina Burton | $90 | cheviot paint | 4/25/2021 |
| 21 | payment to Evans landscaping | $556.97 | cheviot gravel | 2/1/2021 |
| 22 | Menards | $1,510 | Cheviot bathroom | 2/7/2021 |
| 23 | Lowes quote | | | 2/2021 |
| 24 | Menards custom llighting | $159.94 | cheviot electric | 2/7/2021 |
| 25.A | Lowes | $14.75 | cheviot supplies | 2/16/2021 |
| 25.B | Lowes | $49 | cheviot supplies | 2/6/2021 |
| 26.A | Home Depot | $147.18 | cheviot supplies | 2/7/2021 |
| 26.B | Patel | $57.88 | Rajib groceries | 11/29/2020 |
| 27 | Lowes Kitchen Plans | | | 2/6/2021 |
| 28 | Lowes Kitchen Plans | | | |
| 29 | Lowes Kitchen Plans | | | |
| 30 | Lowes Kitchen Plans | | | |
| 31 | Lowes Kitchen Plans | | | |
| 32 | Lowes Kitchen Plans | | | |
| 33.A | check # 331 Watsons | $11,673 | Rajibs request for pool | 2/8/2021 |

| 8.A | menards | $61.95 | lockboxes for Cheviot | 1/17/21 |
| 8.B | Homegoods | $899.95 | Decor for Cheviot | |
| 9.A | Menards | $868.78 | cheviot supplies | 1/21/2021 |
| 9.B | Menards | $18.59 | cheviot supplies | 1/21/2021 |
| 10 | Bzak | $605 | gravel for Cheviot | 1/28/2021 |
| 11 | Bzack | $605 | second load of gravel for cheviot | 1/28/2021 |
| 12 | Menards | $1,473.21 | lighting for Cheviot | 1/30/2021 |
| 13 | Lowes receipt | $21.93 | cheviot supplies | 1/24/2021 |
| 14 | Lowes receipt | | | |
| 15 | Lowes receipt cont. | $1,758.58 | Cheviot electric | 1/31/2021 |
| 16.A | Homegoods | $44.98 | Cheviot decor | |
| 16.B | Homegoods | $349.98 | Cheviot decor | |
| 17.A | Check #329 to Rajib | $1,758.58 | Cheviot electric | 1/31/2021 |
| 17.B | Check # 326 Brandon Castillo | $1,850 | cheviot driveway | 1/30/2021 |
| 18 | check # 327 Oran Valazquez | $550 | Cheviot Electric | 1/31/2021 |
| 19.A | payment to Fortune Vine | $250 | Cheviot HVAC | 3/6/2021 |
| 19.B | payment to Fortune Vine | $57 | Cheviot Cabinets | 3/4/2021 |
| 19.C | payemtnt to Fortune Vine | $1,979.42 | Cheviot Cabinets | 3/3/2021 |
| 19.D | payment to Fortune Vine | $927.37 | Cheviot receipts | 2/26/2021 |

| 2 | time stamped photo of Rajibs writing on white board in his condo for intitial formula on Mellwood/ Cheviot based on $30,000 mortgage | | | 1/4/2021 | |
|---|---|---|---|---|---|
| 3 | same photo slightly cropped for more clarity. | | | 1/4/2021 | |
| 3.A | signed no harm and general agreement of real estate deal | | | | |
| 4 | example of Rajibs writing, notes for another property | | | | |
| 5.A | Lowes receipt | $56.93 | money spent on McMakin | 11/29/2020 | |
| 5.B | Lowes receipt | $20.40 | cheviot supplies | 12/27/2020 | |
| 6 | letter for clearance of first deposit $30,000 | | | 1/7/2021 | |
| 7 | check from Idealogize, also shows example of writing | | | 1/7/2021 | |
| 7.A | listing contract | | | 1/7/21 | entered agency agreement with Raj under Internet agents to list Mellwood |
| 8 | ammended mortgage for $90,000 | | | filed 2/16/2021 signed 2/5/2021 | |

| | | | | | |
|---|---|---|---|---|---|
| A. | purchase agreement | | 11/18/2020 | Raj to purchase Mellwood through Hidden Cloud LLC | |
| 1 | payment to Agape church, kids who worked on McMackin cleanout | $290 | 11/28/2020 | | |
| 1.A | payment to Luke Hudley, payment to kids who worked to clean out Mcmackin | $17 | 12/7/2020 | | * |
| 1.B | payment to Pamela Childs is roofer Oscar Childs wife who has combined cash ap account | $120 | 11/19/2020 | cheviot roof inspection | * |
| 1.C | payment to Luke Hundley for Fairbanks, | $90 | another property of Rajibs where I wasnt paid | 11/6/2020 | |
| 1.D | payment to Casie Jenkins work on Lehman | $250 | Rajibs property, work done with no payment | 11/6/2020 | * |
| 1.E | $150 Payment to Karissa Eby | $150 | payment for work on Fairbanks, never paid to me | 11/5/2020 | * |

| | | | | | |
|---|---|---|---|---|---|
| cash ap transfers to FV $927.37 2/26/21, $1,979.42 cabinets and appliances 3/3/21, $57 cabinets 3/4/21, $250 HVAC, $367.07 supplies 3/9/21, $15 3/9/21, $444.89 paint 3/11/21, $348 home depot 3/13/21, $146.64 permit 3/18, =$4,535 transfers | | | | 29882.69 | $25,340 + $69,838.69 +$29,882.60= $125,061.38 | $35,061.38 owed to Melisa |
| Amazon orders and special orders menards lowes and HD listed on bank statements as debit transactions not included in receipts | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | checks written to contractors | Chrtistina paint labor $100 4/7/21, $100 4/1/21, $90 4/25/21,Oran, Oscar, Brandon, Tree Company, HVAC Brian $250, Trash out labor girl (have to locate her name through electronic payment ap) Trash out labor Luke Hundley $120, Casie $240 paint labor | $25,938.12 2/2021, $8882.57 3/2021, $250 4/2021, $892 5/2021= $27,962.69 | | $27,962.69 | $27,962.69 + $41,876 = $69838.69 | |
| | Melisa onsite time meetings gc other contractors, meeting with inspectors GC fee $17% project spendatures $15,300, interior paint, exterior porch paint & lead abatement $6500, lawn care 4 months 1 time per week $65 per visit $1040, trash out and dumpster rental $2500 = $25,340 | | | | | $25,340 | |

| $67.18 duke | | | 5/7 | | | | |
|---|---|---|---|---|---|---|---|
| | | | | $35,476 sum total of reciepts invested does not account for time at each location to purchase, deliver and install. | $6400 labor time equated by @ hours on store site X 80 sites X $40/hour = $6400 | $41,876 | |
| | release of $75k lien from Sustenance on Cheviot | | 5/17/2021 | | | | |
| | | example of Raj writing | this is relevant to compare to whiteboard photo | | | | |
| | | photo of white board session | photo taken 1/4/21, first of two sessions based on $30k investment | | | | |
| | | text of no late fees | | | | | |
| | | copy of complaint drafted by Andrew Smith June 2021 | | | | | |
| | | files of design sketches by Sustenance | design time $40/hour X 48 hours = $1920 | | $1,920 | | |
| | | journals of notes on project | | | | | |
| | | video of interior paint | | | | | |
| | | photos of progress | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| $139.97 | menards | lighting | 3/19/21 | | | |
| $567.93 | menards | lighting | 3/14/21 | | | |
| $109.94 | menards | paint brushes and supplies | 5/13/21 | | | |
| $56.93 | lowes | mcmackin cleanout supplies | 11/29/20 | | | |
| $42.67 | lowes | mud tools and supplies | 5/25/21 | replacement of stolen items | | |
| $144 | lowes | illegible | 5/18/21 | | | |
| $199.39 | lowes | paint | 5/3/21 | | | |
| $66 | lowes | electric supplies | 2/10/21 | | | |
| $7.52 | lowes | lockbox | 4/10/21 | | | |
| $868.79 | menards | lighting | 1/29/21 | | | |
| $81.48 | lowes | all crete | 3/21/21 | | | |
| $20.42 | menards | mulch concrete | 3/17/21 | | | |
| $18.59 | menards | wall scrapers | 1/21/21 | | | |
| $868.78 | menards | lighting | 1/29/21 | | | |
| $106.65 | menards | bath fixtures | 2/8/21 | Rajib took these to his office basement | | |
| $1,511 | menards | bath fixtures | 2/7/21 | Rajib took these to his office basement | | |
| $89.70 | cincinnati color company | paint | 3/8/21 | | | |
| $154.90 | lowes | paint | 4/30/21 | | | |
| $308.00 | Home Depot | replacement of stolen supplies | 6/1/2021 | | | |
| $6,675 | watsons | pool custom ordered for site specific location | 2/8/21 | | | |
| $96.26 | water | | 4/30/21 | | | |
| $54.54 | water | | 5/28 | | | |
| $41.72 | duke | | 4/7 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $158.51 | lowes | grass seed gloves towels and shoe covering | | 3/19/21 | for lead abatement process | | |
| $24 | TJ Maxx | mens athletic | | 3/14/21 | clothes for raj | | |
| $57.88 | patel | groceries for raj | | 11/29/20 | | | |
| $741.76 | lowes | plants for backyard | | 5/5/21 | | | |
| $16.99 | TJ Maxx | clothes for Raj | | 4/18/21 | | | |
| $65 | TJ Maxx | clothes for Raj | | 4/14/21 | | | |
| $258.22 | Menards | lead sealant primer | illegible | | | | |
| $147.18 | Home Depot | electric supplies | | 2/7/21 | | | |
| $119.17 | Lowes | wallpaper | | 3/1/21 | | | |
| $99 | Warren County | lien for non payment of serivces and breach of contract | | | | | |
| $250 | Building Value | tub | | 2/7/21 | | | |
| $13.42 | lowes | illegible | | 3/5/21 | | | |
| $32.38 | ACE | deadbolt | | 3/3/21 | | | |
| $29.87 | ABC Supply | gutters | | 3/16/21 | | | |
| $43.06 | ABC Supply | downspouts front porch | | 3/16/21 | | | |
| $605 | Evans | gravel | | 1/28/21 | | | |
| $32 | Bombay | Raj groceries | | 8/22/21 | | | |
| $169.38 | Home Depot | stolen tool replacement | | 5/31/21 | | | |
| $221.96 | lowes | stolen tool replacement | | 8/6/21 | | | |
| $521.32 | menards | lighting | | 3/13/21 | | | |
| $1,473.21 | menards | lighting | | 1/30/21 | | | |
| $233.90 | menards | paint | | 3/15/21 | | | |
| $222.01 | menards | paint | | 4/29/21 | | | |

| | | | | |
|---|---|---|---|---|
| $2,093.27 | lowes | cabinets | 03/02/21 | Raj returned these to the store and got the refund on his LAR. His LAR was used for the extra 10% discount and I sent him funds electronically before leving the store during purchase, evidence of that will follow. Lowes staff can be wtiness to this as they hid me in the security room while he came to the store during the time I was there to sort out the transaction. |
| $81.48 | Lowes | concrete and mulch | 3/21/21 | |
| $175 | lowes | paint | 4/8/21 | |
| $152.31 | lowes | caulk and paint | 4/10/21 | |
| $56.98 | lowes | paint | 3/8/21 | |
| $119.71 | Home Depot | perishable tool supplies, bits | 2/7/21 | |
| $67.25 | lowes | paint supplies | 4/12/21 | |
| $259.67 | lowes | paint | 4/6/21 | |
| $119.98 | homegoods | lighting | 2/8/21 | Raj took these to his apartment |
| $39.98 | homegoods | rugs | 3/14/21 | Raj took these to his apartment |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $44.98 | homegoods | bath | | 3/20/21 | raj took these to his apartment | | |
| $318.92 | homegoods | decorative | | 3/14/21 | These items went missing from the house after he hired someone to change the locks upon locking me out of the property | | |
| $349.98 | homegoods | furniture | | 02/08/21 | these items went missing from the house after he hired someone to change the locks upon locking me out of the property | | |
| $899.95 | homegoods | furnitre | | 02/08/21 | these items went missing from the house after he hired someone to change the locks upon locking me out of the property | | |
| $61.72 | lowes | unsure of item | 4/20/21 | | | | |
| $66.29 | Menards | lockboxes | 1/17/21 | | | | |
| $10.78 | Lowes | 24 ct 3 ml | 3/22/21 | | | | |
| $80 | H&R Candy | filing cabinets | 2/5/21 (?) will have to verufy date by checking texts records | | Rajib has these in the basement of his office | | |
| $40 | TJ Maxx | mens clothes | | 4/11/21 | requested by Rajib | | |
| $229.78 | lowes | gutters and paint | 3/8/21 | | | | |

