**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MELISA JENKINS,

    *Plaintiff,*

vs.

RAJIB GARU, *et al.*,

    *Defendants.*

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:25-cv-449

Judge Jeffery P. Hopkins

---

## OPINION AND ORDER

---

Plaintiff Melisa Jenkins ("Plaintiff" or "Jenkins"), now proceeding pro se,[1] initiated this breach of contract action against Defendants Rajib Garu ("Garu") and Idealogiz Group, LLC ("Idealogiz") (collectively, "Defendants") on April 3, 2025 in the Hamilton County Court of Common Pleas. Doc. 1-1. Garu and Idealogiz removed the action to this Court pursuant to 28 U.S.C. § 1331 because in Count IX of her Complaint, Jenkins asserts a Truth in Lending Act claim. This matter is presently before the Court on Defendants' Motion to Dismiss (Doc. 3), to which Jenkins filed a Response (Doc. 14). Upon receipt of Defendants' Reply (Doc. 15), this matter became ripe for consideration. For the reasons stated below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiff was originally represented by counsel. However, this Court permitted Plaintiff's counsel to withdraw on August 14, 2025. *See* Minute Entry, Aug. 14, 2025. Against the Court's recommendation, Plaintiff has not retained new counsel and has elected to represent herself in this action.

## I.     BACKGROUND

### A. The Cheviot and Mellwood Properties

The origins of this messy interpersonal dispute date back to January 2021, when Jenkins entered into an agreement with Garu, a real estate broker and Jenkins' former romantic partner, to purchase property (the "Cheviot property") from Garu for a fixed price of $80,000. Compl., Doc. 2, ¶¶ 11, 13; Pl. Ex. A, Doc. 2, PageID 94–96. Garu, was the sole member of Idealogiz, an Ohio limited liability company, and it is believed that Idealogiz was under contract to purchase the Cheviot property at the time of Garu and Jenkins' agreement. Compl., Doc. 2, ¶ 12. Jenkins, who works in construction and design, planned to renovate the Cheviot property. To finance the renovations, Idealogiz through its sole member, Garu, agreed to loan $30,000 to Jenkins, to be secured by a mortgage on her individual property (the "Mellwood property"). Compl., Doc. 2,  ¶ 14. The loan was secured by a promissory note, personal guaranty, and mortgage. *Id.* ¶ 15; *see also* Pl. Ex. B, Doc. 2, PageID 97–102; Pl. Ex. C, Doc. 2, PageID 103–04; Pl. Ex. D, Doc. 2, PageID 105–07. In February 2021, Jenkins and Idealogiz executed an amendment to the promissory note, by and through Idealogiz's sole member, Garu, increasing the loan amount to $90,000. Compl., Doc. 2, ¶ 16; Pl. Ex. E, Doc. 2, PageID 108–10. At the same time, the parties filed a revised mortgage against the Mellwood property. Compl., Doc. 2, ¶ 17; Pl. Ex. F, Doc. 2, PageID 111–12.

Plaintiff used the $90,000 loan from Idealogiz to renovate the Cheviot property.[2] Compl., Doc. 2, ¶ 18. To protect her investment at the Cheviot property, Jenkins, as the sole member of her construction company, Sustenance Design Cincy, LLC, filed a mechanics lien

---

[2]   Based on information gleaned from Jenkins' bankruptcy filings, it appears that Jenkins' romantic relationship with Garu soured around the time Jenkins completed the renovations, and their plans to move into the Cheviot property together did not come to fruition. Def. Ex. A, Doc. 3-1, ¶ 12.

against the property in the amount of $75,000. Compl., Doc. 2, ¶ 19; Pl. Ex. G, Doc. 2, PageID 113–16. However, shortly thereafter, Jenkins and Garu verbally agreed to resolve the mechanic's lien, along with the mortgage and the promissory note. Compl., Doc. 2, ¶ 20. The verbal agreement was later reduced to writing. Compl., Doc. 2, ¶ 21; Pl. Ex. H, Doc. 2, PageID 117–20. Jenkins fulfilled her obligation under that agreement and released the mechanics lien. Compl., Doc. 2, ¶ 22; Pl. Ex. I, Doc. 2, PageID 121–23.