Exhibit

1

2

B

4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $49 | lowes | cabinet | 2/6/21 | | | | |
| $762.20 | lowes | locks, hardware, gutter materials | 3/4/21 | | | | |
| $1,785 | lowes | electric supplies | 1/31/21 | | | | |
| $444.89 | lowes | paint and cleaning supplies | 3/10/21 | | | | |
| $315.87 | lowes | thermostat paint etc | 03/08/21 | | | | |
| $101.76 | lowes | paint and cleaning supplies | 5/13/21 | | | | |
| $1,173 | lowes | landscape supplies | 03/02/21 | | | | |
| $211.01 | lowes | smoke detectors, electric misc | 05/03/21 | | | | |
| $89.99 | lowes | unsure of product | 5/3/21 | | | | |
| $14.75 | lowes | unsure of product | 2/16/21 | | | | |
| $307.96 | lowes | paint supplies | 3/9/21 | | | | |
| $392.04 | lowes | paint and gutters | 3/5/21 | | | | |
| $6,728 | lowes | appliances | 2/18/21 | Raj took these to one of his flip properties | | | |

Exhibit G

PRECIPE - RENEWAL

DATE      11/21/2024
COURT OF COMMON PLEAS OF HAMILTON COUNTY

STATE OF OHIO                          PAVAN PARIKH
DEPARTMENT OF TAXATION                 HAMILTON COUNTY CLERK OF COURT
                                       COUNTY COURTHOUSE
                    PLAINTIFF          CINCINNATI, OH 45202

         VS.

MELISSA F JENKINS                      TAX TYPE: PERSONAL INCOME TAX

2373 HARRISON AVE

CINCINNATI, OH  45211                  CRN:          02201412084801
                                       ACCOUNT NO.:  12666296
                    DEFENDANT

THE AFOREMENTIONED PREMIUM ASSESSMENT HAS BECOME FINAL BY
OPERATION OF LAW FOR THE PURPOSES OF HAVING A JUDGMENT LIEN
RECORDED THEREON.

TO THE CLERK OF COMMON PLEAS COURT:

ENTER JUDGMENT AND RECORD
CERTIFICATE OF JUDGMENT.  RETAIN
ONE COPY AND RETURN ONE COPY TO THE
OFFICE OF THE ATTORNEY GENERAL

JUDGMENT RECORDED ON:

          OLD              RENEWAL         AMOUNT      $2,906.83

CASE NO.:  CJ14-026789     CJ24-035810

DATE:      11/17/2014

FILED

DEC 13 2024

PAVAN PARIKH
CLERK OF COURTS

I hereby certify the foregoing to
be a true and correct copy of the
action of the Tax Commissioner
taken this date with respect to
the above matter.

Jeff a. McClain

Jeff McClain
Tax Commissioner
Department Of Taxation

CMSR5139

On Jul 31, 2025, at 1:11 PM, John H. Phillips <jhp@phillipslawfirm.com> wrote:

James,

I have been asked to get the amount that your client is willing to accept as full and final payment for a complete release between all parties as to his claim for a mortgage against Melisa Jenkins' home. Can you please provide me with that number ASAP. As you probably know, there is an offer to buy the house by a disinterested third party, and everyone is trying to get the math to work for the transaction. We had previously talked about $90k, but I never got confirmation that $90K would settle the matter. Let me know where we are so that I can pass the number along to my client.

Time is of the essence.

All the best,


John H. Phillips
Phillips Law Firm, Inc.
9521 Montgomery Road
Cincinnati, OH 45242
(513) 985-2500
FAX (513) 985-2503
Toll Free (800) 955-8900

**From:** James Nieberding <jlnieberding1117@gmail.com>
**Date:** June 18, 2025 at 10:10:54 AM EDT
**To:** "John H. Phillips" <jhp@phillipslawfirm.com>
**Subject: Re: proposed settlement agreement**

John:

Mr Garu rejected the proposed settlement.

You and I generally discussed waiver of accrued late charges, not 50% discount on principal amount.

Respectfully

James Nieberding

On Sun, Jun 15, 2025 at 2:50 PM John H. Phillips <jhp@phillipslawfirm.com> wrote:
  This is what I have authority to send. I sent this twice, once on Friday and earlier today, but for some reason it bounced back both times.


  All the best,


  John H. Phillips
  Phillips Law Firm, Inc.

Update Inbox ×

**John H. Phillips** <jhp@phillipslawfirm.com>
to me

Tue, Jun 3, 4:50 PM

I talked to Garu's attorney in the mortgage case, Jim Nieberding. He is much more responsive than Maoriano, so I am going to try and work through him. Garu was supposed to call him today, but the call had not yet occurred. If he does NOT hear from him today, he will call him tomorrow and then call me. That is where we are.

I strongly encourage restraint as we try to negotiate a resolution. Until it is clear we are NOT going to settle, I am holding off on further court actions. I hope you understand and agree.

All the best,


John H. Phillips
Phillips Law Firm, Inc.
9521 Montgomery Road
Cincinnati, OH 45242
(513) 985-2500
FAX (513) 985-2503
Toll Free (800) 955-8900

Update Inbox ×

**John H. Phillips** <jhp@phillipslawfirm.com>

to me ▾

Tue, Jun 3, 4:50 PM

I talked to Garu's attorney in the mortgage case, Jim Nieberding. He is much more responsive than Maoriano, so I am going to try and work through him. Garu was supposed to call him today, but the call had not yet occurred. If he does NOT hear from him today, he will call him tomorrow and then call me. That is where we are.

I strongly encourage restraint as we try to negotiate a resolution. Until it is clear we are NOT going to settle, I am holding off on further court actions. I hope you understand and agree.

All the best,


John H. Phillips
Phillips Law Firm, Inc.
9521 Montgomery Road
Cincinnati, OH 45242
(513) 985-2500
FAX (513) 985-2503
Toll Free (800) 955-8900

**From:** James Nieberding <jlnieberding1117@gmail.com>
**Date:** June 18, 2025 at 10:10:54 AM EDT
**To:** "John H. Phillips" <jhp@phillipslawfirm.com>
**Subject: Re: proposed settlement agreement**

John:

Mr Garu rejected the proposed settlement.

You and I generally discussed waiver of accrued late charges, not 50% discount on principal amount.

Respectfully

James Nieberding

On Sun, Jun 15, 2025 at 2:50 PM John H. Phillips <jhp@phillipslawfirm.com> wrote:
  This is what I have authority to send. I sent this twice, once on Friday and earlier today, but for some reason it bounced back both times.


  All the best,


  John H. Phillips
  Phillips Law Firm, Inc.

14 E. Main St.
Fairborn, OH 45324



CMW LAW FIRM

Phone: 513.653.0123
Email: tony@cmwlawfirm.com

July 3, 2025

**SENT VIA ORDINARY & ELECTRONIC MAIL**

Mr. John H. Phillips, Esq.
Mr. James A. Hamilton, Esq.
Phillips Law Firm, Inc.,
9521 Montgomery Road
Cincinnati, OH 45242
Email: JHP@PhillipsLawFirm.com
        jah@phillipslawfirm.com

    *RE: **Melisa Jenkins v. Rajib Garu, et al. (1:25-cv-449)***
        ***Motion for Rule 11 Sanctions***

Dear Mr. Phillips and Mr. Hamilton,

    Please see the enclosed copy of Defendants', Rajib Garu's and Idealogiz Group, LLC's Motion for Rule 11 Sanctions. This motion will be filed in 21 days if your counts 1 through 8 of your client's complaint against Rajib Garu and Idealogiz Group, LLC have not been dismissed by that date.

            Sincerely,

            Anthony D. Maiorano

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Melisa Jenkins.                          :
                                         :
          Plaintiff,                     :      Case No. 1:25-cv-449
                                         :
v.                                       :      Judge: Jeffrey P. Hopkins
                                         :
Rajib Garu, et al.                       :      Magistrate Judge: Stephanie K. Bowman
                                         :
          Defendants.                    :

## DEFENDANTS RAJIB GARU AND IDEALOGIZ GROUP, LLC MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL

### I.    INTRODUCTION

This case arises primarily out of alleged contractual obligations of Defendants Rajib Garu ("Garu") and Idealogiz Group, LLC ("Idealogiz" and collectively with Garu "Defendants") with Plaintiff Melisa Jenkins. The first 7 counts of Plaintiff's complaint arise out of conduct that pre-dates her filing of a petition for chapter 13 bankruptcy in The United States Bankruptcy Court for the Southern District of Ohio, Western Division (Cincinnati) case number 1-22-bk-10063 and adversary proceeding case number 1-22-ap-01080. Her petition was filed in January of 2022, when all of these claims arise from conduct prior to that. Further, and more troubling, is that nearly all of the first 7 counts relate to conduct that was in dispute in the adversary proceeding in case number 1-22-ap-01080.

*[handwritten: Bankruptcy was filed in good faith to protect asset & other mortgage obligations to Parker, as a result of bad faith foreclosure]*

Specifically, the claims in both the adversary proceeding and Plaintiff's present complaint are directed to a mechanic's lien filed on 3464 Cheviot Avenue, Cincinnati, Ohio 45211 (the "Cheviot property"), mortgages on 4457 Mellwood Avenue Cincinnati, OH 45232 (the "Mellwood property"), and alleged promises broken related to the promissory notes securing the Mellwood property. *See* Doc # 2, PageID # 76–77 (complaint allegations) 94–102, 105–109, 111–116, 121–123 (Exhibits A, B, D, E, F, G, and I to the complaint).

*[handwritten: Alleged promises broken by defendants re late fees & no harm agreements as stated in exhibit]*

*[handwritten: Lender blocked & refused all communication & attempt to resolve, exploring promissory note re late fees.]*

The adversary proceeding involved the exact same allegations, that a $90,000 mortgage was placed on the Mellwood property, that was securing a promissory note for the same amount. Doc # 3-1, PageID # 144. Plaintiff's business entity, Sustenance Design Cincy, LLC placed a mechanics lien on the Cheviot property after Plaintiff performed work on the Cheviot property. *Id.* at # 145. Plaintiff released the lien on Garu's promise that she would receive a portion of the sale proceeds from the Cheviot property. *Id.* Garu removed items from the Cheviot property, sold the Cheviot property, and refused to pay Plaintiff after the sale or cancel the mortgage on the Mellwood property. *Id.* As a result, Plaintiff asserted that Garu and Idealogiz were unjustly enriched and committed fraud against Plaintiff in these actions. *Id.*



The adversary proceeding was dismissed *with prejudice* after Plaintiff failed to follow the bankruptcy court's order to provide pretrial statements and did not respond to a show cause order within 21 days. Doc # 3-2, PageID #166. Plaintiff tried to vacate the judgment on that order, but [handwritten: not w/ prejudice → Attorney mal practice] that motion was denied in August of 2024. Doc # 3-3, PageID ## 167–68. The lead bankruptcy case was dismissed in October of 2024. Doc # 3-4, PageID # 169.

Further, in filing the petition for bankruptcy, Plaintiff failed to specify what sort of claims she had against Garu or Idealogiz, simply stating that "Debtor has a claim against Rajib Garu for at least $90,000.00." Doc # 3-5, PageID # 183. Plaintiff and the trustee never asserted any claims against Garu or Idealogiz outside those that were asserted in the adversary proceeding.

On approximately, April 10, 2025, Garu became aware of the above-captioned suit, then-pending in the Hamilton County Court of Common Pleas. That same day, the undersigned notified counsel for Plaintiff that all of the claims are frivolous sending him copies of the entries dismissing [handwritten: Claims are made in good faith w/ evidence] the adversary proceedings, the complaint in the adversary proceedings, a copy of the entry denying the motion to vacate judgment, and a copy of dismissal of the bankruptcy proceedings. The undersigned requested counsel for the Plaintiff dismiss all of the claims or, to the extent that there was a viable claim only the Truth in Lending Act (TILA) was non-frivolous. Specifically, the undersigned noted that all of the claims besides the TILA claim were barred by res judicata.