But rather than sell the Cheviot property to Jenkins, Idealogiz through its sole member, Garu, sold the property to an unrelated third party, and then removed the improvements that Jenkins installed at the Cheviot property and repurposed them for other properties owned by Idealogiz or Garu. *Id.* ¶¶ 23–24. Despite taking these actions, and Jenkins' release of the mechanics lien, Idealogiz has not released the promissory note and mortgage attached to the Mellwood property. *Id.* ¶¶ 25–26. Jenkins wants to sell the Mellwood property but she cannot sell it as a result of the pending mortgage. *Id.* ¶ 27. Jenkins has requested a payoff amount for the mortgage, but to date, Defendants have refused to provide the information. *Id.* ¶¶ 28, 30.

Additionally, while renovating the Cheviot property, Jenkins also provided contract work to Garu based on an oral agreement between them. *Id.* ¶¶ 34, 70. She worked at approximately seventeen different properties and billed her work on a per project basis. *Id.* ¶ 35. As of June 17, 2021, she was owed $18,950.00. *Id.* ¶ 36. On that date, Garu unilaterally declared that he would not pay Jenkins the agreed amounts. *Id.* ¶ 72.

Beyond this, Jenkins also alleges that Garu has unlawfully retained her personal property. Jenkins asserts that she had personal property and furniture at Garu's personal apartment, and that the value of said property was $1,250.00. *Id.* ¶ 38. Jenkins also had personal belongings at the Cheviot property, including "work tools and equipment used in

3

her business," with a value of $5,000.00. *Id.* ¶¶ 41, 42. Jenkins requested that her property be returned, but Garu has refused her requests. *Id.* ¶¶ 40, 43.

As a result of these events, Jenkins asserts claims for breach of written contract, breach of oral contract, unjust enrichment, breach of contract for construction and design services, replevin, civil theft, fraud, piercing the corporate veil, and violations under the Truth in Lending Act. *Id.* ¶¶ 45–129.

## II.      STANDARD OF REVIEW

Defendants Rajib Garu and Idealogiz Group, LLC seek to dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he

4

has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III. LAW AND ANALYSIS

As stated, Jenkins asserts the following claims against Idealogiz and Garu: (1) breach of written contract, (2) breach of oral contract, (3) unjust enrichment, (4) breach of contract for construction and design services, (5) replevin, (6) civil theft, (7) fraud, (8) piercing the corporate veil, and (9) violations under the Truth in Lending Act. Compl., Doc. 2, ¶¶ 45–129. Defendants ask the Court to dismiss all of Jenkins' claims. Doc. 3, PageID 128–41.

### A. Counts 1, 2, 3, and 7: Breach of Oral Contract, Breach of Written Contract, Unjust Enrichment, and Fraud

Defendants seek dismissal of four of Jenkins' claims on the basis that these claims are barred by res judicata as a result of Jenkins' prior adversary proceeding in the United States Bankruptcy Court for the Southern District of Ohio. Doc. 3, PageID 128–30. In that adversary proceeding, Jenkins asserted claims against Garu and Idealogiz.[3] *See* Def. Ex. 1, Doc. 3-1. That adversary proceeding, however, was dismissed as a result of an "abandoned

---

[3] *Darden v. Montgomery Cnty. Bd. of Comm'rs*, No. 3:22-cv-264, 2023 WL 3764272, at *5 (S.D. Ohio June 1, 2023) ("On a motion to dismiss, a court considering an affirmative defense of *res judicata* may take judicial notice of public records including judicial proceedings.") (citations omitted).

prosecution" on January 5, 2023. Def. Ex. 2, Doc. 3-2. In her response to Defendant's Motion, Jenkins argues that res judicata does not apply. Doc. 14, PageID 281.

As an initial matter, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Though Jenkins makes no mention of her bankruptcy proceeding in her Complaint, Defendants refer to Jenkins' bankruptcy court proceedings and the documents available on the public docket. "These are public records which may be considered by the Court in ruling on a Rule 12(b)(6) motion to dismiss," so the Court can properly consider those here. *Newman v. Univ. of Dayton*, No. 3:17-cv-179, 2017 WL 4919225, at *3 (S.D. Ohio Oct. 21, 2017).