2

[handwritten: → State Federal Jurisdiction
not barred. argue res judice]

Instead of dismissing some or all of the claims, Plaintiff's attorney trudged ahead, disputing

that res judicata barred the claims because there was case law indicating that dismissals for failure

to prosecute did not operate as a dismissal on the merits. However, Plaintiff's attorney failed to

cite or provide any case law to that effect.

## II.    LEGAL ARGUMENT

### A. The Court Should Sanction Plaintiff for Baselessly Naming Defendant Stagnitto in

### This Action

Rule 11(b) of the Federal Rules of Civil Procedure provides:

By presenting to the court a pleading, written motion, or other paper—whether by
signing, filing, submitting, or later advocating it—an attorney or unrepresented
party certifies that to the best of the person's knowledge, information, and belief,
formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law
or by a nonfrivolous argument for extending, modifying, or reversing existing law
or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified,
will likely have evidentiary support after a reasonable opportunity for further
investigation or discovery

Rule 11 sanctions are appropriate when the court determines that an attorney's conduct is

not "reasonable under the circumstances." *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir.

1990). As soon as the complaint is filed, Rule 11 applies to the conduct of plaintiff's

counsel. After the complaint is filed, plaintiff's counsel has a continuing responsibility to review

its pleadings and, if necessary, modify them to comply with Rule 11. *Id.*, at 959. "Failure to do so

permits the district court, within its discretion, to impose sanctions against the offending litigant

or attorney when a reasonable inquiry would have disclosed that the complaint was either lacking

in factual support or unwarranted by existing law." *Herron v. Jupiter Transportation Co.*, 858 F.2d

332, 336 (6th Cir. 1988).

In determining the reasonableness of naming a defendant in a complaint, "it must be demonstrated, as the basis of pre-filing investigation and research, that there is a *reasonable basis* to name each defendant named, and to support each claim asserted." *Whittington v. Ohio River Co.,* 115 F.R.D. 201, 209 (E.D. Ky. 1987) (emphasis added). The court may craft a sanction "that is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Determining whether to impose sanctions under Rule 11 involves an inquiry into "whether the individual's conduct was reasonable under the circumstances." *Union Planters Bank v. L & J Dev. Co.,* 115 F.3d 378, 384 (6th Cir. 1997). Rule 11 sanctions may be imposed if a reasonable inquiry would have disclosed that the pleading, motion or other paper was not well-grounded in fact. *See Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174 (D.C. Cir. 1985). Argue case law

A Rule 11 sanction is appropriate when a pleading is frivolous, *i.e.* both baseless and made without a reasonable and competent inquiry. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224 (6th Cir. 1989). Counsel's subjective belief in the propriety of the pleading is irrelevant in determining if Rule 11 has been violated since that assessment must be made using an objective test of reasonableness under the circumstances. *Id.* at 1229. *See also* Fed. R. Civ. Proc. 11 advisory committee's notes. Under this test, "the relevant question is no longer whether the signer subjectively believed that a claim was legitimate. Rather, it is whether a competent attorney ..., after appropriate investigation, would have reasonably believed that the claim was well grounded in fact and law." *Holling v. United States,* 1995 WL 871257, at *3 (E.D. Mich. Dec. 28, 1995) (quoting *Kenna v. United States Dep't of Justice,* 128 F.R.D. 172, 176 (D.N.H. 1989) (citing cases)). *See also Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 553 (1991) ("[t]he relevant inquiry is whether a specific filing was, if not successful, at least well founded."). Argue case law

In general, motions for sanctions should not substitute for motions to dismiss or motions for summary judgment. *James v. Caterpillar, Inc.,* 824 F. App'x 374, 378 (6th Cir. 2020). And, when the sanction is directed at frivolous actions, "a Rule 11 sanction could be made in conjunction

4

Argue case law

with a grant of [the 12(b)(6) motion] if the litigants behavior was particularly egregious." *Id.* (quoting 5A Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 1336.3 (4th ed. 2020)). *[handwritten: Argue case law]*

However, this situation does not encompass the general. Indeed, when "a complaint on its face appears plausible enough to survive dismissal, but the defendant can easily show that it is, in fact, frivolous. In that case, an early Rule 11 dismissal is warranted." *Id.* at n. 4.

As explained above, it is uncontested that these issues were litigated or should have been litigated back in 2022 with during the adversary proceedings. Instead, Plaintiff's complaint was dismissed, on the merits for failure to prosecute. *See Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 777 (6th Cir. 2009). This has been the law in the Sixth Circuit for well over 10 years. *See id.*

The undersigned pointed this out, and without legal support, Plaintiff decided to proceed. Defendants have already moved to dismiss the complaint. *See* Doc # 3. In order to stop the bleeding and to not needlessly increase the costs of litigation, sanctions are appropriate. *[handwritten: Argue case law]*

## B. The Appropriate Sanction is Attorneys' Fees

Rule 11(c)(1) states "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

The procedures under Rule 11(c)(2), require that a motion be served pursuant to Rule 5, but not filed until after 21 days of service. And, "if warranted, the court may award the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id.*

Rule 11(c)(4) provides that: "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The *[handwritten: → defendant has repetition of conduct]* sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed *[handwritten: and should there fore be responsible for plantiff fees & 3X damage]* on motion and warranted for effective deterrence, an order directing payment to the movant of part *[handwritten: as result of]* or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *[handwritten: fraud.]*

5

*[handwritten: What are damages? home loss, business uproot, attorney fees.]*

While the Court has the power to strike pleadings, preclude defenses, remove attorneys, and other more serious sanctions, and this could be a case where such a sanction is appropriate, however, Defendants believe the appropriate sanction is to order the Plaintiff and her attorneys to pay all of the reasonable attorney's fees resulting from the violation. *We politely decline Defendants has acted in bad faith with malice & in a serial behavior fashion*

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants Motion for Rule 11 Sanctions and order her counsel to file documentation of attorney's fees incurred to address Plaintiff's frivolous Complaint against them.

*ie. other lawsuits*

Dated: July 3, 2025

*Argue bad faith litigation case law & behavior forces foreclosure cite evidence*

*organize timeline*

Respectfully submitted,

/s/ Anthony D. Maiorano
Anthony D. Maiorano          0100339
The CMW Law Firm
14 E. Main St.
Fairborn, OH 45324
Tel: (513) 653-0123
Email: tony@cmwlawfirm.com
*Counsel for Defendants*

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true copy of this document was served on John Phillips at his address of record on this 3rd day of July, 2025 via email and ordinary mail.

/s/ Anthony D. Maiorano
Anthony D. Maiorano          0100339

*Allow for answer pro se & extension for settlement & attorney onboarding*

6

**COSTS RECORDED**

CLERK OF THE COUNT OF COMMON PLEAS

JUN 15 2023

DEPUTY CLERK
CINCINNATI, OHIO



D138472128

## IN THE COMMON PLEAS COURT OF HAMILTON COUNTY, OHIO
## DOMESTIC RELATIONS DIVISION

**RAJIB GARU**
**2691 Lehman Road, Apt. B7**
**P.O. Box 36576**
**Cincinnati, Ohio 45236**
**DOB: 05/29/1982**

**CASE NO. DR 23 00678**

**JUDGE SUNDERMANN**

First Petitioner,

**ENTERED**

**JUN 15 2023**

**MAGISTRATE WEBB**

vs.

**KATHLEEN GARU**
**4140 Home Street**
**Cincinnati, Ohio 45236**
**DOB: 01/21/1984**

**FINAL JUDGMENT AND**
**DECREE OF DISSOLUTION**

Petitioner 2.

This cause comes before the Court upon the Petition of the parties on this 9th day of June, 2023 in the Hamilton County Domestic Relations Court before Magistrate Webb. The parties agree to a waiver of findings of fact and conclusions of law and objection period is incorporated herein. Present at the hearing was **RAJIB GARU**, with counsel, Brandon A. Moermond and **KATHLEEN GARU**, with counsel Jen Scheller.

The Court finds that the parties were residents of the State of Ohio for a period of more than six (6) months and the County of Hamilton for ninety (90) days immediately preceding the filing of the Petition for Dissolution herein, and that service thereof was waived by both parties as provided in the Civil Rules. The parties have personally appeared before this Court, and more than 30 and less than 90 days have elapsed after filing of the Petition.

The Court finds that the parties were married on June 20, 2015 at Cincinnati, Ohio and one child has been born as an issue of said marriage, to wit: Eshan Francis Garu, DOB: 12/05/2017. The child is not an emancipated adult nor mentally or physically disabled. The child is incapable of supporting or maintaining himself. There is no expectant issue.

Upon examination under oath, the Court **FINDS** that the parties appeared in open Court on this date and acknowledged that they have entered into a Separation Agreement that

1

provides for the division of marital property and the support and maintenance of each of them herein, that it was their free and voluntary act, that they have affirmed the Separation Agreement and the Petition, that there has been full disclosure of all marital assets, and that such Agreement is full, fair and equitable. There is no arrearage of child support as of the date of this decree. The Court also **FINDS** that the parties have entered into a Shared Parenting Plan, which they believe to be in their best interests. The Court's adoption of the Shared Parenting Plan is in the best interests of the children.

**CHILD SUPPORT WITH PRIVATE HEALTH INSURANCE:** For this agreement, Mother is the Obligee (person receiving child support) and Father is the Obligor (person paying child support).

The full name and date of birth of each child subject to this child support order is as follows: Eshan Francis Garu, DOB: 12/05/2017

Defendant/Mother who is the child support Obligee provides private health insurance for the parties' minor child that is accessible through a group policy, contract, or plan. Private health insurance is reasonable in cost or is provided in accordance with R.C. 3110.302(A)(2).

Based upon the evidence before the Court and the attached hereto and incorporated herein child support worksheet, the Court finds that it is in the child's best interest that, effective November 1, 2022 Obligor/Father shall pay monthly child support as follows:

| CURRENT SUPPORT | $1443.55 |
|---|---|
| Support Arrearage | $0 |
| Cash Medical Support | $27.04 |
| Processing Charge | $29.41 |
| **TOTAL** | $1500.00 |

Deviation: The Child Support Obligor's obligation for child support is deviated by $299.30 per month and the Obligor's cash medical obligation is deviated by 0, line 26 of the worksheet attached. The Obligor's child support and cash medical obligations deviate from the actual annual obligation on the child support worksheet attached hereto by agreement of the parties,

2

pursuant to R.C. 3119.23 (I) is just, appropriate and in the best interest of the child. A deviation is appropriate due to father's significant in-kind contributions to mother for the expenses of the child. A deviation is appropriate where the actual annual amount would be unjust and inappropriate and, therefore, not in the best interest of the child R.C. 3119.22 (A).

Arrearages:
     There are NO arrearages in child support as of November 1, 2022. Any credit or arrearage of child support or spousal support on the Child Support Enforcement Agency records is preserved.

Notwithstanding Section 3109.01 of the Revised Code, the parental duty of support to children, including the duty of a parent to pay support pursuant to a child support order shall continue beyond the child's eighteenth birthday only in accordance with Section 3119.86 of the Revised Code. The duty of support shall continue during seasonal vacations. Child Support Obligor is responsible for making payments directly to the Office of Child Support of The Department of Job and Family Services until such time as a deduction order takes effect. Any payments made directly to the Child Support Obligee and not through The Office of Child Support of The Department of Job and Family Services shall be deemed a gift and not credited to the support account.

All support under this order shall be withheld or deducted from the income or assets of the Child Support Obligor pursuant to a withholding or deduction notice or appropriate order issued in accordance with Chapters 3119, 3121, 3123 and 3125 of the Revised Code or a withdrawal directive issued pursuant to sections 3123.24 to 2123.38 of the Revised Code and shall be forwarded to the Child Support Obligee in accordance with Chapters 3119, 3121, 3123 and 3125 of the Revised Code. A person and/or entity required to comply with withholding or deduction notices described in Section 3121.03 of the Revised Code shall determine the manner of withholding or deducting from the specific requirement included to comply with an order described in sections 3121.03, 3121.04 to 3121.06 and 3121.12 of the Revised Code shall comply without need for any amendment to the support order. The withholding or deduction noticed and other orders issued under sections 3121.03, 3121.14 to 2131.06 and 3121.12 of the Revised Code, and the notices that require the obligor to notify the Child Support Enforcement Agency administering the support order of any change in the obligor's employment status or of any other change in the status of the obligor's assets, are final and enforceable by the Court.