Turn then to res judicata argument. Res judicata applies when the following elements are established: "(1) a final decision on the merits by a court of competent jurisdiction; (2) . . . the same parties or their privies; (3) an issue [that] was litigated or which [c]ould have been litigated in the prior action; and (4) an identity of the causes of action." *Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016) (quoting *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009)) (internal quotation marks omitted). This can apply to bankruptcy proceedings. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (applying res judicata to orders from a prior bankruptcy proceeding); *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (bankruptcy orders satisfy the first element).

### 1. Final decision on the merits

Under the first element, a movant must show that there was a final decision on the merits. *Hogan*, 823 F.3d at 884. Jenkins asserts there was not a final decision on the merits because her adversary proceeding was dismissed without prejudice. The issue for Jenkins, however, is that the order of dismissal did not expressly state whether her adversary proceeding was dismissed with or without prejudice. Def. Ex. 2, Doc. 3-2.

To decide whether the adversary proceeding was dismissed with or without prejudice, and thereby whether the order of dismissal was a final decision on the merits, we must look to the applicable rules—here, Rule 7041 of the Federal Rules of Bankruptcy Procedure and Rule 41 of the Federal Rules of Civil Procedure. Notwithstanding some exceptions that do not apply here, Rule 41 of the Federal Rules of Civil Procedure governs dismissal in bankruptcy adversary proceedings. Fed. R. Bank. P. 7041. Rule 41(b) provides that:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). Though this rule contemplates dismissal upon a motion by the defendant, it is well established that a court may order dismissal under Rule 41(b) sua sponte or, on its own motion. *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). To that end, a court has the discretion to dismiss a case under Rule 41(b) when a party has actual "notice that dismissal is contemplated." *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988).

That is exactly what occurred in this case. The bankruptcy court issued an order advising that "the parties appeared to have abandoned prosecution" because the parties failed to file pretrial statements by the deadline provided for in the scheduling order. Def. Ex. 2,

7

Doc. 3-2, PageID 166. The bankruptcy court then ordered the parties to file written memoranda within 21 days to show "why the adversary proceeding should continue." *Id.* The bankruptcy court advised that if they failed to file a response, the proceeding would be dismissed. *Id.* Neither party responded to the court's order. As a result of the repeated failures, the bankruptcy court dismissed the adversary proceeding. *Id.* Because that order did not state otherwise, dismissal of the adversary proceeding "operate[d] as an adjudication on the merits," Fed. R. Civ. P. 41(b), and the "principles of res judicata prevent any relitigation of the matter," provided that the remaining three elements of res judicata can be established. *Sanders v. Wells Fargo Dealer Servs.*, Adv. Proc. No. 19-00195, 2020 Bankr. LEXIS 1645, at *8 (Bank. W.D. Tenn. May 15, 2020) (citing *Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011)).

### 2. Same parties or privies

The second element of res judicata is clearly satisfied. It is undisputed that this case and the adversary proceeding involve the same parties: Jenkins, Garu, and Idealogiz. Def. Ex. 1, Doc. 3-1.

### 3. Issue that was or could have been litigated and identity of causes of action

The third and fourth elements are best addressed together. The third element requires "an issue in the subsequent action which was litigated or which should have been litigated in the prior action," *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006), and the fourth element demands "an identity of the causes of action." *Id.* In other words, there must be "an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). "Where the two causes of action arise from the 'same transaction, or series of transactions,' both causes should be litigated in the first action." *Hivner v. Active Elec., Inc.*, 878 F. Supp. 2d 897, 904

(S.D. Ohio 2012) (quoting *Rawe*, 462 F.3d at 529). *See also Mitchell v. Chapman*, 343 F.3d 811, 824 (6th Cir. 2003) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) ("The central purpose of claim preclusion is to prevent the 'relitigating of issues that were or could have been raised in [a prior] action.'"). Here, Defendants argue that four of Jenkins' claims arise from the same transaction or series of transactions. Jenkins offers no response.