Payments to Child Support Payment Central ("CSPC") must be sent to the following address: Ohio, CSPC, P.O. Box 182372, Columbus, Ohio 43218-2372. Payments may be made by personal check, certified check, cashier's check, or money order. The payment must include the Court case number DR 19_____ and the SETS number _____. If the SETS number is not available then the payment must

include Obligor's Social Security number.

Regardless of the frequency or amount of support payments, The Office of Child Support of The Department of Job and Family Services will administer the order on a monthly basis in accordance with R.C. 3121.51 to 3121.54. Payments must be made as ordered by the Court.

The Obligee must notify The Child Support Enforcement Agency immediately and the Obligor may notify The Child Support Enforcement Agency of any reason to terminate the support order. A willful failure to notify The Child Support Enforcement Agency is contempt of court. Reasons include but are not limited to the following: a) the child turns 18 years old and no longer attends an accredited high school on a full-time basis, if the support order does not require support to continue past age 18; b) the child's death, marriage, emancipation, or enlistment in the armed services; or c) the change of legal custody of the child.

**EACH PARTY TO THIS SUPPORT ORDER MUST NOTIFY THE CHILD SUPPORT ENFORCEMENT AGENCY IN WRITING OF HIS OR HER CURRENT MAILING ADDRESS, CURRENT RESIDENCE ADDRESS, CURRENT RESIDENCE TELEPHONE NUMBER, CURRENT DRIVER'S LICENSE NUMBER, AND OF ANY CHANGES IN THAT INFORMATION. EACH PARTY MUST NOTIFY THE AGENCY OF ALL CHANGES UNTIL FURTHER NOTICE FROM THE COURT OR AGENCY, WHICHEVER ISSUED THE SUPPORT ORDER.**

**IF YOU ARE THE OBLIGOR UNDER A CHILD SUPPORT ORDER AND YOU FAIL TO MAKE THE REQUIRED NOTIFICATIONS, YOU MAY BE FINED UP TO $50 FOR A FIRST OFFENSE, $100 FOR A SECOND OFFENSE, AND $500 FOR EACH SUBSEQUENT OFFENSE. IF YOU ARE AN OBLIGOR OR OBLIGEE UNDER ANY SUPPORT ORDER ISSUED BY A COURT AND YOU WILLFULLY FAIL TO GIVE THE REQUIRED NOTICES, YOU MAY BE FOUND IN CONTEMPT OF COURT AND BE SUBJECTED TO FINES UP TO $1,000 AND IMPRISONMENT FOR NOT MORE THAN 90 DAYS.**

**IF YOU ARE AN OBLIGOR OR OBLIGEE AND YOU FAIL TO GIVE THE REQUIRED NOTICES TO THE CHILD SUPPORT ENFORCEMENT AGENCY, YOU MAY NOT RECEIVE NOTICE OF THE CHANGES AND REQUESTS TO CHANGE THE CHILD SUPPORT AMOUNT, HEALTH CARE PROVISIONS, OR TERMINATION OF THE CHILD SUPPORT ORDER. IF YOU ARE AN OBLIGOR AND YOU FAIL TO GIVE THE REQUIRED NOTICES, YOU MAY NOT RECEIVE NOTICE OF THE FOLLOWING ENFORCEMENT ACTIONS AGAINST YOU; IMPOSITION OF LIENS AGAINST YOUR PROPERTY; LOSS OF YOUR PROFESSIONAL OR OCCUPATIONAL LICENSE, DRIVER'S LICENSE, OR RECREATIONAL LICENSE; WITHHOLDING FROM YOUR INCOME; ACCESS**

**RESTRICTION AND DEDUCTION FROM YOUR ACCOUNTS IN FINANCIAL INSTITUTIONS; AND ANY OTHER PERMITTED BY LAW TO OBTAIN MONEY FROM YOU TO SATISFY YOUR SUPPORT OBLIGATION.**

**Definitions: Applicable to Health Expenses and Health Insurance**

"Cash medical" At this time, the State of Ohio recognizes that parents spend an average of $388.70 per year, per child on uncovered health care expenses. Therefore, the term "cash medical" is defined as $388.70 per child, per year (as amended by statute), and the responsibility for paying this expense is allocated between the parents by income shares, as identified on Line 23 of the child support worksheet.

"Cash medical support" means a dollar amount ordered to be paid in a child support order towards "ordinary medical expenses" incurred on behalf of the children identified in the parties' child support order during a calendar year. The child support recipient's share (Obligee) remains in his/her household, while the child support payor's share (Obligor) is paid to the Obligee in conjunction with the child support amount ordered, **\*\*unless the child is receiving government provided healthcare at no cost to either parent.**

"Ordinary medical expenses" include copayments, deductibles and uninsured/unreimbursed medical-related costs for the children named in the support order.

"Extraordinary medical expenses" include any uninsured/unreimbursed medical-related costs incurred for a child named in the child support order that exceed the total cash medical support amount, including the monthly amount that is Obligee's share, as identified on line 28 of the child support worksheet.

"Reasonable cost for health insurance" means that a plan of health insurance for the children identified in the child support order is accessible to the parent ordered to provide health insurance coverage at a cost of 5% or less of his/her gross annual income (identified as the "Health Insurance Maximum" on line 8 of the child support worksheet), unless: (a) one or both parties expressly agree to provide such health insurance for the children at a cost exceeding 5% of his/her gross income; or (b) the Court finds that it is in the best interest of the parties' children for one or both parents to provide such insurance at a cost exceeding 5% of his/her gross income as such insurance coverage will not impose an undue financial burden on the parents.

Notifications:

The parties are also subject to the attached **NOTIFICATIONS** incorporated herein by reference.

**HEALTH INSURANCE AND CASH MEDICAL**:

The parties agree that Mother/Obligee has private, accessible health insurance available for the children subject to the child support order at a reasonable cost (of 5% or less than her gross income). Pursuant to R.C. 3119.30, it is hereby ordered that Mother shall continue and maintain her coverage of the minor children named in this order so long as this parent continues to have private health insurance coverage available at a reasonable price for the children. A Qualified Medical Child Support Order shall issue.

This order shall remain in effect for each child identified in the parties' support order until each such child reaches the age of eighteen (18) and no longer attends an accredited high school on a full-time basis unless otherwise ordered. Except in cases in which a child support order requires the duty of support to continue for any period after the child reaches age nineteen, the order shall not remain in effect after the child reaches age nineteen.

Payment of Uninsured/Unreimbursed Extraordinary Medical Expenses

Both parents are liable to all health care providers for their children's uncovered extraordinary health care expenses as defined herein according to the formula set forth below.

The parties agree to a deviation in the following manner: Father shall be responsible for all unreimbursed/uninsured medical expenses, up to $1000 per year. Uncovered health care expenses include uninsured medical, dental, orthodontic, optical, psychological, or psychiatric expenses, including deductibles and/or co-payments under the health insurance plan for the child. **Any unreimbursed medical expenses over $1000 for the minor children shall be paid 84% by Father and 16% by Mother.**

Each parent must submit to the other copies of all medical bills and receipts for payment as soon as each parent is in receipt of the bill/receipt. Each parent must submit copies of all bills (including expenses for which the submitting parent is responsible) so the other parent is aware of what expenses have been incurred and what expenses have been paid. Each parent should have a complete set of all medical bills and receipts. Documentation of all such expenses shall be provided to the other parent and reconciliation of the amounts owed for reimbursement shall occur on a quarterly basis (the last day of January, April, July and November of each year).

If one parent has paid the bill in full, the other parent must pay his/her share to the parent who paid the bill within 30 days after she/he receives the receipts. If the health care provider has not been paid in full, each parent must make arrangements with the health care provider to pay his/her share within 30 days of the date that he/she receives the bill. If the bill is later

6

reduced for any reason (insurance payment, insurance company modification, etc.), the parent who first learns of the reduction must notify the other parent immediately. Each parent's portion of the original bill will be reduced accordingly, based on the percentage of each parent's responsibility for the original bill. Neither parent may use the children to deliver medical bills, proof of payment, or reimbursement to the other parent.

Pursuant to Ohio Revised Code Sect. 3119.30, the parent ordered to provide private health insurance for the children shall, not later than thirty (30) days after the issuance of the order herein, supply the other parent with information regarding the benefits, limitations and exclusions of the health insurance coverage, copies of any insurance forms necessary to receive reimbursement, payment or other benefits under the health insurance coverage and a copy of any necessary insurance cards.

### IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that;

1.  The marriage contract between the parties is dissolved and the dissolution is granted.

2.  Said Separation Agreement and Shared Parenting Plan attached hereto are approved and incorporated into this Decree the same as if fully rewritten herein.

3.  The parties shall fulfill each and every obligation imposed by this Agreement as submitted and modified, if applicable. The Plan is approved and this entry shall constitute a Parenting Decree under R.C. 3109.04(D).

4.  Any remaining court costs beyond the deposit shall be split equally between the parties.

IT IS SO ORDERED COURT OF COMMON PLEAS
ENTER

_____

JUDGE/MAGISTRATE
THE CLERK SHALL SERVE NOTICE
TO PARTIES PURSUANT TO CIVIL
RULE 58 WHICH SHALL BE TAXED
AS COSTS HEREIN.

Final Appealable Order

7

**RAJIB GARU**
Petitioner 1

**BRANDON A. MOERMOND** of
**L. PATRICK MULLIGAN &**
**ASSOCIATES CO., L.P.A.**
**Supreme Ct #0092397**
225 West Court Street
Cincinnati, Ohio 45202
(513) 421-9790
(513) 421-0206 fax
brandonmoermond@patrickmulligan.com
Attorney for Rajib Garu

**KATHLEEN GARU**
Petitioner 2

**JENNIFER A. SCHELLER**
**WOODFORD SATHAPPAN MCGEE**
**Supreme Ct. #101729**
4555 Lake Forest Drive, Suite 650
Cincinnati, Ohio 45242
(380) 380-2023
(380) 203-2025 fax
jen@wsm-law.com
Attorney for Kathleen Garu

8

**IN THE COMMON PLEAS COURT OF HAMILTON COUNTY, OHIO**
**DOMESTIC RELATIONS DIVISION**

**RAJIB GARU**                                   CASE NO. D R 2 3 0 0 6 7 8
**2691 Lehman Road, Apt. B7**
**P.O. Box 36576**
**Cincinnati, Ohio 45236**                       **JUDGE**
**DOB: 05/29/1982**

          First Petitioner,                      **MAGISTRATE**

vs.

**KATHLEEN GARU**
**4140 Home Street**                             **SEPARATION AGREEMENT**
**Cincinnati, Ohio 45236**
**DOB: 01/21/1984**

          Second Petitioner.

Now comes **RAJIB GARU** and **KATHLEEN GARU** and state the following:

1.      The parties were married to one another on June 20, 2015 in Cincinnati, Ohio and one child was born as issue of the marriage; to wit: Eshan Francis Garu, DOB: 12/05/2017.

2.      The parties have lived separate and apart since September 2020 and intend to live separate and apart.

3.      The term of the marriage should be determined by the date of marriage (06/20/2015) to the date of separation (09/30/2020).

4.      Each party completed (a) financial disclosure affidavit(s) which fully and accurately lists and values all marital property, separate property, and any other assets, debts, income, and expenses.

1

5.      Each party acknowledges that he/she reviewed the other party's completed financial disclosure affidavit(s).

6.      Each party's financial disclosure affidavit(s) shall be filed in the Court's Family File pursuant to Sup.R. 44(C)(2)(h) no later than the date upon which this Agreement is filed.

7.      Neither party has knowledge of any other property or debts of any kind in which either party has an interest.

8.      Each party had the opportunity to value and verify all marital property, separate property, and debts.

9.      A party's willful failure to disclose may result in the Court awarding the other party three (3) times the value of the property, assets, income, or expenses that were not disclosed.