The third and fourth elements are readily satisfied here. In the adversary proceeding, Jenkins asserted two claims against Idealogiz and Garu: (1) an unjust enrichment claim, wherein she sought for the Mellwood property mortgage to be voided, and (2) a fraud claim, premised on Idealogiz's and Garu's failure to turn over proceeds of the sale of the Cheviot property or cancel the mortgage on the Mellwood property after Jenkins had used funds secured by the Mellwood mortgage to improve the Cheviot property. Def. Ex. 1, Doc. 3-1, PageID 144–46. In the instant case, Jenkins asserts those same unjust enrichment and fraud claims, and advances breach of contract claims that could have been raised in the adversary proceeding because those claims pertain to the written and verbal agreements regarding the sale of the Cheviot property to Jenkins and Defendants' supposed intention to release the mortgage on the Mellwood property, following Jenkins' release of the mortgage lien. Both the claims asserted in this action and in the adversary proceeding clearly arise from the "same transaction, or series of transactions." *See Rawe*, 462 F.3d at 529.

Because all four elements are met, Jenkins' claims for breach of written contract (Count 1), breach of oral contract (Count 2), unjust enrichment (Count 3), and fraud (Count 7) are barred by the doctrine of res judicata and therefore must be dismissed with prejudice.

### B. Counts 4, 5, 6: Breach of Contract for Construction and Design Services, Replevin, and Civil Theft

Defendants likewise seek dismissal of three of Jenkins' claims against Idealogiz and Garu on the basis that these claims are barred by judicial estoppel again stemming from Jenkins' bankruptcy proceeding.[4] Doc. 3, PageID 130–32. Jenkins does not address Defendants' arguments about judicial estoppel in her response.

Judicial estoppel is an equitable doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (quoting *Pegram v. Hedrich*, 530 U.S. 211, 227 n.8 (2000)). The purpose is "to protect the integrity of the judicial process." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982). "When a separate bankruptcy proceeding is involved, judicial estoppel bars an undisclosed suit when: '(1) the debtor assumed a position contrary to one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence." *Stanley v. FCA United States LLC*, 51 F.4th 215, 219 (6th Cir. 2022 (quoting *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013)).

Section 521 of the Bankruptcy Code provides that a debtor must file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs, among various other documents and records. 11 U.S.C. § 521(a)(1)(B). "A civil cause of action is an asset that must be disclosed in the debtor's schedule

---

[4] Defendants ask for dismissal of Counts 1 through 7 against Idealogiz and Counts 4 through 6 against Garu based on judicial estoppel. However, because Counts 1, 2, 3, and 7 are subject to dismissal due to res judicata, the Court will limit its consideration to the remaining applicable counts: 4, 5, 6.

of assets pursuant to Section 521." *Newman*, 2017 WL 4919225, at *5. *See also Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). A debtor has a continuing duty of disclosure in bankruptcy, and this duty extends to all potential causes of action. *Id.*

### 1. Idealogiz

In her bankruptcy proceeding, Jenkins listed Idealogiz as a creditor but failed to disclose any claims in her petition. When asked about claims against third parties, Jenkins identified only that she "has a claim against Rajib Garu for at least $90,000." Def. Ex. 5, Doc. 3-5, PageID 183. Further, Jenkins indicated in her petition she had no other contingent or unliquidated claims of any nature. *Id.* Jenkins' pursuit of her claims against Idealogiz in this action, which accrued prior to the filing of her bankruptcy case, is directly contrary to her bankruptcy petition and schedules filed under penalty of perjury at the initiation of that proceeding. *See Schultz v. Hydro-Gear Ltd. P'ship*, No. 5:12–cv–10, 2012 WL 3527068, at *4 (W.D. Ky. Aug. 15, 2012). In accord with Sixth Circuit jurisprudence, the bankruptcy court adopted that position when it confirmed Jenkins' Chapter 13 plan. *See In re: Jenkins*, No. 22-10063 (Bank. S.D. Ohio Dec. 13, 2022). "[W]hen a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position." *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988). The first two elements of judicial estoppel are met as to Idealogiz.