10.     This Agreement addresses spousal support, property, and debt division.

11.     This Agreement is the complete agreement of the parties.

12.     There is a prenuptial agreement signed between the parties that would effect this Agreement. That agreement has been taken into consideration in this determination. There are no other representations, agreements, statements, or prior writings that shall have any effect on this Agreement.

13.     Each party fully understands this Agreement and has knowingly and voluntarily signed this Agreement.

14.     No change to the terms of this Agreement shall be valid unless in writing and knowingly and voluntarily signed by both parties and incorporated into a Court order.

        The parties agree as follows:

## I.      SEPARATION:

        The parties shall live separate and apart. Neither party shall interfere with the activities, personal life, or privacy of the other; harass the other, nor engage in any conduct calculated to restrain, embarrass, injure, or hinder the other in any way.

## II.     PROPERTY DIVISION

        Marital property as defined in R.C. 3105.171 is the property owned by either or both spouses and property in which either spouse has an interest in the property.

2

Separate property as defined in R.C. 3105.171 is real or personal property that was inherited, acquired by one spouse prior to the date of marriage, acquired after a decree of legal separation under R.C. 3107.17, excluded by a valid antenuptial agreement, compensation for personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets, or any gift of property that was given to only one spouse. If separate property is involved, the owner should consider consulting an attorney. The party not receiving the separate property waives all interest in the property.

A.      **REAL ESTATE:**  Real estate includes lands, mortgaged properties, buildings, fixtures attached to buildings, attached structures (garage, in-ground pool), condominiums, time shares, mobile homes, natural condition stakes (gas, oil, mineral rights, existing soil, including trees and landscape) and inheritance rights in real estate.  Both properties are solely in Husband's name however the mortgages are held by both parties as listed per Hamilton County Recorder's office.

### 1. 4140 Home Street, Cincinnati, OH 45236 (Marital Home)
Situated in the City of Cincinnati, County of Hamilton, in the State of Ohio, and the Village of Silverton, and being known numbered and designated as:

*The east 22 feet of Lot 20, all of Lot 21, and 5 feet off the west side of Lot 22 of Charles G. Hutchenson's Second Subdivision in Silverton, as recorded in Plat Book 8, Volume 2, Page 17, of the Plat Records of Hamilton County, Ohio. Subject to Easements and Restrictions of Record. Parcel No.: 602-8-168*

This property is encumbered by a mortgage, dated March 3, 2017, and filed for record on March 10, 2017, instrument no. US17-01-80 held by the Union savings Bank, titled to Rajib Garu and Kathleen Garu, Husband, and Wife. Both parties agree not to take out any additional loans or encumber this property with liens.

Husband shall continue to pay the mortgage, taxes, utilities, and all maintenance through July 2023 so that their child can complete the school year. At that time, the parties shall list the home for sale with a mutually agreed upon realtor. Once the home is sold, Wife shall retain 50% of the proceeds and Husband shall retain 50% of the proceeds. Husband shall be responsible for all mortgage, maintenance, taxes and utilities until the house is sold. Should the parties fail to agree on a realtor, Husband shall enlist a realtor to sell the home. Should Husband list the property as the agent, he agrees to waive his commission.

### 2. 3446 Schwartze Avenue, Cincinnati Ohio (Rental Property)

Husband agrees to refinance this property by June 2023 or payoff if Wife's name is on the mortgage. Husband shall be responsible for all debts and maintenance associated with this property and hold Wife harmless for any issues related to this property. Wife waives any interest in this property.

3

**If the real estate is not in the name of the party to whom it is distributed, the parties shall transfer the property to the proper party no later than thirty (30) days after filing the Final Judgment Entry unless otherwise provided in this Agreement.**

B.    **PERSONAL PROPERTY:** Household goods and personal property include, but are not limited to, pets, appliances, electronics, tools, air conditioner window units, doghouses, lawn mowers, above-ground pools, safety deposit boxes, jewelry, furniture, firearms, silverware, collections, china, and books.

There are certain articles still in the marital home that belong to Husband. Husband shall arrange for pickup of these items with Wife. These items are as follows: Personal items, personal construction material in the garage, books.

C.    **AUTOMOBILES:** Titled vehicles include boats, trailers, automobiles, motorcycles, trucks, mobile homes, golf carts, motor scooters, sport utility vehicles, recreational vehicles, all purpose vehicles. The parties have already divided and transferred any and all rights, title and interest in the vehicles and the vehicles are in possession of the proper party.

    1. **2014 Mitsubishi:** Wife shall retain as her own, free and clear of any claim of Husband, all interest in the 2014 Mitsubishi, and Wife shall pay and hold Husband harmless on all debts and expenses associated with said vehicle.

    2. **2019 Tesla:** Husband shall retain as his own, free and clear of any claim of Wife, all interest in the 2019 Tesla, and Husband shall pay and hold Wife harmless on all debts and expenses associated with said vehicle.

    Each party shall pay for and hold the other harmless from any debt owing on the titled vehicles the parties receive unless otherwise stated in this Agreement.

**If any vehicle's title is not in the name of the party to whom it is distributed, the current title holder shall transfer that title to the proper party no later than thirty (30) days after filing the Final Judgment Entry unless otherwise provided in this Agreement.**

D.    **FINANCIAL ACCOUNTS:** Financial accounts include checking, savings, certificates of deposit, money market accounts, medical or health savings accounts, education or college savings plans and trusts.

    Within seven (7) days of the journalization of the Judgment Entry – Decree of Dissolution, which incorporates and adopts this Separation Agreement by reference, the parties shall take steps to close all jointly-held bank accounts and divide the proceeds as explained below. The parties own various accounts held in his or her respective name, which shall be allocated as follows:

i.    Wife is awarded the following accounts, free and clear from any claim of Husband:

4

        1.      Chase Bank accounts: Checking x5763 Savings x6759.

        2.      US Bank Account: Acct. #8034. The profits from Disha IT shall continue to be deposited into this account. In August 2023, if any money remains in this account, it shall be transferred to a 529 to be used for their minor son's education or as mutually agreed upon by the parties. No withdrawals shall be made from this account for personal use by Wife until August 2023 or upon mutual agreement of the parties.

ii.     Husband is awarded the following accounts, free and clear from any claim of Wife:

        1.      Chase Checking, Acct. #9656 (Brokerage)

        2.      Chase Checking, Acct. #9993 (Business)

        3.      Chase Checking, Acct. #0009 (Property Management)

        4.      US Bank, Acct. #9062 (Garu Holdings, LLC)

        5.      US Bank, Acct. #0324 (Hidden Cloud, LLC)

        6.      US Bank, Acct. #0900 (Idealogiz Group)

E.    **STOCKS, BONDS, SECURITIES AND MUTUAL FUNDS:** Other than what is specifically listed above the parties each agree to keep their own stocks, bonds, securities and mutual funds.

F.    **BUSINESS INTERESTS:** Husband shall retain, free and clear from any claim of Wife, any interest he has or may have in any business ventures. Husband agrees to indemnify Wife from any liability resulting from any of Husband's business ventures, including tax implications. Husband agrees to change the mailing address and registered address for his LLCs or other business ventures so that no mail comes to the marital home.

G.    **PENSION, PROFIT SHARING, IRA 401(K) AND OTHER RETIREMENT:** Husband and Wife each agree to keep their own retirement accounts and waive any interest they may have in the others account. Each party agrees to list their minor child as the beneficiary on any retirement accounts they may have in their respective names.

H.    **LIFE INSURANCE POLICIES:** Husband and Wife shall retain, free and clear of any claim by the other, any life insurance policies presently held in his or her respective name. Each party agrees to list their minor child as the beneficiary on any life insurance they may have in their respective names.

5

I. **OTHER PERSONAL PROPERTY:** As of the execution of the Judgment Entry – Decree of Dissolution, which incorporates and adopts this Separation Agreement by reference, the parties have agreed how to divide, to their mutual satisfaction, all other items of personal property not specifically referenced herein. Therefore, Husband and Wife are hereby awarded all items of personal property that are in his or her respective possession at the time of the execution of the Judgment Entry – Decree of Dissolution and that are not specifically referenced herein; including, without limitation, household goods, furnishings, appliances, and personal effects.

### III.   DEBTS

The parties shall be responsible for, and hold the other harmless as to, all debts presently held in his or her respective name; including, all debts individually incurred since the parties' separation. Further, the parties shall take immediate steps to cancel all credit cards in which there is a joint liability between the parties, if any; and each party shall make no additional charges on any joint credit card. Except as otherwise provided herein, there are no debts in the parties' joint names. Husband agrees to be solely responsible for all debt in his name individually and any debt associated with his business ventures and shall hold Wife harmless thereon.

Bankruptcy: The Court will retain jurisdiction to enforce payment of debt obligations, in the event a party files bankruptcy, including, but not limited to, the ability to determine the debt assigned is in the nature of maintenance, necessity or support and is therefore nondischargeable in bankruptcy, and/or making a future spousal support order, regardless of the spousal support order set forth below.

Neither party shall incur liabilities against the other party in the future and each shall pay any debt incurred by him or her individually after the date of this Agreement.

### IV.   SPOUSAL SUPPORT

Neither party shall pay spousal support to the other. The Court shall not retain jurisdiction to the modification of spousal support except as set forth above under Debt.

### V.   TAX LIABILITY

From tax year 2022 forward, the parties shall file individually unless mutually agreed upon. Each party shall be individually responsible for all prior years and each year subsequent, including the tax year of 2022. Each party shall retain his or her own respective tax liability on any and all income tax returns he or she hereafter files and shall hold the other harmless thereto. In the event that the parties are audited for any prior joint return, Husband agrees to pay for any outstanding taxes and hold Wife harmless.

Wife shall claim their minor child every year on her taxes, Federal, State and Local.

6

**VI.     ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES, PARENTING TIME, CHILD SUPPORT AND HEALTHCARE**

The parties have a child subject to the jurisdiction of the Court, and a Shared Parenting Plan is attached hereto and incorporated herein.

**VII.    NON-USE OF THE OTHER'S CREDIT**

From now on, neither party shall incur any debt or obligation upon the credit of the other or in their joint names. If a party incurs such a debt or obligation that party shall repay, indemnify, and hold the other harmless as to any such debt or obligation. All joint credit card accounts shall be immediately cancelled, and the cards shall be immediately destroyed.

**VIII.   INCORPORATION INTO DECREE/ EFFECTIVENESS OF AGREEMENT**

If one or both of the parties institute or have instituted proceedings for dissolution, divorce or separation, this Agreement shall be presented to the Court with the request that it be adjudicated to be fair, just and proper and incorporated into the decree of the Court.

**IX.     PERFORMANCE OF NECESSARY ACTS**

Upon execution and approval of this Agreement by the Court, each party shall deliver to the other party, or permit the other party to take possession of all items of property to which each is entitled under the terms of this Agreement, and shall make all periodic payments required under the terms of this Agreement.

Upon failure of either party to execute and deliver any deed, conveyance, title, certificate or other document or instrument to the other party, an order of the Court incorporating this Agreement shall constitute and operate as a properly executed document, and the County Auditor, County Recorder, Clerk of Courts and/or all other public and private officials shall be authorized and directed to accept a properly certified copy of a court order incorporating this Agreement, a properly certified copy of the Agreement or an order of the Court in lieu of the document regularly required for the conveyance or transfer.

**X.      SEVERABILITY**

If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall continue in full force and effect.

**XI.     APPLICABLE LAW**

All of the provisions of this Agreement shall be construed and enforced in accordance with the laws of the State of Ohio.

## XII.    MUTUAL RELEASE

Except as otherwise provided, the parties do release and forever discharge each other from any and all actions, suits, debts, claims, demands, and obligations whatsoever, both in law and in equity, which either of them ever had, now has, or may have or assert against the other upon or by reason of any matter or cause to the date of the execution of this Agreement.

Each party waives all rights of inheritance and the right to share in the estate of the other, and waives all rights which would otherwise be available as a surviving spouse, except payments or rights included in this Agreement.

IN WITNESS WHEREOF, we have hereunto set our hands to this Separation Agreement on the date indicated beside our respective signatures; and, by affixing our signatures hereto, represent our intent to be bound by the terms of this Agreement.