That brings us to whether the omission was the result of mistake or inadvertence. "Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'" *White v. Wyndham Vacation Ownership,*

*Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning*, 283 F.3d at 776). A court may also consider whether "the evidence indicates an absence of bad faith." *Id.* at 478. Here, there is no question that Jenkins had knowledge of the factual basis of the undisclosed claims. However, it is not readily apparent at this juncture whether Jenkins had a motive to conceal the claims against Idealogiz, or that she acted in bad faith. In her petition, Jenkins disclosed that she had a claim against Garu, and Garu is the sole member of Idealogiz, a limited liability company, that was also disclosed as a creditor in her petition. During the course of the bankruptcy proceedings, and before the bankruptcy court confirmed Jenkins' Chapter 13 plan, Jenkins filed her adversary proceeding against Garu and Idealogiz. So, by all accounts, it does not appear that Jenkins was seeking to actively conceal her claims against Idealogiz.

Because "the doctrine of judicial estoppel is utilized in order to preserve the 'integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship,'" the Court cannot, on these facts alone, rule out mistake or inadvertence on Jenkins' part. *Browning*, 283 F.3d at 776 (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

### 2. Garu

Garu argues that judicial estoppel applies to the claims against him because Jenkins did not expressly identify each of her claims in the bankruptcy petition. He contends that although Jenkins alleged a claim against Garu in the amount of "at least $90,000," her assertion pertained only to the promissory note secured by the Mellwood property (by virtue of her adversary proceeding) and not her claims for consulting services or deprivation of personal property. Doc. 3, PageID 131–32. As with Idealogiz, it is not apparent on these facts that Jenkins had motive to conceal her claims against Garu, especially when her petition

12

suggested that her claim against Garu could be in excess of $90,000. This Court, therefore, declines to find that judicial estoppel applies to Counts 4 through 6 against Garu.

### C. Count 4: Breach of Contract for Construction and Design Services

Separately, Defendants contend that Jenkins' claim for breach of contract for construction and design services is barred by the statute of limitations. Ohio Rev. Code § 2305.07(A) provides that "an action upon a contract not in writing, express or implied, shall be brought within four years after the cause of action accrued." Defendants argue that Jenkins' assertion that the breach happened on June 17, 2021 "is not based on well-pled facts" because "when the services were to be provided, and the dates [Jenkins] actually performed the agreement are notably missing from the complaint." Doc. 3, PageID 132–33. Defendants also assert that it is "likely" that her claim accrued prior to June 1, 2021, and prior to April 3, 2021, which was four years before Jenkins filed her Complaint. *Id.* at PageID 133.

Defendants' argument in this regard is not persuasive. Under Ohio law, a plaintiff states a claim for breach of contract where there is (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citations omitted). Here, Jenkins alleges (1) that she and Garu had an oral agreement for payment to Jenkins for construction and design services, (2) that she provided consulting work to Garu and was owed $18,950, (3) that Garu breached the agreement as of June 17, 2021, when he unilaterally declared he would not pay Jenkins for the work she performed, and (4) that she suffered damages as a result of the breach. Compl., Doc. 2, ¶¶ 69–75. When drawing all reasonable inferences in favor of Jenkins, it is entirely plausible that the breach occurred on June 17, 2021. There is no allegation that Garu was required to pay

Jenkins for services on a certain date, or that he had missed any payment deadlines—just that he unilaterally declared that he would not pay Jenkins on June 17, 2021. Accepting her allegations as true, Jenkins filed her claim within the four-year statute of limitations.

Jenkins' claim for breach of contract for construction and design services is therefore not subject to dismissal.

### D. Count 5: Replevin

Defendants assert that Jenkins' claim for replevin must be dismissed because Jenkins has failed to describe the property at issue with particularity.

"A replevin suit simply seeks to recover goods from one who wrongfully retains them at the time the suit is filed. Replevin does not even require an 'unlawful taking.' The plaintiff in replevin need only prove that he is entitled to certain property and that the property is in the defendant's possession." *Wysocki v. Oberlin Police Dept.*, 2014-Ohio-2869, ¶ 7 (9th Dist.) (quoting *Wilson v. Jo-Ann Stores, Inc.*, 2012-Ohio-2748, ¶ 11 (9th Dist.)). "Specific personal property 'must be described with sufficient clarity,'" such that the property is "capable of identification and delivery." *Walther v. Central Trust Co., N.A.*, 70 Ohio App.3d 26, 32 (2d Dist. 1990). In other words, "unless the chattel [] is so described that it may be identified by reasonable means, the right to possession means nothing." *Id.* (quoting *Lyons v. Sherman*, 245 Iowa 378, 381 (1954)).