**RAJIB GARU**
First Petitioner

**KATHLEEN GARU**
Second Petitioner

STATE OF OHIO
COUNTY OF HAMILTON    SS:

Before me, the undersigned a Notary Public in and for the State and County, personally appeared the above-named Kathleen Garu, who acknowledged her execution of the foregoing instrument to be her free and voluntary act and deed for the purposes mentioned therein.

IN WITNESS WHEREFORE, I have hereunto set my hand and affixed my official seal on this 1st day of December , 2022.

Notary Public

8

STATE OF OHIO
COUNTY OF _Hamilton_ SS:

    Before me, the undersigned, a Notary Public in and for the State and County, personally appeared the above-named ~~Kathleen~~ Garu, who acknowledged her execution of the foregoing instrument to be her free and voluntary act and deed for the purposes mentioned therein.

    IN WITNESS WHEREFORE, I have hereunto set my hand and affixed my official seal on this _7th_ day of _February_ , ~~2022~~. 2023

Notary Public _Amy J. Pond_
Notary Public, State of Ohio
My Commission Expires:
01-19-2025

Prepared by:

**BRANDON A. MOERMOND**
**L. PATRICK MULLIGAN &**
**ASSOCIATES, L.L.C.**
**Supreme Ct. #0092397**
225 West Court Street
Cincinnati, Ohio 45202
(513) 421-9790
(513) 421-0206 fax
brandonmoermond@patrickmulligan.com
Attorney for First Petitioner

**JENNIFER A SCHELLER**
**WOODFORD SATHAPPAN MCGEE, CO.**
**Supreme Ct. #101729**
4555 Lake Forest Drive, Suite 650
Cincinnati, Ohio 45242
(380) 380-2023
(380) 203-2025 fax
jen@wsm-law.com
Attorney for Second Petitioner

9











Melisa Jenkins
Sustenance Design Cincy LLC
513-808-2044

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| MELISA JENKINS, | Case No. 1:25-cv-00449 |
| Plaintiff, | Judge Jeffery P. Hopkins |
| v. | Magistrate Judge Stephanie K. Bowman |
| RAJIB GARU, *et al.*, | **SECOND MOTION FOR AN** |
| Defendants. | **EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. P. 6(b)(1)(A), Plaintiff Melisa Jenkins hereby respectfully moves this Court for a second extension of time to respond to Defendants' Motion to Dismiss (ECF No. 3) by filing a memorandum in opposition pursuant to S.D. Ohio Civ. R. 7.2(a)(2) or by filing an amended complaint pursuant to Fed. R. Civ. P. 15(a). This Motion is being submitted for the Court's consideration prior to the expiration of time granted by the Court in response to Plaintiff's first motion for an extension of time (ECF No. 6). Plaintiff requests an additional 21 days to respond to Defendants' Motion due to undersigned counsel having been discharged as counsel for Plaintiff to allow Plaintiff to retain new counsel. If the Court grants this requested extension, Plaintiff shall have through September 4, 2025, to respond to Defendants' Motion by memorandum in opposition or by filing of an amended complaint.

This motion is filed contemporaneously with undersigned counsel's motion to withdraw as counsel for Plaintiff Melisa Jenkins.

1

Respectfully submitted,

/s/ *James A. Hamilton*

James A. Hamilton (0102638)
John H. Phillips (0043934)
PHILLIPS LAW FIRM, INC.
9521 Montgomery Road
Cincinnati, OH 45242
(513) 985-2500
(513) 985-2503 fax
JAH@PhillipsLawFirm.com
JHP@PhillipsLawFirm.com
*Attorneys for Plaintiff Melisa Jenkins*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served by the Court's CM/ECF

service this 4th day of September, 2025, on the following:

Anthony D. Maiorano, Esq.
The CMW Law Firm
14 E. Main St.
Fairborn, OH 45324
tony@cmwlawfirm.com
*Attorney for Defendants Rajib Garu and
Idealogiz Group, LLC*

/s/ *James A. Hamilton*

James A. Hamilton (0102638)
*Attorney for Plaintiff Melisa Jenkins*

2

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Melisa Jenkins | : | Case No. _____ |
| 4457 Mellwood Avenue | : | |
| Cincinnati, OH 45232 | : | |
| | : | Judge _____ |
| Plaintiff, | : | |
| Vs. | : | |
| | : | |
| Rajib Garu | : | **COMPLAINT FOR BREACHES OF** |
| 4140 Home Street | : | **CONTRACTS, REPLEVIN, CIVIL** |
| Cincinnati, OH 45236 | : | **THEFT, AND FRAUD** |
| | : | |
| And | : | **JURY DEMAND ENDORSED HEREON** |
| | : | |
| Idealogiz Group, LLC | : | |
| 4140 Home Street | : | |
| Cincinnati, OH 45236 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**NOW COMES THE PLAINTIFF MELISA JENKINS,** and for her Complaint against

Defendant Idealogiz Group, LLC and its sole member Defendant Rajib Garu, (collectively, the

"Defendants") and states as follows:

**GENERAL AVERMENTS**

1.      Plaintiff Melisa Jenkins is a resident of Hamilton County, Ohio.

2.      Defendant Rajib Garu is a resident of Hamilton County, Ohio.

3.      Defendant Idealogiz Group, LLC is an Ohio Limited Liability Company with its

principal place of business in Hamilton County, Ohio.

4.      Venue is appropriate with this Court as the Plaintiff Melisa Jenkins and the

Defendants either live in Hamilton County, have sufficient contacts with Hamilton County, and

1

the events set forth in the Complaint occurred in Hamilton County, and the real estate at issue in this case is located in Hamilton County, Ohio.

     5.    This Court has Personal Jurisdiction over all parties set forth in the Complaint.

     6.    This Court has Subject Matter Jurisdiction over all causes of action set forth in the Complaint.

     7.    All claims and causes of action set forth herein stem from the same transactions, or related transactions with common facts, are by and between the same or similarly situated parties and involve entities under common ownership.

### BACKGROUND INFORMATION RELATED TO THE CONTRACTS BY AND BETWEEN THE PARTIES.

#### A.    THE PROPERTY AT 3464 CHEVIOT, CINCINNATI, OHIO

     8.    Plaintiff Melisa Jenkins does construction, design, landscaping, and related services for residential properties.

     9.    Defendant Rajib Garu is a real estate agent principal broker believed to be licensed in the State of Ohio.

     10.    Defendant Rajib Garu is the sole member of Idealogiz Group, LLC.

     11.    On or about January 4, 2021, Defendant Rajib Garu individually entered into an agreement with Plaintiff Melisa Jenkins, a copy of which is attached hereto as Exhibit A.

     12.    At the time Defendant Rajib Garu entered into the agreement attached hereto as Exhibit A, Defendant Idealogiz Group, LLC is believed to have been under contract to purchase a property with the mailing address 3464 Cheviot, Cincinnati, Ohio.

     13.    Pursuant to the Agreement between the Plaintiff Melisa Jenkins and Defendant Rajib Garu, Plaintiff Melisa Jenkins would be entitled to purchase the 3464 Cheviot property from Defendant Rajib Garu for a fixed price of $80,000.

**Commented [JH1]:** Active License BRKP.2020005665. He previously held Real Estate Salesperson license SAL.20170031205

2

14.    To finance the renovations to 3464 Cheviot, Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu, agreed to loan Plaintiff Melisa Jenkins $30,000, to be secured by a mortgage on her individual property with mailing address known as 4457 Mellwood Avenue, Cincinnati, OH.

15.    The $30,000 loan was secured by a Promissory Note, Personal Guaranty, and Mortgage, copies of which are attached hereto as Exhibits B, C, and D, respectively.

16.    On or about February 5, 2021, an amendment to the Promissory Note was executed between Plaintiff Melisa Jenkins and Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu, increasing the loan amount to $90,000, as shown in Exhibit E.

17.    Simultaneously, on February 5, 2021, a revised mortgage was filed against the 4457 Mellwood Avenue Property as shown on Exhibit F attached hereto.

18.    The $90,000 borrowed from Defendant Idealogiz Group, LLC, by and through its sole member Defendant Rajib Garu, was used by Plaintiff Melisa Jenkins to renovate the property at 3464 Cheviot, adding appliances, cabinets, fixtures, lighting, doors, windows, and similar home improvements in anticipation of buying and living in the property at 3464 Cheviot.

19.    On May 17, 2021, to protect her investment in 3464 Cheviot Plaintiff Melisa Jenkins, as sole member of her construction company Sustenance Design Cincy, LLC filed a Mechanic's Lien against 3464 Cheviot in the amount of $75,000, a copy of which is attached hereto as Exhibit G.

20.    On or about June 30, 2021, in response to the mechanic's lien, Plaintiff Melisa Jenkins and Defendant Rajib Garu verbally agreed to resolve their dispute about the mechanic's lien and the mortgage and promissory note.

> **Commented [JH2]:** What dispute? Maybe one sentence before this to state that a dispute arose between the parties a to their liabilities to each other.

3

21.     The verbal agreement regarding the release of the mechanic's lien and the cancellation of the mortgage was reduced to a writing with a caption confirming that it was a Full and Final Release of Claims, a copy of which is attached hereto as Exhibit H.

22.     On June 30, 2021, Plaintiff Melisa Jenkins fulfilled her obligation set forth in Exhibit H, and she released the Mechanic's Lien against 3464 Cheviot as reflected in Exhibit I attached hereto.

23.     On September 13, 2021, instead of selling the 3464 Cheviot property to Melisa Jenkins for $80,000 as promised in Exhibit A, Defendant Idealogiz Group, LLC, by and through its sole member Defendant Rajib Garu, sold 3464 Cheviot to an unrelated third-party, Bayhorse LLC, for $120,000.

24.     Prior to selling 3464 Cheviot property to Bayhorse LLC, Defendant Rajib Garu removed the improvements installed by Plaintiff Melisa Jenkins in the home and repurposed the improvements to other properties owned by Defendant Rajib Garu or Defendant Idealogiz Group, LLC.

25.     Despite the verbal agreement that was set forth in Exhibit I, and relied upon by Plaintiff Melisa Jenkins to her detriment when she released the Mechanic's Lien against 3464 Cheviot, Defendant Ideologiz Group LLC, by and through its sole member Defendant Rajib Garu, has not released the Promissory Note and Mortgage attached to her property at 4457 Mellwood Avenue, Cincinnati, Ohio.

26.     Despite repeated requests to do so, Defendant Ideologiz Group LLC, by and through its sole member Defendant Rajib Garu, has not released the Promissory Note and Mortgage recorded against Plaintiff Melisa Jenkins' property at 4457 Mellwood Avenue, Cincinnati, Ohio.

27.     Plaintiff Melisa Jenkins now wishes to sell her property at 4457 Mellwood Avenue, but cannot due to the mortgage placed against her property by the Defendants, which must be released.

28.     Plaintiff Melisa Jenkins has requested a payoff amount for the mortgage by and through a title company that Plaintiff Melisa Jenkins retained to do the closing for the property at 4457 Mellwood Avenue, but the Defendants have refused to provide the information.

29.     Defendant Ideologiz Group LLC, by and through its sole member Defendant Rajib Garu, is obligated to provide and record with the County Recorder a satisfaction for the mortgage as set forth in R.C. 5301.36.

30.     Despite believing that she owes nothing to Defendant Idealogiz Group LLC nothing as to the Promissory Note and Mortgage related to her property at 4457 Mellwood Avenue, Plaintiff Melisa Jenkins has requested a "payoff statement."

31.     Defendant Rajib Garu as the sole member of Defendant Idealogiz Group, LLC is obligated to provide a payoff amount for the mortgage as set forth in 12 C.F.R. 1026.36(C)(3) which states in relevant part:

> (3) Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer.

32.     Defendant Rajib Garu as the sole member of Defendant Idealogiz Group, LLC has refused to provide a payoff amount for the mortgage as required by 12 C.F.R. 1026.36(C)(3).

33.     As set forth herein, Defendant Ideologiz Group LLC, by and through its sole member Rajib Garu, acted with actual malice, in bad faith, with hatred, ill will, and a spirit of revenge designed and calculated with the intent to harm Plaintiff Melisa Jenkins.