The Court agrees that Jenkins has failed to describe the personal property at issue with sufficient clarity. Jenkins alleges that Garu had possession of her property at two separate locations: Garu's personal apartment and the Cheviot property. Compl., Doc. 2, ¶¶ 38–44, 76–82. She asserts that the property at each location is valued at $1,250 and $5,000, respectively, and that some of the property in Garu's possession includes "work tools and

14

equipment used in her business." *Id.* Jenkins, however, has made no other effort to describe the personal property that she alleges is in Garu's possession, and therefore has failed to identify the property in a manner that would deem it capable of identification and delivery. *Walther*, 70 Ohio App.3d at 32. Accordingly, Jenkins has not adequately pled a replevin claim, so the Court will dismiss this claim without prejudice.

### E. Count 6: Civil Theft

Defendants also seek dismissal of Jenkins' civil theft claim on the basis that Jenkins failed to sufficiently describe the property at issue.

A property owner may bring a civil action under Ohio Rev. Code § 2307.60(A) "to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property." *Semco, Inc. v. Sims Bros., Inc.*, 2013-Ohio-4109, ¶ 15 (3d Dist.). A person has committed a theft offense when the person has "with purpose to deprive the owner of property or services, [] knowingly obtain[ed] or exert[ed] control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat; (5) By intimidation." Ohio Rev. Code § 2913.02(A). Similar to her replevin claim, the Complaint does not give Defendants "fair notice of what the [civil theft] claim is and the grounds upon which it rests," *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), because Jenkins has not sufficiently identified the property at issue. As a result, this claim is dismissed without prejudice.

15

### F.  Count 8: Piercing the Corporate Veil

In her next claim, Jenkins seeks to hold Defendants liable for piercing the corporate veil. Compl., Doc. 2, ¶¶ 101–109. Defendants correctly state that they are entitled to dismissal of this claim as it is not a valid cause of action. "[P]iercing the corporate veil is not a claim, it is a remedy encompassed within a claim, whereby liability for a particular tort may be imposed upon a particular individual." *White v. Pitman*, 2020-Ohio-3957, ¶ 41 (1st Dist.) (quoting *Meehan v. Mardis*, 2019-Ohio-4075, ¶ 8 (1st Dist.)). Thus, this claim must be dismissed with prejudice.

### G. Count 9: Truth in Lending Act Violation

In her final claim, Jenkins asserts that Idealogiz, by and through its sole member, violated the Truth in Lending Act when Idealogiz, the creditor, failed to provide her with an accurate payoff balance within seven days of receipt of a written request as required under 15 U.S.C. § 1639(t)(2). The statute provides that "[p]ayoff balances shall be provided within 5 business days after receiving a request by a consumer or a person authorized by the consumer to obtain such information." 15 U.S.C. § 1639(t)(2). Jenkins alleges that she requested a payoff quote in writing from Idealogiz through a title company acting on her behalf, on or about March 1, 2025, and that Idealogiz refused to provide a payoff quote to Jenkins. Compl., Doc. 1, ¶¶ 121–25. More than a month later, when she filed her Complaint, Jenkins had yet to receive a payoff quote from Idealogiz. *Id.* Jenkins has therefore adequately stated a claim under the Truth in Lending Act. Defendants' assertions to the contrary are unpersuasive.

## IV.    CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. 3) is **GRANTED IN PART** and **DENIED IN PART**. Counts 1, 2, 3, 7, and 8 are **DISMISSED** with prejudice.

Counts 5 and 6 are **DISMISSED** without prejudice. Jenkins may proceed with Counts 4 and 9. Furthermore, if she elects to do so, Jenkins is granted leave to amend her Complaint to cure the deficiencies in Counts 5 and 6 within 7 days of the date of this Opinion and Order.

 **IT IS SO ORDERED.**

March 31, 2026

         Jeffery P. Hopkins
         United States District Judge