     **B.**    **CONSTRUCTION AND DESIGN SERVICES**

34.    Until May 17, 2021, Plaintiff Melisa Jenkins provided contract work to Defendant

Rajib Garu.

35.    The work provided to Defendant Rajib Garu by Plaintiff Melisa Jenkins was not to

be considered a gift, and was billed on a per project basis at an agreed upon price as follows:

      a.  1636 First Avenue Rehab: design and project management fee of $750

      b.  3614 Maria Avenue: design and project management fee of $750

      c.  1826 Pleasant Avenue: design and project management fee of $750

      d.  1218 Purcell Rehab: design and project management fee of $750

      e.  1242 Quebec Rehab: design and project management fee of $750

      f.  1118 Carson Rehab: design and project management fee of $750

      g.  206 Clinton Springs Rehab: design and project management fee of $750

      h.  2905 Cavanaugh Rehab: design and project management fee of $750

      i.  1607 Minion Rehab: design and project management fee of $750

      j.  5009 Limberlost Rehab: design and project management fee of $750

      k.  923 Rogers Rehab: design and project management fee of $750

      l.  3639 Glenmore Rehab: Plaintiff Melisa Jenkins was hired to clean, paint, and
          design for a fee of $2,500.

      m.  2424 Ridgewood Rehab: Plaintiff Melisa Jenkins was hired to perform repairs
          to landscaping but was not paid $200 of her fee.

      n.  1233 Dewey Repairs: Plaintiff Melisa Jenkins was hired to change locks and do
          a site evaluation for $750.

      o.  2680 Lehman, Unit C-504 Rehab: design and project management fee of $750

> **Commented [JH3]:** Why the change in syntax here? Was ~~———————————~~

p. McMakin Rehab: Plaintiff Melisa Jenkins was hired to complete the trash-out and clean-out at this project for $3,000.

q. 1038 Academy Rehab: Plaintiff Melisa Jenkins was to be paid a design fee in the amount of $3500.

36. As of June 17, 2021, Plaintiff Melisa Jenkins was owed $18,950 for consulting work provided to Defendant Rajib Garu.

37. As set forth herein, Defendant Ideologiz Group LLC, by and through its sole member Rajib Garu, acted with actual malice, in bad faith, with hatred, ill will, and a spirit of revenge designed and calculated with the intent to harm Plaintiff Melisa Jenkins.

## C.  TAKING, DETAINING, AND RECOVERY OF PERSONAL PROPERTY

38. As of June 17, 2021, Plaintiff Melisa Jenkins had personal property and furniture located at 2691 Lehman Rd. Cincinnati, OH 45204 ("2691 Lehman"), a personal Apartment over which Defendant Rajib Garu has exclusive possession.

39. The value of the personal possessions owned by Plaintiff Melisa Jenkins is $1,250.

40. Despite requests for the return of the personal property, Defendant Rajib Garu has refused to return the personal property at 2691 Lehman.

41. As of June 17, 2021, Plaintiff Melisa Jenkins had personal property, including work tools and equipment used in her business, at 3634 Cheviot Avenue.

42. The value of the tools and equipment located at 3634 Cheviot Avenue is $5,000.

43. Despite requests for the return of the personal property, Defendant Rajib Garu has refused to return the property at 3634 Cheviot Avenue.

44. As set forth herein, Defendant Ideologiz Group LLC, by and through its sole member Rajib Garu, acted with actual malice, in bad faith, with hatred, ill will, and a spirit of revenge designed and calculated with the intent to harm Plaintiff Melisa Jenkins.

### COUNT ONE – BREACH OF WRITTEN CONTRACT

45. Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

46. The document attached hereto as Exhibit A constitutes a valid and binding agreement between the Plaintiff Melisa Jenkins and Defendant Rajib Garu.

47. Under the terms of Exhibit A, Defendant Rajib Garu was required to sell the property at 3634 Cheviot for a price of $80,000 to Plaintiff Melisa Jenkins.

48. Defendant Rajib Garu refused to sell the property at 3634 Cheviot to Plaintiff Melisa Jenkins, even though Plaintiff Melisa Jenkins was ready, willing, and able to acquire the property upon the terms and conditions set forth in Exhibit A.

49. Defendant Rajib Garu has breached the contract set forth in Exhibit A.

50. Plaintiff Melisa Jenkins has been proximately harmed by Defendant Rajib Garu's breach of the contract set forth in Exhibit A.

51. Plaintiff Melisa Jenkins' damages are an amount far in excess of $25,000, in an amount to be determined at trial.

52. Because Defendant Rajib Garu's actions can be characterized by hatred, ill will, and a spirit of revenge, and were done with a conscious disregard for the rights of Plaintiff Melisa Jenkins that had a great probability of causing substantial harm, Plaintiff Melisa Jenkins further demands an award of punitive damages and attorneys' fees based on Defendant Rajib Garu's bad faith breach of contract.

**Commented [JH4]:** I was reading some case law on this recently, and it emphasized that attorney fees are only allowed in contract damages in accordance with the terms of the contract or in case of bad faith. Not sure if the other standard you've referenced comes up elsewhere, but I'd include the phrase "bad faith" somewhere just to ensure that it was pled.

8

## COUNT TWO – BREACH OF ORAL CONTRACT

53.     Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

54.     In the alternative, and with no intent to diminish any other cause of action set forth in this Complaint, Plaintiff Melisa Jenkins states that Plaintiff Melisa Jenkins and Defendant Rajib Garu entered into an oral contract the terms of which were for Plaintiff Melisa Jenkins to release the mechanic's lien placed against 3464 Cheviot in exchange for the Defendant Idealogiz Group, LLC and Defendant Rajib Garu to release the mortgage against the property at 4457 Mellwood.

55.     In reliance of the oral contract, Plaintiff Melisa Jenkins released the mechanic's lien against 3464 Cheviot.

56.     The Defendant Idealogiz Group, LLC and Defendant Rajib Garu now refuse to release the mortgage against the property at 4457 Mellwood.

57.     Defendant Rajib Garu has breached the oral contract whose terms are set forth in Exhibit H to this Complaint.

58.     Plaintiff Melisa Jenkins has been proximately harmed by Defendant Rajib Garu's breach of the oral contract as set forth in Exhibit H to this Complaint.

59.     Plaintiff Melisa Jenkins' damages are an amount far in excess of $25,000, in an amount to be determined at trial.

60.     Because Defendant Rajib Garu's actions can be characterized by hatred, ill will, and a spirit of revenge, and were done with a conscious disregard for the rights of Plaintiff Melisa Jenkins that had a great probability of causing substantial harm, Plaintiff Melisa Jenkins further demands an award of punitive damages and attorneys' fees.

**Commented [JH5]:** Bad faith

9

## COUNT THREE – UNJUST ENRICHMENT

61.     Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

62.     In the alternative, and with no intent to diminish any other cause of action set forth in this Complaint, Plaintiff Melisa Jenkins states that Plaintiff Melisa Jenkins and Defendant Rajib Garu entered into an oral contract the terms of which were for Plaintiff Melisa Jenkins to release the mechanic's lien placed against 3464 Cheviot in exchange for the Defendant Idealogiz Group, LLC and Defendant Rajib Garu to release the mortgage against the property at 4457 Mellwood.

63.     By releasing the mechanic's lien against 3464 Cheviot, a benefit has been conferred by Plaintiff Melisa Jenkins upon Defendant Idealogiz Group, LLC, and Defendant Rajib Garu.

64.     Defendant Idealogiz Group, LLC and Defendant Rajib Garu had knowledge of the benefit when Plaintiff Melisa Jenkins released the mechanic's lien.

65.     Defendant Idealogiz Group, LLC and Defendant Rajib Garu retained the benefit under circumstances where it would be unjust to do so without payment.

66.     Plaintiff Melisa Jenkins has been damaged by Defendant Idealogiz Group, LLC and Defendant Rajib Garu in the amount of the unpaid balance of the Promissory Note, and the Mortgage placed against her property at 4457 Mellwood.

67.     Plaintiff Melisa Jenkins' damages are an amount far in excess of $25,000, in an amount to be determined at trial.

68.     Because Defendant Rajib Garu's actions can be characterized by hatred, ill will, and a spirit of revenge, and were done with a conscious disregard for the rights of Plaintiff Melisa

Jenkins that had a great probability of causing substantial harm, Plaintiff Melisa Jenkins further

demands an award of punitive damages and attorneys' fees.

> **Commented [JH6]:** Not sure if there's "bad faith" UE...

### COUNT FOUR – BREACH OF CONTRACT FOR CONSTRUCTION AND DESIGN SERVICES

69. Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

70. Plaintiff Melisa Jenkins and Defendant Rajib Garu had an oral agreement for payment to be made to Plaintiff Melisa Jenkins for the construction and design services as set forth in this Complaint.

71. As of June 17, 2021, Plaintiff Melisa Jenkins was owed $18,950 for consulting work provided to Defendant Rajib Garu.

72. Defendant Rajib Garu breached the oral contract as of June 17, 2021, when he unilaterally declared that he would not pay the Plaintiff Melisa Jenkins the agreed upon amounts.

73. Plaintiff Melisa Jenkins has been proximately harmed by Defendant Rajib Garu's breach of the oral contract for construction and design services.

74. Plaintiff Melisa Jenkins damages are an amount equal to $18,950.

75. Because Defendant Rajib Garu's actions can be characterized by hatred, ill will, and a spirit of revenge, and were done with a conscious disregard for the rights of Plaintiff Melisa Jenkins that had a great probability of causing substantial harm, Plaintiff Melisa Jenkins further demands an award of punitive damages and attorneys' fees.

> **Commented [JH7]:** Bad faith

### COUNT FIVE – REPLEVIN

76. Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

77.     As of June 17, 2021, Plaintiff Melisa Jenkins has demanded that Defendant Rajib Garu return her personal property valued at $1,250 that was at Defendant Rajib Garu's personal apartment located at 2691 Lehman.

78.     As of June 17, 2021, Plaintiff Melisa Jenkins has demanded that Defendant Rajib Garu return her personal property valued at $5,000 that was at 3634 Cheviot Avenue and was being used by Plaintiff Melisa Jenkins to renovate the home that she was going to purchase.

79.     Defendant Rajib Garu has refused to turn over Plaintiff Melisa Jenkins' personal property, which Plaintiff Melisa Jenkins has a right to recover.

80.     Plaintiff Melisa Jenkins has been proximately harmed by Defendant Rajib Garu's refusal to allow Plaintiff Melisa Jenkins to recover her personal property.

81.     Plaintiff Melisa Jenkins' damages are an amount equal to $6,250, or such other amount as may be proven at the time of trial.

82.     Because Defendant Rajib Garu's actions can be characterized by hatred, ill will, and a spirit of revenge, and were done with a conscious disregard for the rights of Plaintiff Melisa Jenkins that had a great probability of causing substantial harm, Plaintiff Melisa Jenkins further demands an award of punitive damages and attorneys' fees.

## COUNT SIX – CIVIL THEFT

83.     Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

84.     Defendant Rajib Garu acted with bad faith in wrongfully converting property he knew belonged to Plaintiff Melisa Jenkins, and with the purpose of depriving her of said property forever.

85.     Defendant Rajib Garu's theft of property belonging to Plaintiff Melisa Jenkins was willful, wanton, and unjustified so as to entitle Plaintiff Melisa Jenkins to liquidated damages under R.C. 2307.61(A)(1)(b)(ii).

86.     Defendant Rajib Garu's actions in not returning Plaintiff Melisa Jenkins' property constitutes, at a minimum, grand theft, a fourth-degree felony under R.C. 2913.02(B)(2).

87.     The value of the property stolen is believed to be $6,250, or such higher or lower amount as determined at the time of trial.

88.     Pursuant to RC §2307.60 and RC §2307.61, Plaintiff Melisa Jenkins is entitled to recover compensatory damages equal to the value of the property and liquated damages in the amount of three (3) times the value of the property at the time it was the subject of a theft offense, reasonable administrative costs, and reasonable attorney's fees.

89.     Defendant Rajib Garu is civilly liable for his criminal acts in the State of Ohio.

90.     Plaintiff Melisa Jenkins is entitled to recover compensatory damages equal to the value of the property and liquated damages in the amount of three (3) times the value of the property at the time it was the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise, is destroyed or otherwise damaged, is modified or otherwise altered, or is resalable at its full market price, as set forth in R.C. 2307.61(A)(1)(b)(ii).

91.     As a direct and proximate result of Defendant Rajib Garu's acts of theft, Plaintiff Melisa Jenkins has suffered damages in the amount of $6,250 or such other amount as is proven at the time of trial, plus liquidated damages equal to three times the actual damages equaling $18,750, or such amount as is equal to three times the value of the property not returned to Plaintiff Melisa Jenkins as is proven at the time of trial, plus reasonable attorney's fees, and expenses as the result of Defendant Rajib Garu's civil theft.

13

**COUNT SEVEN – FRAUD**

92.    Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

93.    The foregoing course of conduct by Defendant Rajib Garu was for the purpose, in whole or in part, of uniformly misleading and fraudulently inducing Plaintiff Melisa Jenkins to enter into the attached Agreements, Exhibits A through I.

94.    Defendant Rajib Garu knowingly, maliciously, and continuously misrepresented his intentions of honoring the terms and conditions of the Agreements attached to this Complaint as Exhibits A through I throughout his negotiations and relationship with Plaintiff Melisa Jenkins.

95.    Defendant Rajib Garu's misrepresentations and omissions were knowingly deceptive, unconscionable, fraudulent, and were done with the intent of inducing Plaintiff Melisa Jenkins to enter into the Agreements attached to this Complaint as Exhibits A through I.

96.    At the time he entered into the Agreements attached hereto as Exhibits A through I, Defendant Rajib Garu knew full well at the time that:

   a. Defendant Rajib Garu had no intentions of the following selling the property at 3464 Cheviot to Plaintiff Melisa Jenkins for $80,000;

   b. Defendant Rajib Garu had no intention of releasing the mortgage that he placed against Plaintiff Melisa Jenkins residence at 4457 Mellwood; and

   c. Defendant Rajib Garu had no intentions of paying Plaintiff Melisa Jenkins for the Construction and Design work being performed for his other properties as set forth herein.

97.    Plaintiff Melisa Jenkins had no way of knowing that Defendant Rajib Garu was misrepresenting his intentions to honor the Agreements as set forth in this Complaint and attached

14

as Exhibits A through I, and had no way of discovering Defendant Rajib Garu's misrepresentations prior to entering into the Agreements set forth herein and attached as Exhibits A through I to this Complaint.

98.     Plaintiff Melisa Jenkins justifiably relied to her detriment upon Defendant Rajib Garu's above misrepresentations and omissions not knowing that Defendant Rajib Garu was a liar as to his intentions of honoring the Agreements set forth herein and attached as Exhibits A through I, and was planning to be a thief as to the Plaintiff Melisa Jenkins money, services, and personal property.

99.     As a direct and proximate result of Defendant Rajib Garu's fraudulent representations and omissions, both individually and through Idealogiz Group, LLC, Plaintiff Melisa Jenkins has been damaged in an amount far in excess of $25,000 in an amount to be proven at the time of trial, but believed to be approximately of $235,200, consisting of the current Zillow® estimated value of the property at 3464 Cheviot for $204,600.00 minus the $80,000 that she had agreed to pay for 3464 Cheviot, plus the value of the mortgage placed against her home in the amount of $90,000 that Defendant Rajib Garu refuses to release, plus the value of the construction and design work performed for Defendant Rajib Garu in the amount of $18,950, plus the value of the stolen personal property at $6,250, or such other amounts as to be proven at trial, plus costs, interest, and attorney fees.

100.    Because Defendant Rajib Garu's conduct was willful, malicious, and motivated by profit, Plaintiff Melisa Jenkins is entitled to punitive damages in order to deter Defendant Rajib Garu from engaging in a similar future course of conduct.

15

### COUNT EIGHT – PIERCING THE CORPORATE VEIL

Formatted: Keep with next

101.    Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

102.    Defendant Rajib Garu had exclusive control over Defendant Idealogiz Group, LLC and his control was so complete that the corporation has and had no separate mind, will, or existence of its own.

103.    Defendant Rajib Garu and Defendant Idealogiz Group, LLC were the alter ego of each other.

104.    Defendant Rajib Garu had exclusive control over Defendant Idealogiz Group, LLC and his control was exercised in such a manner as to commit fraud, an illegal, and/or an unlawful act against Plaintiff Melisa Jenkins.

105.    Defendant Rajib Garu misused his control of Defendant Idealogiz Group, LLC to commit specific, egregious actions through Defendant Idealogiz Group, LLC that caused injury and/or unjust loss to Plaintiff Melisa Jenkins from such control and wrongdoing.

106.    Plaintiff Melisa Jenkins is entitled to pierce the corporate veil of Defendant Idealogiz Group, LLC.

107.    It would be unjust to allow the Defendant Rajib Garu, as the sole member of Defendant Idealogiz Group, LLC to use the corporate form as a shield to escape the consequences of the wrongful acts committed against Plaintiff Melisa Jenkins.

108.    Plaintiff Melisa Jenkins is entitled to pierce the corporate veil and collect directly from Defendant Rajib Garu because the corporate identity of Defendant Idealogiz Group, LLC may be disregarded due to the wrongs committed by Defendant Idealogiz Group, LLC.

16

109.    By piercing the corporate veil, Plaintiff Melisa Jenkins is entitled to collect from Defendant Rajib Garu any amounts owed that are related to the above causes of action which might otherwise be attributable to Defendant Idealogiz Group, LLC.

### COUNT NINE – TRUTH IN LENDING ACT VIOLATIONS

110.    Each and every prior allegation set forth in this Complaint is restated as if fully set forth in this Paragraph of the Complaint.

111.    In the alternative, and with no intent to diminish any other cause of action set forth in this Complaint, Plaintiff Melisa Jenkins states that should it be determined that Defendant Idealogiz Group, LLC holds a valid mortgage against the property at 4457 Mellwood, Plaintiff Melisa Jenkins asserts the following cause of action.

112.    Plaintiff Melisa Jenkins is a consumer within the meaning of the Truth in Lending Act ("TILA"), 15 U.S.C. 1602(i).

113.    Defendant Idealogiz Group, LLC extended consumer credit regularly and on multiple occasions to Plaintiff Melisa Jenkins for which the payment of a finance charge was required and thus was and is a creditor within the meaning of TILA, 15 U.S.C. 1602(g).

114.    The mortgage loan was and is a consumer credit transaction within the meaning of TILA, 15 U.S.C. 1602 and Regulation Z, 12 C.F.R. 1026.2(a)(12).

115.    Each action or inaction alleged herein against Defendant Idealogiz Group, LLC is also an allegation of action or inaction by its sole member Defendant Rajib Garu, as appropriate.

116.    Plaintiff Melisa Jenkins executed the promissory notes and mortgages attached hereto as Exhibits B though G on the dates indicated on the documents, (collectively, the "Mortgage Loan").

17

117. The Mortgage Loan was secured by a lien on residential real property commonly known as 4457 Mellwood Avenue, Cincinnati, OH 45232 (the "Property").

118. The residence on the Property is a single-family residence, occupied by Plaintiff Melisa Jenkins as her principleprincipal dwelling.

119. The Mortgage Loan was and is subject to a finance charge agreement. 15 U.S.C. 1602(f).

120. The Mortgage Loan was and is a consumer credit transaction within the meaning of TILA, 15 U.S.C. 1602 and Regulation Z, 12 C.F.R. 1026.2(a)(12).

121. On or about March 1, 2025, Plaintiff Melisa Jenkins through a title company acting on her behalf requested a payoff quote in writing from Defendant Idealogiz Group, LLC.

122. Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu refused to provide a payoff amount, unless and until Plaintiff Melisa Jenkins gave a copy of the purchase agreement for the sale of the Property to him.

123. Plaintiff Melisa Jenkins has received a legitimate offer to sell the Property, but because no payoff quote was furnished by Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu, the offer could not be accepted.

124. Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu did not provide Plaintiff Melisa Jenkins with a payoff amount for the Mortgage Loan within seven business days of a request for the same.

125. Up to the date of the filing of this Complaint, Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu has not provided Plaintiff Melisa Jenkins with a payoff amount for the Mortgage Loan alleged to be owed.

126. Without a payoff quote, Plaintiff Melisa Jenkins is unable to sell her home to a

18

127.    For all the reasons stated herein, Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu violated TILA and are liable to the Plaintiff Melisa Jenkins.

128.    Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu failed to provide the Plaintiff Melisa Jenkins an accurate payoff balance within seven business days of receipt of a written request from or on behalf of Plaintiff Melisa Jenkins as required by 15 U.S.C. 1639(t)(2) and 12 C.F.R. 226.36(c)(1)(iii).

129.    Defendant Idealogiz Group, LLC by and through its sole member Defendant Rajib Garu are liable to Plaintiff Melisa for the violations of the TILA in an amount of at least ; the Plaintiff Melisa Jenkins' maximum actual damages (totaling at least $385,000), ); statutory damages of at least $4,000; and the costs of this action and attorney's fees, pursuant to 15 U.S.C. 1640(a).

**WHEREFORE**, Plaintiff Melisa Jenkins prays for judgment against Defendant Rajib Garu and Defendant Idealogiz Group, LLC, jointly and severally, as follows:

**AS TO COUNT ONE,** damages in an amount far in excess of $25,000, in an amount to be proven at the time of trial; and

**AS TO COUNT TWO,** damages in an amount far in excess of $25,000, in an amount to be proven at the time of trial; and

**AS TO COUNTS THREE,** damages in an amount far in excess of $25,000, in an amount to be proven at the time of trial; and

**AS TO COUNT FOUR,** damages in an amount equal to $18,950, or such other amount as will be proven at the time of trial; and

19

**AS TO COUNT FIVE,** a return of all of Plaintiff Melisa Jenkins' personal property and/or damages in an amount equal to $6,250 should it be determined by the trier of fact that the personal property is no longer recoverable, or such other amount as will be proven at the time of trial; and

**AS TO COUNT SIX,** damages in an amount equal to $6,250, (consisting of the value of the personal property subject to replevin), plus an aware of punitive damages in an amount not less than three times the amount of actual damages for an additional $18,750 or more so that the amount is sufficient to deter Defendant Rajib Garu and all others who intend to imitate the actions of Defendant Rajib Garu from engaging in a similar future course of conduct, plus costs, attorney fees, pre-judgment and post-judgment interest; and

**AS TO COUNT SEVEN,** damages in an amount far in excess of $25,000, in an amount to be proven at the time of trial; and

**AS TO COUNT EIGHT,** a finding by the trial court that Plaintiff Melisa Jenkins is entitled to pierce the corporate veil and hold Defendant Rajib Garu and Defendant Idealogiz Group, LLC jointly and severally liable for each other's actions; and

**AS TO COUNT NINE,** damages in the amount of at least $385,000, plus statutory damages of at least $4,000; and the costs of this action and attorney's fees to be established at trial; and

**AS TO EACH AND EVERY COUNT,** punitive damages in an amount sufficient to deter Defendant Rajib Garu and all others who intend to imitate the actions of Defendant Rajib Garu from engaging in a similar future course of conduct, plus costs, attorney fees, pre-judgment and post-judgment interest, and for such further relief in law or equity that this Court deems just and proper.

Respectfully submitted,

20

_____ /s/ *John H. Phillips*_____

John H. Phillips (0043934)
James A. Hamilton (0102638)
*Phillips Law Firm, Inc.*
9521 Montgomery Road
Cincinnati, OH 45242
Email: JHP@PhillipsLawFirm.com
☎ (513) 985-2500
☎ FAX (513) 985-2503
*Trial Attorneys for Plaintiff Melisa Jenkins*

21

**JURY DEMAND**

With the filing of this lawsuit, Plaintiff Melisa Jenkins demands a trial by Jury as to all issues so triable.

Respectfully submitted,

/s/ *John H. Phillips*

John H. Phillips (0043934)
*Phillips Law Firm, Inc.*
9521 Montgomery Road
Cincinnati, OH 45242
Email: JHP@PhillipsLawFirm.com
☏ (513) 985-2500
☏ FAX (513) 985-2503
*Trial Attorneys for Plaintiff Melisa Jenkins*

22